1 | SEDGWICK, DETERT, MORAN & ARNOLD LLP
JAMES S. BROWN (Bar No. 135810)
2 | james.brown@sdma.com
MARC A. KOONIN (Bar No. 166210)
3 | marc.koonin@sdma.com
One Market Plaza
4 | Steuart Tower, 8th Floor
San Francisco, California 94105
5 | Telephone: (415) 781-7900
Facsimile: (415) 781-2635
6

7 | Attorneys for Defendants
PACIFIC COAST ELEVATOR CORPORATION,
erroneously sued as AMTECH/SAN FRANCISCO
8 | ELEVATOR CO., KONE, INC., MITSUBISHI ELECTRIC
& ELECTRONICS USA, INC., erroneously sued as
9 | MITSUBISHI ELEVATOR COMPANY,
OTIS ELEVATOR COMPANY, and
10 | SCHINDLER ELEVATOR CORPORATION

*ORIGINAL FILED*

APR 1 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

11 |         UNITED STATES DISTRICT COURT

12 |         NORTHERN DISTRICT OF CALIFORNIA

13 |

14 | JEFF BERNARDI, THOMAS BICKHAM,
RANDY DAVENPORT, BRUCE
15 | DOUGLAS, MICHAEL BOUZIDIN, DAN
KAESLER, RICHARD KIM, DAVID
16 | NAVA, MANUEL BUSTOS, on behalf of
themselves and all persons similarly situated,
17 |
            Plaintiffs,
18 |
            v.
19 |
AMTECH/SAN FRANCISCO ELEVATOR
20 | CO.; KONE, INC.; MITSUBISHI
ELEVATOR COMPANY; OTIS
21 | ELEVATOR COMPANY; SCHINDLER
ELEVATOR CORPORATION; and DOES 1
22 | through 10 inclusive,
23 |
            Defendants.

CASE NO. **WHA** 1922

**NOTICE OF REMOVAL UNDER 28 U.S.C.
§§ 1331, 1367(a) 1441(a), and 1441(b)**

24 |

25 | TO THE CLERK OF THE ABOVE-ENTITLED COURT:

26 |         PLEASE TAKE NOTICE that Defendants Pacific Coast Elevator Corporation,

27 | erroneously sued herein as Amtech/San Francisco Elevator Co., KONE, Inc., Mitsubishi Electric

28 | & Electronics USA, Inc., erroneously sued herein as Mitsubishi Elevator Company, Otis Elevator

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1495843v1

-1-

CASE NO.

1  Company, and Schindler Elevator Corporation ("Defendants"), by and through their counsel,

2  hereby remove the above-entitled action, which was filed by plaintiffs Jeff Bernardi, Thomas

3  Bickham, Randy Davenport, Bruce Douglas, Michael Bouzidin, Dan Kaesler, Richard Kim,

4  David Nava, and Manuel Bustos, on behalf of themselves and all persons similarly situated, in

5  the Superior Court of the State of California, in and for the County of San Francisco, Case No.

6  CGC-08-473115, to this Court pursuant to 28 United States Code sections 1331, 1367(a),

7  1441(a), 1441(b) and 1441(c), on the following grounds:

8  ## SERVICE OF COMPLAINT AND SUMMONS

9  1.    On March 7, 2008, Plaintiffs filed the Complaint in the Superior Court of the

10  State of California, in and for the County of San Francisco, entitled *Jeff Bernardi, Thomas*

11  *Bickham, Randy Davenport, Bruce Douglas, Michael Bouzidin, Dan Kaesler, Richard Kim,*

12  *David Nava, Manuel Bustos, on behalf of themselves and all persons similarly situated v.*

13  *Amtech/San Francisco Elevator Co., et al.*, Case No. CGC-08-473115 ("Complaint").

14  2.    The first date which any defendant received a copy of the Complaint was March

15  14, 2008. On that date, Defendants Pacific Coast Elevator Corporation ("Pacific Coast"),

16  erroneously sued herein as Amtech/San Francisco Elevator Co., Otis Elevator Company ("Otis"),

17  KONE, Inc. ("KONE"), and Schindler Elevator Corporation ("Schindler"), through their agents

18  for service of process, each received the Complaint and a Summons, along with an Alternative

19  Dispute Resolution (ADR) Program Information Package, a Notice to Plaintiff Setting a Case

20  Management Conference, and a blank Case Management Conference Statement. On April 2,

21  2008, Mitsubishi Electric & Electronics USA, Inc., erroneously sued herein as Mitsubishi

22  Elevator Company ("Mitsubishi") was also served the Complaint and a Summons, along with an

23  Alternative Dispute Resolution (ADR) Program Information Package, a Notice to Plaintiff

24  Setting a Case Management Conference, and a blank Case Management Conference Statement.

25  3.    A true and correct copy of the Summons, Complaint, Notice to Plaintiff Setting a

26  Case Management Conference, and all other documents served on Defendant Pacific Coast in

27  this action is attached hereto as Exhibit A.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28  4.    A true and correct copy of the Summons, Complaint, Notice to Plaintiff Setting a

1 Case Management Conference, and all other documents served on Defendant KONE in this
2 action is attached hereto as Exhibit B.

3    5.    A true and correct copy of the Summons, Complaint, Notice to Plaintiff Setting a
4 Case Management Conference, and all other documents served on Defendant Otis in this action
5 is attached hereto as Exhibit C.

6    6.    A true and correct copy of the Summons, Complaint, Notice to Plaintiff Setting a
7 Case Management Conference, and all other documents served on Defendant Schindler in this
8 action is attached hereto as Exhibit D.

9    7.    A true and correct copy of the Summons, Complaint, Notice to Plaintiff Setting a
10 Case Management Conference, and all other documents served on Defendant Mitsubishi in this
11 action is attached hereto as Exhibit E.

12    8.    None of the Defendants have filed any answers or other pleadings responsive to
13 the Complaint in San Francisco Superior Court and Plaintiffs and none of the Defendants have
14 been served with any additional documents in this Action.

15 ## STATUTORY BASIS FOR REMOVAL

16    9.    As the attached Complaint demonstrates, the Action pending in state court is a
17 civil action within the original jurisdiction of this Court because it alleges violation of federal
18 law (the Fair Labor Standards Act), alleges state law causes of action that are preempted by
19 federal law (Section 301 of the Labor Management Relations Act) because they are based on and
20 require the interpretation of a collective-bargaining agreement, and otherwise alleges related state
21 claims subject to the supplemental jurisdiction of this Court.

22    10.    28 United States Code section 1331 provides that "district courts shall have
23 original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the
24 United States."

25    11.    28 United States Code section 1367(a) provides that "in any civil action of which
26 the district courts have original jurisdiction, the district courts shall have supplemental
27 jurisdiction over all other claims that are so related to claims in the action within such original
28 jurisdiction that they form part of the same case or controversy under Article III of the United

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1495843v1                                                        -3-                                                        CASE NO.

NOTICE OF REMOVAL

1  States Constitution."

2      12.    28 United States Code section 1441(a) provides that "any civil action brought in a
3  State court of which the district courts of the United States have original jurisdiction, may be
4  removed by the defendant or the defendants, to the district court of the United States for the
5  district and division embracing the place where such action is pending."

6      13.    28 United States Code section 1441(b) provides that "[a]ny civil action of which
7  the district courts have original jurisdiction founded on a claim or right arising under the
8  Constitution, treaties or laws of the United States shall be removable without regard to the
9  citizenship or residence of the parties."

10                                **JURISDICTION**

11      14.    This action is a civil action over which this Court has original jurisdiction under
12  28 United States Code section 1331, and is one which may be removed to this Court pursuant to
13  the provisions of 28 United States Code sections 1441(a), and 1441(b), in that it involves a claim
14  for payment of wages arising under the Fair Labor Standards Act ("FLSA"), 29 United States
15  Code section 201, *et seq*.

16      15.    This action also may be removed to this Court pursuant to the provisions of 28
17  United States Code sections 1441(a), and 1441(b), and this Court has original jurisdiction under
18  28 United States Code section 1331, because this case requires an analysis of a contract between
19  a labor organization and an employer and is therefore preempted pursuant to the Labor
20  Management Relations Act ("LMRA"), 29 United States Code section 141, *et seq.*, including but
21  not limited to Section 301 of the LMRA (29 United States Code section 185(a)).

22      16.    Pursuant to 28 U.S.C. section 1367(a) this Court has supplemental jurisdiction
23  over the remainder of Plaintiffs' claims because they are so related to claims in the action within
24  the Court's original jurisdiction that they form part of the same case and controversy under
25  Article III of the United States Constitution.

26                          **INTRADISTRICT JURISDICTION**

27      17.    Pursuant to Civil L.R. 3-2(d), this action should be assigned to the San Francisco
28  Division, of this Court because a substantial part of the alleged actions for which Plaintiffs seek

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1495843v1                              -4-                              CASE NO.

1   relief occurred in San Francisco, California, and the civil action was filed in the Superior Court

2   for the County of San Francisco. Plaintiffs (and the putative class members and putative

3   members of the Fair Labor Standards Act collective action) each worked for one or more of the

4   Defendants in San Francisco, California, and seek relief regarding pay practices by Defendants in

5   San Francisco which were enacted to comply with the San Francisco Sick Leave Ordinance (San

6   Francisco, Cal. Admin. Code, Chapter 12W.)

## FACTS SUPPORTING REMOVAL

8       18.     The Defendants are represented for collective bargaining purposes by the National

9   Elevator Bargaining Association ("NEBA"), a multi-employer bargaining association.

10  Complaint, ¶¶ 2, 18. The named Plaintiffs and all putative class members are all employees or

11  former employees of one or more of the Defendants in San Francisco, California, and members

12  of bargaining units represented by the International Union of Elevator Constructors ("IUEC") and

13  IUEC Local 8 ("Local 8"). Complaint, 5 (2:7-19), 12 (4:11-21), 18 (6:4-9). On behalf of the

14  Defendants and others, NEBA negotiated the current collective-bargaining agreement (the

15  "Agreement") under which the Plaintiffs (and putative Plaintiffs) have worked for the

16  Defendants, which became effective July 9, 2007, and will remain in effect until July 8, 2012. A

17  true and correct copy of the Agreement is attached hereto as Exhibit F.

18      19.     The dispute in this action involves a question regarding whether the Defendant

19  employers can pay a portion of employees' vacation pay prior to the deadline provided for under

20  the Agreement in conformity with the requirements of the San Francisco Sick Leave Ordinance

21  (San Francisco, Cal., Admin. Code, Chapter 12W). This is reflected in an Unfair Labor Practice

22  Charge filed against Defendant Otis Elevator Company by Local 8, and the subsequent decision

23  of the National Labor Relations Board to defer (and then withdraw) its jurisdiction subject to that

24  issue going through the grievance machinery of the collective bargaining agreement. A true and

25  correct copy of that Unfair Labor Practice Charge and the subsequent correspondence from the

26  National Labor Relations Board are attached hereto as Exhibit G.

27      20.     The Second Cause of Action of Plaintiffs' Complaint, for "Late Payment of

**SEDGWICK**
DETERT, MORAN & ARNOLD
28  Wages in Violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and the regulations

SF/1495843v1                                  -5-                                    CASE NO.

NOTICE OF REMOVAL

1    thereunder," seeks liquidated damages in the form of "back pay compensation for all Vacation
2    Pay owed" and is expressly brought under the FLSA. Complaint, ¶ 33. These allegations
3    establish on the face of the Complaint that the Second Cause of Action arises under federal law.
4    A lawsuit brought under the FLSA is a proper subject for removal from state to federal court.
5    *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 693 (2003).

6        21.    Plaintiffs also allege that their wages "were and are established by a valid
7    collective bargaining agreement arrived at through collective bargaining." Complaint, ¶ 24.
8    Plaintiffs further allege that they, along with all putative class members, are "covered under the
9    current Collective Bargaining Agreement ('CBA') between the International Union of Elevator
10   Constructors ("IUEC") and the National Elevator Bargaining Association ('NEBA')," which is a
11   "wage agreement arrived at through collective bargaining." Complaint, ¶ 18. The referenced
12   collective-bargaining agreement, which is the Agreement, is a "contract" between employers and
13   labor organizations for the purposes of Section 301. The IUEC and Local 8 are labor
14   organizations as defined by § 2(5) of the LMRA, 29 United States Code section 152(5). They
15   exist for the purpose of representing employees who work in the field of elevator construction.
16   The companies who are members to the Agreement are employers of elevator constructors in an
17   industry affecting commerce within the meaning of sections 2(2) and (6) of the LMRA, 29
18   United States Code sections 152(2) and 152(6).

19       22.    Section 301 of the LMRA (29 United States Code § 185) completely preempts
20   state law claims that are based on rights created by, or substantially dependent on, a contract
21   between a labor organization and an employer, including state law claims that are substantially
22   dependent upon analysis of a contract between a labor organization and an employer. *Allis-*
23   *Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-211 (1985); *Jackson v. Southern California Gas*
24   *Co.*, 881 F.2d 638, 643 (9th Cir. 1989). "Once an area of state law has been completely
25   preempted, any claim purportedly based on that pre-empted state law is considered, from its
26   inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*,
27   482 U.S. 386, 393 (1982).

28       23.    The First Cause of Action of Plaintiffs' Complaint, for violations of California

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1495843v1

-6-                                                                          CASE NO.

1    Labor Code Section 222, seeks damages for Defendants' alleged unlawful withholding of
2    vacation pay. Complaint, ¶ 25. California Labor Code section 222 provides that: "It shall be
3    unlawful, in case of any wage agreement arrived at through collective bargaining, either wilfully
4    or unlawfully or with intent to defraud an employee, a competitor, or any other person, to
5    withhold from said employee any part of the wage agreed upon." The Third Cause of Action of
6    Plaintiffs' Complaint, for declaratory relief, seeks a declaration from the Court as to "whether
7    Defendants are unlawfully withholding Vacation Pay from individual plaintiffs and members of
8    the proposed class . . . are unlawfully failing to pay vacation pay on a timely basis, [and are
9    failing] to provide the overtime compensation provided for in violation by [sic] of the FLSA."
10   Complaint, ¶ 35. Plaintiffs contend that there is a dispute between the parties as to whether the
11   withholdings are proper under Labor Code section 222 and, accordingly, under the terms of a
12   "wage agreement arrived at through collective bargaining." Resolving these disputes would
13   require the Court to interpret the provisions of the Agreement, which is a collective bargaining
14   agreement.

15       24.    Plaintiffs' First and Third Causes of Action are completely preempted by Section
16   301 of the LMRA because they involve an alleged violation of the Agreement. Furthermore,
17   resolution of Plaintiffs' claims requires the interpretation of the Agreement to know whether
18   Defendants have violated its terms regarding the permissible timing of the payment of vacation
19   pay. Plaintiffs' alleged right to receive vacation pay is a right created by and substantially
20   dependent upon the Agreement, and the timing at which such vacation pay may or must be paid
21   is dependent upon an interpretation of the Agreement. Accordingly, for this Court to properly
22   and completely adjudicate Plaintiffs' claims, it would have to review, interpret, and construe the
23   terms of the Agreement. Plaintiffs' state law claims are therefore completely preempted by the
24   LMRA, and the Complaint is a proper subject of removal on that basis.

25                    **TIMELINESS OF REMOVAL PETITION**

26       25.    The first date which any defendant received a copy of the Complaint was March
27   14, 2008.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28       26.    This Notice of Removal is filed with this Court within 30 days of the earliest date

SF/1495843v1                                              -7-                                          CASE NO.
                                                 NOTICE OF REMOVAL

1  on which Defendants first were served with a copy of the initial pleadings in the above-entitled

2  action. This removal is thus timely under 28 United States Code section 1446(b).

3      WHEREFORE, Defendants remove the above-entitled action to this Court, and requests

4  that the Court assume jurisdiction over this action.

5

6  DATED: April **11**, 2008                SEDGWICK, DETERT, MORAN & ARNOLD LLP

7

8                                By:_____
                                     James S. Brown
9                                    Marc A. Koonin
                                     Attorneys for Defendants
10                                   PACIFIC COAST ELEVATOR CORPORATION,
                                     erroneously sued as AMTECH/SAN FRANCISCO
11                                   ELEVATOR CO., KONE, INC., MITSUBISHI
                                     ELECTRIC & ELECTRONICS USA, INC.,
12                                   erroneously sued as MITSUBISHI ELEVATOR
                                     COMPANY, OTIS ELEVATOR COMPANY, and
13                                   SCHINDLER ELEVATOR CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP
28

SF/1495843v1                            -8-                            CASE NO.

NOTICE OF REMOVAL

# EXHIBIT A

3/14/08 → 3:20p

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| | FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all persons similarly situated,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER (Número del Caso): **CGC08- 473115** |

SAN FRANCISCO COUNTY SUPERIOR COURT
400 McAllister St # 103; San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP, 1330 Broadway, Ste. 1450, Oakland, CA 94612

GORDON PARK-LI, Clerk by CHRISTINA BAUTISTA

| DATE: *(Fecha)* MAR 7 2008 | Clerk, by *(Secretario)* _____, Deputy *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant. |
|---|---|
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☑ on behalf of *(specify):* Amtech/San Francisco Elevator |
| | under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

COPY

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450, Oakland, CA 94612

TELEPHONE NO.: (510) 272-0169     FAX NO.: (510) 272-0174
ATTORNEY FOR *(Name)*: Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:
MAILING ADDRESS: 400 McAllister St., # 103
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
BERNARDI, ET AL. V. AMTECH

ENDORSED
FILED
Superior Court of California
County of San Francisco

MAR 7 - 2008

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)    [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-08-473115<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve      e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify)*:
5. This case [✓] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3/6/08

LYNN ROSSMAN FARIS
*(TYPE OR PRINT NAME)*                                      *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

COPY

Lynn Rossman Faris (State Bar No. 96029)
Jennifer Keating (State Bar No. 250857)
LEONARD CARDER, LLP
1330 Broadway, Ste 1450
Oakland, CA 94612
Tel: 510 272 0169
Fax: 510 272 0174

Attorneys for Plaintiffs

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR 7 – 2008
GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

AUG 8 – 2008 –9:00 AM

DEPARTMENT 212

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all persons similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,<br><br>        Defendants. | CASE NO.<br><br>CLASS ACTION<br><br>COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF<br><br>UNLIMITED CIVIL CASE<br><br>JURY TRIAL DEMANDED |

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs") hereby allege as follows:

## INTRODUCTION

1)    Plaintiffs seek damages, civil penalties, declaratory and injunctive relief for themselves and the class of similarly situated employees they represent for the unlawful and/or willful withholding of a portion of their wages (known as vacation pay) in violation of California Labor Code Section 222 and 2699 and for late payment of wages due in violation of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C., Section 216(b).

2)    Plaintiffs are employed by Defendants AMTECH/SAN FRANCISCO, KONE, INC., MITSUBISHI ELEVATOR CO., OTIS ELEVATOR CO., and/or SCHINDLER ELEVATOR CORP.(hereinafter "Defendants") under a collective bargaining agreement which requires Defendants to pay **in full** pay accrued during the prior six months as "vacation pay" on January 15 and July 15 of each year. Despite that clear obligation and prior warning that failure to pay the accrued wages would be illegal, Defendants and each of them, have willfully and/or unlawfully withheld a portion of the wages due to each Plaintiff and all other similarly situated employed by Defendants in San Francisco, California.

## JURISDICTION AND VENUE

3)    This Court of unlimited jurisdiction has jurisdiction to enforce the provisions of the California Labor Code pursuant to the California Constitution, Article VI, ' 10 and has jurisdiction over the FLSA cause of action pursuant to 29 U.S.C. §§ 216(b).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

4)     Venue for this action properly lies in San Francisco County Superior Court because Plaintiffs were employed by Defendants in San Francisco and thus some or all of the actions alleged herein occurred within the City and County of San Francisco.

## PARTIES

5)     Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MANUEL BUSTOS, DAN KAESLER, RICHARD KIM, DAVID NAVA, MICHAEL BOUZIDIN are employed by one of the above named Defendants as elevator constructors in San Francisco, California. More specifically, Plaintiff Jeff Bernardi is employed by Amtech/San Francisco Elevator Company; Plaintiffs Thomas Bickham, Randy Davenport, Dan Kaesler, Richard Kim and David Nava are employed by Otis Elevator Company; Plaintiff Manuel Bustos is employed by Schindler Elevator Company; Plaintiff Bruce Douglas is employed by Mitsubishi Elevator Company; and Plaintiff Michael Bouzidin is employed by Kone, Inc. Plaintiffs sue on their own behalf, and as regards the California causes of action, as class representatives on behalf of all similarly situated present and former employees of Defendants whose vacation wages were similarly unlawfully and/or willfully withheld.

6)     Defendant AMTECH/ SAN FRANCISCO ELEVATOR CO. (hereinafter "AMTECH") does business in San Francisco by providing elevator installation, construction, and maintenance services. AMTECH is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that AMTECH is a corporation with its principal place of business is in South San Francisco, California.

7)     Defendant KONE, Inc. (hereinafter "KONE") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. KONE

2

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that KONE is a corporation with its principal place of business in San Leandro, California.

8)    Defendant MITSUBISHI ELEVATOR COMPANY (hereinafter "MITSUBISHI") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. MITSUBISHI is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that MITSUBISHI is a corporation with its principal place of business in Oakland, California.

9)    Defendant OTIS ELEVATOR COMPANY (hereinafter "OTIS") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. OTIS is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that OTIS is a corporation with its principal place of business in San Francisco, California.

10)    Defendant SCHINDLER ELEVATOR CORPORATION (hereinafter "SCHINDLER") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. SCHINDLER is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that SCHINDLER is a corporation with its principal place of business in San Leandro, California.

3

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

11)    The true names and capacities, whether individual, organizational or otherwise, of defendant DOES 1-10 are currently unknown to Plaintiffs, who therefore sue such defendants by fictitious names, under California Code of Civil Procedure Section 474. Plaintiffs are informed and believe, and on that basis allege that each of the defendants designated as "DOE" is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated as "DOE" when such identities become known.

## CLASS ACTION ALLEGATIONS

12)    Named Plaintiffs bring their claims based on the California Labor Code and the Fair Labor Standards Act on behalf of themselves and also on behalf of a class consisting of:

> all elevator constructors who are or were employed by any Defendant in San Francisco as an elevator constructor, helper or apprentice under the collective bargaining agreement between the International Union of Elevator Constructors and the National Elevator Bargaining Association, and who had amounts unlawfully or willfully deducted from their vacation wages in violation of the California Labor Code and/or who were not timely paid their full vacation wages in violation of the Fair Labor Standards Act.

As to the FLSA claim, named Plaintiffs attach hereto as Exhibit A their "consents to sue" as required by Section 16(b) of the FLSA and will file similar consents to sue herein when executed by similarly situated employees.

13)    Plaintiffs are informed and believe and thereon allege that, at a minimum, several hundred elevator constructors employed by Defendants have been and will be subjected to unlawful vacation wage deductions and late payment of vacation wages due and owing, in violation of state and federal law. As such, members of the class are so numerous that joinder is impracticable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

14)     The claims of the named plaintiffs are typical of the claims of the class as a whole because each of the named plaintiffs is an elevator constructor employed by one of the named Defendants who was and is employed to perform work for which vacation wages were owed and from which pay unlawful and/or willful deductions were taken (and therefore remain unpaid although they were due on January 15) in violation of the California Labor Code and the Fair Labor Standards Act. In addition, Plaintiffs are informed and believe and thereon allege that additional vacation wages will be withheld from their pay and the pay of all class members absent relief from this court.

15)     Common questions of fact and law predominate over individual issues in this action. These common issues include but are not limited to:

a) whether Defendants' uniform, class-wide policy and practice of illegal deduction of amounts from vacation pay accrued and owed to Plaintiffs and class members violates Labor Code Section 222;

b) whether Defendants' uniform, class-wide policy and practice of failure to pay the full amount of vacation wages on the date due violates the requirement of timely payment of wages under the FLSA and/or the regulations promulgated under the FLSA;

16)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the losses suffered by individual class members may be relatively small, the expense and burden of duplicative individual litigation make it impractical for class members individually to seek redress for the unlawful conduct alleged herein.

17)     Named plaintiffs are proper and adequate class representatives and will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in both class action and employment litigation.

5

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169   FAX (510) 272-0174

## FACTS COMMON TO ALL CAUSES OF ACTION

18)    Named Plaintiffs and the class members are employed by one of the named Defendants and covered under the current Collective Bargaining Agreement (hereinafter ACBA") between the International Union of Elevator Constructors (IUEC) and the National Elevator Bargaining Association (NEBA).  That agreement is a wage agreement arrived at through collective bargaining under Labor Code Section 222.

19)    Specifically, Article XII of the CBA, entitled "Vacations" requires Defendants to compensate employees for vacation pay at an agreed upon wage.  Pursuant to the collective bargaining agreement, this "vacation pay" is a percentage (either 6% or 8% depending on years worked in the industry) of an individual employee's total hours actually worked during the preceding six month period.  Vacation pay must be paid to employees under the CBA twice each year on or before January 15 and July 15 for the six months immediately preceding the payment.  The applicable portion of Article XII states:

> (a) "A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked.  A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. . . ."
>
> (b) "The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year.  The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid in full to the employee by January 15 of the succeeding year."  (Emphasis added.)

20)    Vacation pay constitutes part of the overall compensation package to employees, and, as such, is part of Plaintiffs wages as defined by California Labor Code Section 200 and the

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

6

amount of the wages are arrived at through collective bargaining pursuant to California Labor Code Section 222.

21)    On or about January 15, 2008, Defendant Employers willfully and/or unlawfully deducted amounts from plaintiffs' accrued vacation pay, which was due and owing and required to be paid in full on January 15, 2008. The amounts withheld were neither authorized by statute nor consented to or otherwise in any way authorized by Plaintiffs nor authorized by law.

22)    On behalf of named Plaintiffs and the class members they represent, the labor union, the International Union of Elevator Constructors repeatedly demanded that Defendants compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay all such accrued vacation pay. Defendants have repeatedly failed and refused to correct these violations and compensate employees for the vacation pay in full.

## FIRST CAUSE OF ACTION
### (California Labor Code Section 222)

23)    Plaintiffs incorporate by reference paragraphs 1 through 22 above as if fully set forth here.

24)    At all material times, Plaintiffs wages were and are established by a valid collective bargaining agreement arrived at through collective bargaining. Despite that wage agreement, on or about January 15, 2008, Defendants unlawfully and/or willfully withheld from Plaintiffs part of Plaintiffs' vacation wages set by the CBA.

25)    Plaintiffs and the proposed class have been injured in an amount to be proven at trial, by not receiving all vacation wages to which they were entitled on January 15, 2008 and thereafter. Plaintiffs are informed and believe and thereon allege that Defendants intent to

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

7

1
2  continue their policy and practice of unlawfully deducting amounts from accrued vacation wages
3  unless enjoined by this court.
4
5        26)    Plaintiffs have given timely notice, as required by Labor Code Section 2699.3 to
6  Defendants and the California Labor and Workforce Development Agency.
7        27)    Defendants' failure and unlawful refusal to pay Plaintiffs and all similarly situated
8  employees the full amount of their accrued vacation wages set by the CBA violates California
9  Labor Code § 222. Plaintiffs will be irreparably harmed by such future unlawful deductions and
10 have no adequate legal remedy to prevent such unlawful conduct, absent this Court's injunction
11 against such conduct. Accordingly, individual Plaintiffs and similarly situated employees are
12 entitled to:
13
14       A)    Damages to be proven at trial in the amount of all vacation wages
15 unlawfully withheld, with prejudgment interest commencing on January 15, 2008, along with
16 reasonable attorneys fees and costs incurred in prosecuting this action;
17       B)    All applicable civil penalties under Labor Code § 2699, including but not
18 limited to $100 per each unpaid employee per pay period for the initial violation and $200 per
19 each unpaid employee per pay period plus 25% of the unpaid wage per unpaid employee per pay
20 period for all subsequent violations, per Labor Code §225.5; and/or $100 per each unpaid
21 employee per pay period for the initial violation and $200 per each unpaid employee per pay
22 period for all subsequent violations, per Labor Code § 2699(f).
23
24       C)    Injunctive relief to prohibit Defendants from making similar unlawful
25 and/or willful deductions from vacation pay in the future.
26
27
28

8

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

## SECOND CAUSE OF ACTION
### (Late Payment of Wages in Violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder)

28) Plaintiffs incorporate by reference paragraphs 1 through 27 above as if fully set forth herein.

29) True and correct copies of Consents to Become Party Plaintiffs executed by Plaintiffs BERNARDI, BICKHAM, DAVENPORT, DOUGLAS, BUSTOS, KAESLER, KIM, NAVA, and BOUZIDIN are attached hereto, as Exhibit A.

30) At all relevant times herein, individual plaintiffs and all similarly situated employees who submit Consents to Become Party Plaintiffs are or were employed by and engaged in providing elevator construction services to Defendants. In performing their duties for Defendants, Plaintiffs were "employees" employed by an "enterprise engaged in commerce or the production of goods for commerce" within the scope of 29 U.S.C. §207(a).

31) At all material times, Defendants were required by the express terms of a written contract and/or by custom and practice to compensate employees for accrued Vacation Pay on a percentage basis based on actual hours worked by Plaintiffs on or before January 15, 2008 for the six month period (July 1-December 31, 2007) immediately preceding it.

32) At all material times, Defendants failed to compensate employees the Vacation Pay owed and due on January 15, 2008 when such wages were due including in weeks in which Plaintiffs and the plaintiff class worked and were paid for hours in excess of forty in the workweek. By failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA.

9

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

33)     As a result of Defendants failure and refusal to pay plaintiffs and all those similarly situated the full amount of the Vacation wages they were due, individual plaintiffs and all similarly situated employees of Defendants who submit Consents to Become Party Plaintiff are entitled to the amounts that remain unpaid as liquidated damages, in an amount to be proven at trial, in the form of back pay compensation for all Vacation Pay owed, and reasonable attorneys fees and costs under 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
#### (Declaratory Relief - Cal. Code of Civil Procedure ' 1060)

34)     Plaintiffs incorporate by reference paragraphs 1 through 33 above as if fully set forth herein.

35)     An actual, substantial and ongoing controversy exists between Plaintiffs on the one hand, and Defendants on the other hand, as to whether Defendants are unlawfully withholding Vacation Pay from individual plaintiffs and members of the proposed class, in violation of Labor Code Section 222 and, by are unlawfully failing to pay vacation pay on a timely basis, failed to provide the overtime compensation provided for in violation by of the FLSA.

36)     Plaintiffs submit that the answer to the above questions is "yes." On information and belief, Defendants' position is that the answer to all the above questions is "no." Accordingly, Plaintiffs on their own behalf and as class representatives of all members of the proposed class are entitled to declaratory relief resolving this dispute.

/ / /

/ / /

/ / /

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169     FAX (510) 272-0174

10

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1)      Compensatory damages in excess of $25,000.00, according to proof, including all unpaid vacation wages due and owing at the proper rate or pay, within the statute of limitations;

2)      An equal additional amount as liquidated damages for plaintiffs under the FLSA, within the statute of limitations;

3)      Civil penalties as provided by Labor Code Section 2699;

4)      Prejudgment interest;

5)      Reasonable attorneys' fees and costs of prosecuting this action;

6)      A judicial declaration that Defendants practice of unlawfully deducting part of the vacation pay owed to all proposed class members violates Labor Code Section 222 and the FLSA and regulations promulgated under the FLSA;

7)      A preliminary and permanent injunction, enjoining any further violations of law by Defendants; and

8)      Such other relief as the Court may deem just and appropriate.

## JURY TRIAL

Plaintiffs in the above referenced action hereby demand a trial by jury.

Dated: March 7, 2008

Respectfully submitted,
LEONARD CARDER, LLP

By: Lynn Rossman Faris
    Attorneys for Plaintiffs

11

# EXHIBIT A

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned JEFF BERNARD I , a current or former employee

of Amtech/San Francisco Elevator Co., hereby consent to become a party plaintiff in an

action arising under the Fair Labor Standards Act regarding the compensations paid to

me by said Amtech/San Francisco Elevator Co., for services rendered thereto.

Date: 2/21/08

By: Sign name: _Jeff Bernardi_

Spell name: _JEFF BERNARD I_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Thomas E. Birkhart_ a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/20/08_          By: Sign name: _____
                              Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Randy Davenport_, a current or former employee of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Otis Elevator Co., for services rendered thereto.

Date: _2-22-08_

By: Sign name: _Randy P Davenport_
Spell name: _Randy P Davenport_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Bruce Douglas_ a current or former employee

of Mitsubishi Elevator Co., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Mitsubishi Elevator Co., for services rendered thereto.

Date: _3/19/2008_    By: Sign name: _Bruce Douglas_
                         Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Michael Bouzidin_, a current or former employee

of Kone, Inc., hereby consent to become a party plaintiff in an action arising under the

Fair Labor Standards Act regarding the compensations paid to me by said Kone, Inc.,

for services rendered thereto.

Date: _3/5/08_          By: Sign name: _Michael Bouzidin_
                            Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _DAN KAESLER_, a current or former employee
of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising
under the Fair Labor Standards Act regarding the compensations paid to me by said
Otis Elevator Co., for services rendered thereto.

Date: 2-19-08        By: Sign name: _____
                     Spell name: DAN KAESLER

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Richard Kim_, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/28/08_     By: Sign name: _____
           Spell name: _Richard J. Kim_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _David Naa/a_, a current or former employee

of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Schindler Elevator Corp., for services rendered thereto.

Date: _2/20/08_     By: Sign name: _David Neva_
                        Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned MANUEL BUSTOS , a current or former employee

of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/2008          By: Sign name: Manuel Bustos

                         Spell name: MANUEL BUSTOS

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.



A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 provides three different voluntary mediation programs for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

## Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

| | |
|---|---|
| **Plaintiff**<br>v.<br><br>**Defendant** | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐   **Private Mediation**     ☐   **Mediation Services of BASF**   ☐   **Judicial Mediation**
☐   **Binding arbitration**     Judge _____
☐   **Non-binding judicial arbitration**     Judge _____
☐   **BASF Early Settlement Program**
☐   **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

---

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2 3/06      **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                FAX NO. *(Optional):* | |
| E-MAIL ADDRESS *(Optional):* | |
| ATTORNEY FOR *(Name):* | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| STREET ADDRESS: |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)    ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: |
|---|
| Date:          Time:          Dept.:          Div.:          Room: |
| Address of court *(if different from the address above):* |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐  have had a default entered against them *(specify names):*
   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.  Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request   ☐ a jury trial   ☐ a nonjury trial   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐ The trial has been set for *(date):*
b.   ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐ days *(specify number):*
b.   ☐ hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial   ☐ by the attorney or party listed in the caption   ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   Fax number:
f.   E-mail address:
g.   Party represented:
☐ Additional representation is described in Attachment 8.

9.   **Preference**
☐ This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.   Counsel   ☐ has   ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.   ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.   ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in *(check all that apply):*

   (1) ☐ Mediation

   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

   (4) ☐ Binding judicial arbitration

   (5) ☐ Binding private arbitration

   (6) ☐ Neutral case evaluation

   (7) ☐ Other *(specify):*

   e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

   f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

   ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

   ☐ Bankruptcy ☐ Other *(specify):*

   Status:

**14. Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

   ☐ Additional cases are described in Attachment 14a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

Previous case management orders in this case are *(check one)*:  ☐ none   ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached |



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

CASE NUMBER: CGC-08-473115  JEFF BERNARDI et al VS. AMTECH/SAN FRANCISCO ELE'

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

**DATE:**   **AUG-08-2008**

**TIME:**   **9:00AM**

**PLACE:**   **Department 212**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)**

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:

# www.sfbar.org/mediation

QUESTIONS?
adr@sfbar.org or 415-982-1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.



### How Much Does the Service Cost?

Mediators generously p... ...e one ...
of ...eparation and two ...rs of sess...
t... free of charge as a ...vice to BASF
a... the community. To ...fy for the
pro-bono ...urs, parties ...t file the
...onsent to ...ediate for... ...h BASF.
Hourly fees beyond th... ...ree hours
...ary depending on the ...ator
selected. BASF charge... ...all
administrative fee, wh... ...ys for the
costs of running the p...

### Who Can Use this Service?

The service can be util... ...anyo...
whether or not the disp... ...s been filed
in a court. If a legal act... ...already
under way, it can be us... ...y time.
during the litigation p... ...d is not
limited to San Francis... ...litigants.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

# EXHIBIT B

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI
ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER
ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS,
MICAHEL ROUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL
BUSTOS, on behalf of themselves and all persons similarly situated,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER<br>*(Número del Caso):* **CGC08 - 473115** |
|---|---|

SAN FRANCISCO COUNTY SUPERIOR COURT
400 Mcallister St # 103; San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP, 1330 Broadway, Ste. 1450, Oakland CA 94612

| DATE:<br>*(Fecha)* MAR 7 2008 | Clerk, by GORDON PARK-LI / CHRISTINE BAUTISTA<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

| [SEAL] | 1. ☐ as an individual defendant. |
|---|---|
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☑ on behalf of *(specify):* **Kone, Inc.** |
| | under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)   ☐ CCP 415.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

COPY

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450, Oakland, CA 94612

TELEPHONE NO.: (510) 272-0169     FAX NO.: (510) 272-0174
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:
MAILING ADDRESS: 400 McAllister St., # 103
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
BERNARDI, ET AL. V. AMTECH

ENDORSED
Superior Court of California
County of San Francisco

MAR 7 - 2008

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC08-473115  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/6/08

LYNN ROSSMAN FARIS
*(TYPE OR PRINT NAME)*                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CASE NUMBER: CGC-08-473115  JEFF BERNARDI et al VS. AMTECH/SAN FRANCISCO ELE

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

**DATE:**    **AUG-08-2008**

**TIME:**    **9:00AM**

**PLACE:**    **Department 212**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

10943974.tiff - 3/14/2008 11:01:35 AM

COPY

Lynn Rossman Faris (State Bar No. 96029)
Jennifer Keating (State Bar No. 250857)
LEONARD CARDER, LLP
1330 Broadway, Ste 1450
Oakland, CA 94612
Tel: 510 272 0169
Fax: 510 272 0174

Attorneys for Plaintiffs

ENDORSED
FILED
Superior Court of California
County of San Francisco

MAR 7 - 2008

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

AUG 8 - 2008 - 9:00 AM

DEPARTMENT 212

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

JEFF BERNARDI, THOMAS BICKHAM, RANDY
DAVENPORT, BRUCE DOUGLAS, MICAHEL
BOUZIDIN, DAN KAESLER, RICHARD KIM,
DAVID NAVA, MANUEL BUSTOS, on behalf of
themselves and all persons similarly situated,

    Plaintiffs,

vs.

AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE,
INC.; MITSUBISHI ELEVATOR COMPANY; OTIS
ELEVATOR COMPANY; SCHINDLER ELEVATOR
CORPORATION; and DOES 1 through 10 inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.

CLASS ACTION

COMPLAINT FOR
DAMAGES, PENALTIES,
DECLARATORY AND
INJUNCTIVE RELIEF

UNLIMITED CIVIL CASE

JURY TRIAL DEMANDED

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1
2
3    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE
4  DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA,
5  MANUEL BUSTOS, on behalf of themselves and all others similarly situated (hereinafter
6  "Plaintiffs") hereby allege as follows:

7                              **INTRODUCTION**

8    1)    Plaintiffs seek damages, civil penalties, declaratory and injunctive relief for
9
10  themselves and the class of similarly situated employees they represent for the unlawful and/or
11  willful withholding of a portion of their wages (known as vacation pay) in violation of
12  California Labor Code Section 222 and 2699 and for late payment of wages due in violation of
13  the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C., Section 216(b).

14    2)    Plaintiffs are employed by Defendants AMTECH/SAN FRANCISCO, KONE,
15  INC., MITSUBISHI ELEVATOR CO., OTIS ELEVATOR CO., and/or SCHINDLER
16
17  ELEVATOR CORP.(hereinafter "Defendants") under a collective bargaining agreement which
18  requires Defendants to pay in full pay accrued during the prior six months as "vacation pay" on
19  January 15 and July 15 of each year. Despite that clear obligation and prior warning that failure
20  to pay the accrued wages would be illegal, Defendants and each of them, have willfully and/or
21  unlawfully withheld a portion of the wages due to each Plaintiff and all other similarly situated
22  employed by Defendants in San Francisco, California.
23
24                        **JURISDICTION AND VENUE**
25    3)    This Court of unlimited jurisdiction has jurisdiction to enforce the provisions of
26  the California Labor Code pursuant to the California Constitution, Article VI, ' 10 and has
27  jurisdiction over the FLSA cause of action pursuant to 29 U.S.C. §§ 216(b).
28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4)    Venue for this action properly lies in San Francisco County Superior Court because Plaintiffs were employed by Defendants in San Francisco and thus some or all of the actions alleged herein occurred within the City and County of San Francisco.

## PARTIES

5)    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MANUEL BUSTOS, DAN KAESLER, RICHARD KIM, DAVID NAVA, MICHAEL BOUZIDIN are employed by one of the above named Defendants as elevator constructors in San Francisco, California. More specifically, Plaintiff Jeff Bernardi is employed by Amtech/San Francisco Elevator Company; Plaintiffs Thomas Bickham, Randy Davenport, Dan Kaesler, Richard Kim and David Nava are employed by Otis Elevator Company; Plaintiff Manuel Bustos is employed by Schindler Elevator Company; Plaintiff Bruce Douglas is employed by Mitsubishi Elevator Company; and Plaintiff Michael Bouzidin is employed by Kone, Inc. Plaintiffs sue on their own behalf, and as regards the California causes of action, as class representatives on behalf of all similarly situated present and former employees of Defendants whose vacation wages were similarly unlawfully and/or willfully withheld.

6)    Defendant AMTECH/ SAN FRANCISCO ELEVATOR CO. (hereinafter "AMTECH") does business in San Francisco by providing elevator installation, construction, and maintenance services. AMTECH is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that AMTECH is a corporation with its principal place of business is in South San Francisco, California.

7)    Defendant KONE, Inc. (hereinafter "KONE") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. KONE

2

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

2  is responsible for payment of wages and deductions from those wages under Labor Code Section

3  222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and

4  believe and thereon allege that KONE is a corporation with its principal place of business in

5  San Leandro, California.

6

7      8)    Defendant MITSUBISHI ELEVATOR COMPANY (hereinafter

8  "MITSUBISHI") is a company that does business in San Francisco by providing elevator

9  installation, construction, and maintenance services. MITSUBISHI is responsible for payment of

10 wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and

11 class members employed by them. Plaintiffs are informed and believe and thereon allege that

12 MITSUBISHI is a corporation with its principal place of business in Oakland, California.

13

14     9)    Defendant OTIS ELEVATOR COMPANY (hereinafter "OTIS") is a company

15 that does business in San Francisco by providing elevator installation, construction, and

16 maintenance services. OTIS is responsible for payment of wages and deductions from those

17 wages under Labor Code Section 222 as to those Plaintiffs and class members employed by

18 them. Plaintiffs are informed and believe and thereon allege that OTIS is a corporation with its

19 principal place of business in San Francisco, California.

20

21     10)    Defendant SCHINDLER ELEVATOR CORPORATION (hereinafter

22 "SCHINDLER") is a company that does business in San Francisco by providing elevator

23 installation, construction, and maintenance services. SCHINDLER is responsible for payment

24 of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs

25 and class members employed by them. Plaintiffs are informed and believe and thereon allege that

26 SCHINDLER is a corporation with its principal place of business in San Leandro, California.

27

28

3

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

11)    The true names and capacities, whether individual, organizational or otherwise, of

defendant DOES 1-10 are currently unknown to Plaintiffs, who therefore sue such defendants by

fictitious names, under California Code of Civil Procedure Section 474. Plaintiffs are informed

and believe, and on that basis allege that each of the defendants designated as "DOE" is legally

responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave to

amend this Complaint to reflect the true names and capacities of the defendants designated as

"DOE" when such identities become known.

## CLASS ACTION ALLEGATIONS

12)    Named Plaintiffs bring their claims based on the California Labor Code and the

Fair Labor Standards Act on behalf of themselves and also on behalf of a class consisting of:

> all elevator constructors who are or were employed by any Defendant in San
> Francisco as an elevator constructor, helper or apprentice under the collective
> bargaining agreement between the International Union of Elevator Constructors
> and the National Elevator Bargaining Association, and who had amounts
> unlawfully or willfully deducted from their vacation wages in violation of the
> California Labor Code and/or who were not timely paid their full vacation wages
> in violation of the Fair Labor Standards Act.

As to the FLSA claim, named Plaintiffs attach hereto as Exhibit A their "consents to sue" as

required by Section 16(b) of the FLSA and will file similar consents to sue herein when executed

by similarly situated employees.

13)    Plaintiffs are informed and believe and thereon allege that, at a minimum, several

hundred elevator constructors employed by Defendants have been and will be subjected to

unlawful vacation wage deductions and late payment of vacation wages due and owing, in

violation of state and federal law. As such, members of the class are so numerous that joinder is

impracticable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

10943974.tif - 3/14/2008 11:01:35 AM

14)    The claims of the named plaintiffs are typical of the claims of the class as a whole because each of the named plaintiffs is an elevator constructor employed by one of the named Defendants who was and is employed to perform work for which vacation wages were owed and from which pay unlawful and/or willful deductions were taken (and therefore remain unpaid although they were due on January 15) in violation of the California Labor Code and the Fair Labor Standards Act. In addition, Plaintiffs are informed and believe and thereon allege that additional vacation wages will be withheld from their pay and the pay of all class members absent relief from this court.

15)    Common questions of fact and law predominate over individual issues in this action. These common issues include but are not limited to:

a) whether Defendants' uniform, class-wide policy and practice of illegal deduction of amounts from vacation pay accrued and owed to Plaintiffs and class members violates Labor Code Section 222;

b) whether Defendants' uniform, class-wide policy and practice of failure to pay the full amount of vacation wages on the date due violates the requirement of timely payment of wages under the FLSA and/or the regulations promulgated under the FLSA;

16)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the losses suffered by individual class members may be relatively small, the expense and burden of duplicative individual litigation make it impractical for class members individually to seek redress for the unlawful conduct alleged herein.

17)    Named plaintiffs are proper and adequate class representatives and will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in both class action and employment litigation.

5

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

10943974.tif - 3/14/2008 11:01:35 AM

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169   FAX (510) 272-0174

## FACTS COMMON TO ALL CAUSES OF ACTION

18) Named Plaintiffs and the class members are employed by one of the named Defendants and covered under the current Collective Bargaining Agreement (hereinafter "CBA") between the International Union of Elevator Constructors (IUEC) and the National Elevator Bargaining Association (NEBA). That agreement is a wage agreement arrived at through collective bargaining under Labor Code Section 222.

19) Specifically, Article XII of the CBA, entitled "Vacations" requires Defendants to compensate employees for vacation pay at an agreed upon wage. Pursuant to the collective bargaining agreement, this "vacation pay" is a percentage (either 6% or 8% depending on years worked in the industry) of an individual employee's total hours actually worked during the preceding six month period. Vacation pay must be paid to employees under the CBA twice each year on or before January 15 and July 15 for the six months immediately preceding the payment. The applicable portion of Article XII states:

(a) "A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. . . ."

(b) "The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid in full to the employee by January 15 of the succeeding year." (Emphasis added.)

20) Vacation pay constitutes part of the overall compensation package to employees, and, as such, is part of Plaintiffs wages as defined by California Labor Code Section 200 and the

6

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

amount of the wages are arrived at through collective bargaining pursuant to California Labor

Code Section 222.

    21)    On or about January 15, 2008, Defendant Employers willfully and/or unlawfully

deducted amounts from plaintiffs' accrued vacation pay, which was due and owing and required

to be paid in full on January 15, 2008. The amounts withheld were neither authorized by statute

nor consented to or otherwise in any way authorized by Plaintiffs nor authorized by law.

    22)    On behalf of named Plaintiffs and the class members they represent, the labor

union, the International Union of Elevator Constructors repeatedly demanded that Defendants

compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay

all such accrued vacation pay. Defendants have repeatedly failed and refused to correct these

violations and compensate employees for the vacation pay in full.

**FIRST CAUSE OF ACTION**
**(California Labor Code Section 222)**

    23)    Plaintiffs incorporate by reference paragraphs 1 through 22 above as if fully set

forth here.

    24)    At all material times, Plaintiffs wages were and are established by a valid

collective bargaining agreement arrived at through collective bargaining. Despite that wage

agreement, on or about January 15, 2008, Defendants unlawfully and/or willfully withheld from

Plaintiffs part of Plaintiffs' vacation wages set by the CBA.

    25)    Plaintiffs and the proposed class have been injured in an amount to be proven at

trial, by not receiving all vacation wages to which they were entitled on January 15, 2008 and

thereafter. Plaintiffs are informed and believe and thereon allege that Defendants intent to

7

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

2  continue their policy and practice of unlawfully deducting amounts from accrued vacation wages

3  unless enjoined by this court.

4      26)    Plaintiffs have given timely notice, as required by Labor Code Section 2699.3 to

5  Defendants and the California Labor and Workforce Development Agency.

6

7      27)    Defendants' failure and unlawful refusal to pay Plaintiffs and all similarly situated

8  employees the full amount of their accrued vacation wages set by the CBA violates California

9  Labor Code § 222. Plaintiffs will be irreparably harmed by such future unlawful deductions and

10 have no adequate legal remedy to prevent such unlawful conduct, absent this Court's injunction

11 against such conduct. Accordingly, individual Plaintiffs and similarly situated employees are

12 entitled to:

13

14     A)    Damages to be proven at trial in the amount of all vacation wages

15 unlawfully withheld, with prejudgment interest commencing on January 15, 2008, along with

16 reasonable attorneys fees and costs incurred in prosecuting this action;

17     B)    All applicable civil penalties under Labor Code § 2699, including but not

18 limited to $100 per each unpaid employee per pay period for the initial violation and $200 per

19 each unpaid employee per pay period plus 25% of the unpaid wage per unpaid employee per pay

20 period for all subsequent violations, per Labor Code §225.5; and/or $100 per each unpaid

21 employee per pay period for the initial violation and $200 per each unpaid employee per pay

22 period for all subsequent violations, per Labor Code § 2699(f).

23

24     C)    Injunctive relief to prohibit Defendants from making similar unlawful

25 and/or willful deductions from vacation pay in the future.

26

27

28

8

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

10943974.tif - 3/14/2008 11:01:35 AM

**SECOND CAUSE OF ACTION**
(Late Payment of Wages in Violation of the Fair Labor
Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder)

28)    Plaintiffs incorporate by reference paragraphs 1 through 27 above as if fully set forth herein.

29)    True and correct copies of Consents to Become Party Plaintiffs executed by Plaintiffs BERNARDI, BICKHAM, DAVENPORT, DOUGLAS, BUSTOS, KAESLER, KIM, NAVA, and BOUZIDIN are attached hereto, as Exhibit A.

30)    At all relevant times herein, individual plaintiffs and all similarly situated employees who submit Consents to Become Party Plaintiffs are or were employed by and engaged in providing elevator construction services to Defendants. In performing their duties for Defendants, Plaintiffs were "employees" employed by an "enterprise engaged in commerce or the production of goods for commerce" within the scope of 29 U.S.C. §207(a).

31)    At all material times, Defendants were required by the express terms of a written contract and/or by custom and practice to compensate employees for accrued Vacation Pay on a percentage basis based on actual hours worked by Plaintiffs on or before January 15, 2008 for the six month period (July 1-December 31, 2007) immediately preceding it.

32)    At all material times, Defendants failed to compensate employees the Vacation Pay owed and due on January 15, 2008 when such wages were due including in weeks in which Plaintiffs and the plaintiff class worked and were paid for hours in excess of forty in the workweek. By failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA.

9

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

33)    As a result of Defendants failure and refusal to pay plaintiffs and all those .
similarly situated the full amount of the Vacation wages they were due, individual plaintiffs and
all similarly situated employees of Defendants who submit Consents to Become Party Plaintiff
are entitled to the amounts that remain unpaid as liquidated damages, in an amount to be proven
at trial, in the form of back pay compensation for all Vacation Pay owed, and reasonable
attorneys fees and costs under 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
(Declaratory Relief - Cal. Code of Civil Procedure ' 1060)

34)    Plaintiffs incorporate by reference paragraphs 1 through 33 above as if fully set
forth herein.

35)    An actual, substantial and ongoing controversy exists between Plaintiffs on the
one hand, and Defendants on the other hand, as to whether Defendants are unlawfully
withholding Vacation Pay from individual plaintiffs and members of the proposed class, in
violation of Labor Code Section 222 and, by are unlawfully failing to pay vacation pay on a
timely basis, failed to provide the overtime compensation provided for in violation by of the
FLSA.

36)    Plaintiffs submit that the answer to the above questions is "yes." On information
and belief, Defendants' position is that the answer to all the above questions is "no."
Accordingly, Plaintiffs on their own behalf and as class representatives of all members of the
proposed class are entitled to declaratory relief resolving this dispute.

///
///
///

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

10

10943974.tif - 3/14/2008 11:01:35 AM

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1)      Compensatory damages in excess of $25,000.00, according to proof, including all unpaid vacation wages due and owing at the proper rate or pay, within the statute of limitations;

2)      An equal additional amount as liquidated damages for plaintiffs under the FLSA, within the statute of limitations;

3)      Civil penalties as provided by Labor Code Section 2699;

4)      Prejudgment interest;

5)      Reasonable attorneys' fees and costs of prosecuting this action;

6)      A judicial declaration that Defendants practice of unlawfully deducting part of the vacation pay owed to all proposed class members violates Labor Code Section 222 and the FLSA and regulations promulgated under the FLSA;

7)      A preliminary and permanent injunction, enjoining any further violations of law by Defendants; and

8)      Such other relief as the Court may deem just and appropriate.

### JURY TRIAL

Plaintiffs in the above referenced action hereby demand a trial by jury.

Dated: March 7, 2008                      Respectfully submitted,
                                          LEONARD CARDER, LLP

                                          By: _____
                                              Lynn Rossman Faris
                                              Attorneys for Plaintiffs

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169    FAX (510) 272-0174

11

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

MAR-14-2008(FRI) 10:49    ONE LEGAL                    (FAX)1+510+873+0984        P. 018/046

# EXHIBIT A

10943974.tif - 3/14/2008 11:01:35 AM

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Jeff BERNARD 1_ , a current or former employee

of Amtech/San Francisco Elevator Co., hereby consent to become a party plaintiff in an

action arising under the Fair Labor Standards Act regarding the compensations paid to

me by said Amtech/San Francisco Elevator Co., for services rendered thereto.

Date: _2/21/08_        By: Sign name: _Jeff Bernardi_
                       Spell name: _Jeff BERNARD 1_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Thomas E. Bickhoff_ a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/20/08_        By: Sign name: _____
                           Spell name:

10943974.tif - 3/14/2008 11:01:35 AM

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Randy Davenport_, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2-22-08_        By: Sign name: _____

Spell name:

_Randy P Davenport_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned Bruce Dou9les current or former employee

of Mitsubishi Elevator Co., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Mitsubishi Elevator Co., for services rendered thereto.

Date: 2/19/2008    By: Sign name: _____
                      Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Michael Rouzidu_, a current or former employee

of Kone, Inc., hereby consent to become a party plaintiff in an action arising under the

Fair Labor Standards Act regarding the compensations paid to me by said Kone, Inc.,

for services rendered thereto.

Date: _3/5/08_    By: Sign name: _Michael Rouzil_
                      Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Dan Kaesler_, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2-19-08_        By: Sign name: _____

                      Spell name: _Dan Kaesler_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned  RICHARD KIM  , a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co.,  for services rendered thereto.

Date: 2/28/08             By: Sign name: _____
                          Spell name: RICHARD J. KIM

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned __David Naate__, a current or former employee of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/08          By: Sign name: __David Neva__
                           Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _MANUEL BUSTOS_ , a current or former employee of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/2008         By: Sign name: _Manuel Bustos_
                        Spell name: MANUEL BUSTOS

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. (CRC 201.9(c))

### Superior Court of California
### County of San Francisco

ADR-1   10/07 (js)                                                    Page 1

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

10943974.tif - 3/14/2008 11:01:35 AM

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

ADR-1  10/07 (Ja)                                                    Page 3

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4; all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

ADR-1  10/07 (ja)                                                    Page 5



A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 provides three different voluntary mediation programs for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

10943974.tif - 3/14/2008 11:01:35 AM

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

## Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1   10/07 (js)                                                      Page 9

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation                    ☐ Mediation Services of BASF    ☐ Judicial Mediation
☐ Binding arbitration                                                                          Judge _____
☐ Non-binding judicial arbitration                                                       Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/08                              STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

10943974.tif - 3/14/2008 11:01:35 AM

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:    Time:    Dept.:    Div.:    Room:
Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

10943974.tif - 3/14/2008 11:01:35 AM

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
    The party or parties request ☐ a jury trial ☐ a nonjury trial    *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a. ☐ The trial has been set for *(date):*
    b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
    The party or parties estimate that the trial will take *(check one):*
    a. ☐ days *(specify number):*
    b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
    The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:
    e.  Fax number:
    f.  E-mail address:
    g.  Party represented:
    ☐ Additional representation is described in Attachment 8.

9.  **Preference**
    ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110 [Rev. January 1, 2007]    **CASE MANAGEMENT STATEMENT**    Page 2 of 4

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply)*:

   (1) ☐ Mediation
   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
   (4) ☐ Binding judicial arbitration
   (5) ☐ Binding private arbitration
   (6) ☐ Neutral case evaluation
   (7) ☐ Other *(specify)*:

   e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
   f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**
   ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
   b. Reservation of rights:   ☐ Yes   ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy   ☐ Other *(specify)*:
   Status:

**14. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 14a.
   b. ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party)*:

**15. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

10943974.tif - 3/14/2008 11:01:35 AM

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

    c. ☐ The following discovery issues are anticipated *(specify)*:


**18. Economic Litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:


**19. Other issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:


**20. Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:


    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:


**21. Case management orders.**
    Previous case management orders in this case are *(check one)*:     ☐ none     ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:


| _____ | ► _____ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| _____ | ► _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached |

CM-110 [Rev. January 1, 2007]                **CASE MANAGEMENT STATEMENT**                Page 4 of 4



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

### Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)



## PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:

# www.sfbar.org/mediation

### QUESTIONS?
## adr@sfbar.org or 415-982-1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

1094397A.tif - 3/14/2008 11:01:36 AM

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously pledge one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the consent to mediate form with BASF. Hourly fees beyond the three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized anytime, whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used anytime during the litigation period and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

# EXHIBIT C

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state Bar number, and address): | ENDORSED |
|---|---|

Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450, Oakland, CA 94612

Superior Court of California
County of San Francisco

TELEPHONE NO.: (510) 272-0169    FAX NO.: (510) 272-0174

MAR 7 - 2008

ATTORNEY FOR (Name): Plaintiffs

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:
MAILING ADDRESS: 400 McAllister St., # 103
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
    BERNARDI, ET AL. V. AMTECH

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder | | CGC-08-473115 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/6/08

LYNN ROSSMAN FARIS
(TYPE OR PRINT NAME)                    ▶ _____
                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com



COPY

Lynn Rossman Faris (State Bar No. 96029)
Jennifer Keating (State Bar No. 250857)
LEONARD CARDER, LLP
1330 Broadway, Ste 1450
Oakland, CA 94612
Tel: 510 272 0169
Fax: 510 272 0174

Attorneys for Plaintiffs



ENDORSED
FILED
Superior Court of California
County of San Francisco

CASE MANAGEMENT CONFERENCE SET

MAR 7 - 2008

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

AUG 8 - 2008 - 9:00 AM

DEPARTMENT 212

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all persons similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,<br><br>    Defendants. | CASE NO.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>UNLIMITED CIVIL CASE<br><br>JURY TRIAL DEMANDED |



LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

2

3    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE

4    DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA,

5    MANUEL BUSTOS, on behalf of themselves and all others similarly situated (hereinafter

6    "Plaintiffs") hereby allege as follows:

7                                    **INTRODUCTION**

8        1)      Plaintiffs seek damages, civil penalties, declaratory and injunctive relief for

9

10    themselves and the class of similarly situated employees they represent for the unlawful and/or

11    willful withholding of a portion of their wages (known as vacation pay) in violation of

12    California Labor Code Section 222 and 2699 and for late payment of wages due in violation of

13    the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C., Section 216(b).

14        2)      Plaintiffs are employed by Defendants AMTECH/SAN FRANCISCO, KONE,

15    INC., MITSUBISHI ELEVATOR CO., OTIS ELEVATOR CO., and/or SCHINDLER

16

17    ELEVATOR CORP.(hereinafter "Defendants") under a collective bargaining agreement which

18    requires Defendants to pay in full pay accrued during the prior six months as "vacation pay" on

19    January 15 and July 15 of each year. Despite that clear obligation and prior warning that failure

20    to pay the accrued wages would be illegal, Defendants and each of them, have willfully and/or

21    unlawfully withheld a portion of the wages due to each Plaintiff and all other similarly situated

22    employed by Defendants in San Francisco, California.

23

24                              **JURISDICTION AND VENUE**

25        3)      This Court of unlimited jurisdiction has jurisdiction to enforce the provisions of

26    the California Labor Code  pursuant to the California Constitution, Article VI, ' 10 and has

27    jurisdiction over the FLSA cause of action pursuant to 29 U.S.C.  §§ 216(b).

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

4)    Venue for this action properly lies in San Francisco County Superior Court because Plaintiffs were employed by Defendants in San Francisco and thus some or all of the actions alleged herein occurred within the City and County of San Francisco.

## PARTIES

5)    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MANUEL BUSTOS, DAN KAESLER, RICHARD KIM, DAVID NAVA, MICHAEL BOUZIDIN are employed by one of the above named Defendants as elevator constructors in San Francisco, California. More specifically, Plaintiff Jeff Bernardi is employed by Amtech/San Francisco Elevator Company; Plaintiffs Thomas Bickham, Randy Davenport, Dan Kaesler, Richard Kim and David Nava arc employed by Otis Elevator Company; Plaintiff Manuel Bustos is employed by Schindler Elevator Company; Plaintiff Bruce Douglas is employed by Mitsubishi Elevator Company; and Plaintiff Michael Bouzidin is employed by Kone, Inc. Plaintiffs sue on their own behalf, and as regards the California causes of action, as class representatives on behalf of all similarly situated present and former employees of Defendants whose vacation wages were similarly unlawfully and/or willfully withheld.

6)    Defendant AMTECH/ SAN FRANCISCO ELEVATOR CO. (hereinafter "AMTECH") does business in San Francisco by providing elevator installation, construction, and maintenance services. AMTECH is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that AMTECH is a corporation with its principal place of business is in South San Francisco, California.

7)    Defendant KONE, Inc. (hereinafter "KONE") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. KONE

2

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

2   is responsible for payment of wages and deductions from those wages under Labor Code Section

3   222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and

4   believe and thereon allege that KONE is a corporation with its principal place of business in

5   San Leandro, California.

6

7       8)     Defendant MITSUBISHI ELEVATOR COMPANY (hereinafter

8   "MITSUBISHI") is a company that does business in San Francisco by providing elevator

9   installation, construction, and maintenance services. MITSUBISHI is responsible for payment of

10  wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and

11  class members employed by them. Plaintiffs are informed and believe and thereon allege that

12  MITSUBISHI is a corporation with its principal place of business in Oakland, California.

13

14      9)     Defendant OTIS ELEVATOR COMPANY (hereinafter "OTIS") is a company

15  that does business in San Francisco by providing elevator installation, construction, and

16  maintenance services. OTIS is responsible for payment of wages and deductions from those

17  wages under Labor Code Section 222 as to those Plaintiffs and class members employed by

18  them. Plaintiffs are informed and believe and thereon allege that OTIS is a corporation with its

19  principal place of business in San Francisco, California.

20

21      10)    Defendant SCHINDLER ELEVATOR CORPORATION (hereinafter

22  "SCHINDLER") is a company that does business in San Francisco by providing elevator

23  installation, construction, and maintenance services. SCHINDLER is responsible for payment

24  of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs

25  and class members employed by them. Plaintiffs are informed and believe and thereon allege that

26  SCHINDLER is a corporation with its principal place of business in San Leandro, California.

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169      FAX (510) 272-0174

3

11)    The true names and capacities, whether individual, organizational or otherwise, of defendant DOES 1-10 are currently unknown to Plaintiffs, who therefore sue such defendants by fictitious names, under California Code of Civil Procedure Section 474. Plaintiffs are informed and believe, and on that basis allege that each of the defendants designated as "DOE" is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated as "DOE" when such identities become known.

## CLASS ACTION ALLEGATIONS

12)    Named Plaintiffs bring their claims based on the California Labor Code and the Fair Labor Standards Act on behalf of themselves and also on behalf of a class consisting of:

> all elevator constructors who are or were employed by any Defendant in San Francisco as an elevator constructor, helper or apprentice under the collective bargaining agreement between the International Union of Elevator Constructors and the National Elevator Bargaining Association, and who had amounts unlawfully or willfully deducted from their vacation wages in violation of the California Labor Code and/or who were not timely paid their full vacation wages in violation of the Fair Labor Standards Act.

As to the FLSA claim, named Plaintiffs attach hereto as Exhibit A their "consents to sue" as required by Section 16(b) of the FLSA and will file similar consents to sue herein when executed by similarly situated employees.

13)    Plaintiffs are informed and believe and thereon allege that, at a minimum, several hundred elevator constructors employed by Defendants have been and will be subjected to unlawful vacation wage deductions and late payment of vacation wages due and owing, in violation of state and federal law. As such, members of the class are so numerous that joinder is impracticable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

14) The claims of the named plaintiffs are typical of the claims of the class as a whole because each of the named plaintiffs is an elevator constructor employed by one of the named Defendants who was and is employed to perform work for which vacation wages were owed and from which pay unlawful and/or willful deductions were taken (and therefore remain unpaid although they were due on January 15) in violation of the California Labor Code and the Fair Labor Standards Act. In addition, Plaintiffs are informed and believe and thereon allege that additional vacation wages will be withheld from their pay and the pay of all class members absent relief from this court.

15) Common questions of fact and law predominate over individual issues in this action. These common issues include but are not limited to:

a) whether Defendants' uniform, class-wide policy and practice of illegal deduction of amounts from vacation pay accrued and owed to Plaintiffs and class members violates Labor Code Section 222;

b) whether Defendants' uniform, class-wide policy and practice of failure to pay the full amount of vacation wages on the date due violates the requirement of timely payment of wages under the FLSA and/or the regulations promulgated under the FLSA;

16) A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the losses suffered by individual class members may be relatively small, the expense and burden of duplicative individual litigation make it impractical for class members individually to seek redress for the unlawful conduct alleged herein.

17) Named plaintiffs are proper and adequate class representatives and will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in both class action and employment litigation.

5

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

## FACTS COMMON TO ALL CAUSES OF ACTION

18) Named Plaintiffs and the class members are employed by one of the named Defendants and covered under the current Collective Bargaining Agreement (hereinafter ACBA") between the International Union of Elevator Constructors (IUEC) and the National Elevator Bargaining Association (NEBA). That agreement is a wage agreement arrived at through collective bargaining under Labor Code Section 222.

19) Specifically, Article XII of the CBA, entitled "Vacations" requires Defendants to compensate employees for vacation pay at an agreed upon wage. Pursuant to the collective bargaining agreement, this "vacation pay" is a percentage (either 6% or 8% depending on years worked in the industry) of an individual employee's total hours actually worked during the preceding six month period. Vacation pay must be paid to employees under the CBA twice each year on or before January 15 and July 15 for the six months immediately preceding the payment. The applicable portion of Article XII states:

> (a) "A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. . . ."

> (b) "The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid in full to the employee by January 15 of the succeeding year." (Emphasis added.)

20) Vacation pay constitutes part of the overall compensation package to employees, and, as such, is part of Plaintiffs wages as defined by California Labor Code Section 200 and the

6

amount of the wages are arrived at through collective bargaining pursuant to California Labor Code Section 222.

21)    On or about January 15, 2008, Defendant Employers willfully and/or unlawfully deducted amounts from plaintiffs' accrued vacation pay, which was due and owing and required to be paid in full on January 15, 2008. The amounts withheld were neither authorized by statute nor consented to or otherwise in any way authorized by Plaintiffs nor authorized by law.

22)    On behalf of named Plaintiffs and the class members they represent, the labor union, the International Union of Elevator Constructors repeatedly demanded that Defendants compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay all such accrued vacation pay. Defendants have repeatedly failed and refused to correct these violations and compensate employees for the vacation pay in full.

### FIRST CAUSE OF ACTION
### (California Labor Code Section 222)

23)    Plaintiffs incorporate by reference paragraphs 1 through 22 above as if fully set forth here.

24)    At all material times, Plaintiffs wages were and are established by a valid collective bargaining agreement arrived at through collective bargaining. Despite that wage agreement, on or about January 15, 2008, Defendants unlawfully and/or willfully withheld from Plaintiffs part of Plaintiffs' vacation wages set by the CBA.

25)    Plaintiffs and the proposed class have been injured in an amount to be proven at trial, by not receiving all vacation wages to which they were entitled on January 15, 2008 and thereafter. Plaintiffs are informed and believe and thereon allege that Defendants intent to

7

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

2   continue their policy and practice of unlawfully deducting amounts from accrued vacation wages

3   unless enjoined by this court.

4       26)    Plaintiffs have given timely notice, as required by Labor Code Section 2699.3 to

5   Defendants and the California Labor and Workforce Development Agency.

6

7       27)    Defendants' failure and unlawful refusal to pay Plaintiffs and all similarly situated

8   employees the full amount of their accrued vacation wages set by the CBA violates California

9   Labor Code § 222. Plaintiffs will be irreparably harmed by such future unlawful deductions and

10  have no adequate legal remedy to prevent such unlawful conduct, absent this Court's injunction

11  against such conduct. Accordingly, individual Plaintiffs and similarly situated employees are

12  entitled to:

13

14      A)    Damages to be proven at trial in the amount of all vacation wages

15  unlawfully withheld, with prejudgment interest commencing on January 15, 2008, along with

16  reasonable attorneys fees and costs incurred in prosecuting this action;

17      B)    All applicable civil penalties under Labor Code § 2699, including but not

18  limited to $100 per each unpaid employee per pay period for the initial violation and $200 per

19  each unpaid employee per pay period plus 25% of the unpaid wage per unpaid employee per pay

20  period for all subsequent violations, per Labor Code §225.5; and/or $100 per each unpaid

21  employee per pay period for the initial violation and $200 per each unpaid employee per pay

22

23  period for all subsequent violations, per Labor Code § 2699(f).

24      C)    Injunctive relief to prohibit Defendants from making similar unlawful

25  and/or willful deductions from vacation pay in the future.

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

8

**SECOND CAUSE OF ACTION**
(Late Payment of Wages in Violation of the Fair Labor
Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder)

28)    Plaintiffs incorporate by reference paragraphs 1 through 27 above as if fully set forth herein.

29)    True and correct copies of Consents to Become Party Plaintiffs executed by Plaintiffs BERNARDI, BICKHAM, DAVENPORT, DOUGLAS, BUSTOS, KAESLER, KIM, NAVA, and BOUZIDIN are attached hereto, as Exhibit A.

30)    At all relevant times herein, individual plaintiffs and all similarly situated employees who submit Consents to Become Party Plaintiffs are or were employed by and engaged in providing elevator construction services to Defendants. In performing their duties for Defendants, Plaintiffs were "employees" employed by an "enterprise engaged in commerce or the production of goods for commerce" within the scope of 29 U.S.C. §207(a).

31)    At all material times, Defendants were required by the express terms of a written contract and/or by custom and practice to compensate employees for accrued Vacation Pay on a percentage basis based on actual hours worked by Plaintiffs on or before January 15, 2008 for the six month period (July 1-December 31, 2007) immediately preceding it.

32)    At all material times, Defendants failed to compensate employees the Vacation Pay owed and due on January 15, 2008 when such wages were due including in weeks in which Plaintiffs and the plaintiff class worked and were paid for hours in excess of forty in the workweek. By failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

9

33)    As a result of Defendants failure and refusal to pay plaintiffs and all those . similarly situated the full amount of the Vacation wages they were due, individual plaintiffs and all similarly situated employees of Defendants who submit Consents to Become Party Plaintiff are entitled to the amounts that remain unpaid as liquidated damages, in an amount to be proven at trial, in the form of back pay compensation for all Vacation Pay owed, and reasonable attorneys fees and costs under 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
(Declaratory Relief - Cal. Code of Civil Procedure ' 1060)

34)    Plaintiffs incorporate by reference paragraphs 1 through 33 above as if fully set forth herein.

35)    An actual, substantial and ongoing controversy exists between Plaintiffs on the one hand, and Defendants on the other hand, as to whether Defendants are unlawfully withholding Vacation Pay from individual plaintiffs and members of the proposed class, in violation of Labor Code Section 222 and, by are unlawfully failing to pay vacation pay on a timely basis, failed to provide the overtime compensation provided for in violation of the FLSA.

36)    Plaintiffs submit that the answer to the above questions is "yes." On information and belief, Defendants' position is that the answer to all the above questions is "no." Accordingly, Plaintiffs on their own behalf and as class representatives of all members of the proposed class are entitled to declaratory relief resolving this dispute.

/ / /

/ / /

/ / /

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

10

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1) Compensatory damages in excess of $25,000.00, according to proof, including all unpaid vacation wages due and owing at the proper rate or pay, within the statute of limitations;

2) An equal additional amount as liquidated damages for plaintiffs under the FLSA, within the statute of limitations;

3) Civil penalties as provided by Labor Code Section 2699;

4) Prejudgment interest;

5) Reasonable attorneys' fees and costs of prosecuting this action;

6) A judicial declaration that Defendants practice of unlawfully deducting part of the vacation pay owed to all proposed class members violates Labor Code Section 222 and the FLSA and regulations promulgated under the FLSA;

7) A preliminary and permanent injunction, enjoining any further violations of law by Defendants; and

8) Such other relief as the Court may deem just and appropriate.

## JURY TRIAL

Plaintiffs in the above referenced action hereby demand a trial by jury.

Dated: March 7, 2008

Respectfully submitted,
LEONARD CARDER, LLP

By: _____
Lynn Rossman Faris
Attorneys for Plaintiffs

11

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

# EXHIBIT A

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _JEFF BERNARD I_, a current or former employee of Amtech/San Francisco Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Amtech/San Francisco Elevator Co., for services rendered thereto.

Date: _2/21/08_     By: Sign name: _Jeff Bernardi_

Spell name: _JEFF BERNARD I_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *Thomas E. Bickhart* a current or former employee of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Otis Elevator Co., for services rendered thereto.

Date: 2/20/08       By: Sign name: _____
                        Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *Randy Davenport*, a current or former employee of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Otis Elevator Co., for services rendered thereto.

Date: *2-22-08*     By: Sign name: _____
                    Spell name:

                    *Randy P Davenport*

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned Bruce Douglas a current or former employee of Mitsubishi Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Mitsubishi Elevator Co., for services rendered thereto.

Date: 2/19/2008    By: Sign name: _____
                       Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Michael Bouzidin_, a current or former employee of Kone, Inc., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Kone, Inc., for services rendered thereto.

Date: _3/5/08_

By: Sign name: _Michael Bouzid_
Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Dan Kaesler_, a current or former employee of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Otis Elevator Co., for services rendered thereto.

Date: 2-19-08    By: Sign name: _____

Spell name: DAN KAESLEN

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned ___RICHARD KIM___, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: __2/28/08__

By: Sign name: _____

Spell name: RICHARD J. KIM

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _David Nava_ , a current or former employee
of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action
arising under the Fair Labor Standards Act regarding the compensations paid to me by
said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/08        By: Sign name: _David Nava_
                         Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned MANUEL BUSTOS , a current or former employee

of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/2008     By: Sign name: Manuel Bustos

Spell name: MANUEL BUSTOS

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

   1)   Judicial Arbitration
   2)   Mediation
   3)   The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

### JUDICIAL ARBITRATION

### *Description*

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## *Operation*

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## *Cost*

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## *Description*

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.



A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

## Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

*Cost*

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| **Plaintiff** <br> v. <br><br> **Defendant** | Case No. _____ <br><br> **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation ☐ **Mediation Services of BASF** ☐ **Judicial Mediation**
☐ Binding arbitration  Judge _____
☐ Non-binding judicial arbitration  Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2 3/06  STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** *(Amount demanded exceeds $25,000)* ☐ **LIMITED CASE** *(Amount demanded is $25,000 or less)* | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.     The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐  have had a default entered against them *(specify names):*
   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel · ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110 [Rev. January 1, 2007]    **CASE MANAGEMENT STATEMENT**    Page 2 of 4

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**10. d.** The party or parties are willing to participate in *(check all that apply)*:

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other *(specify)*:

**e.** ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

**f.** ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

**g.** ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

**a.** ☐ Insurance carrier, if any, for party filing this statement *(name)*:

**b.** Reservation of rights: ☐ Yes ☐ No

**c.** ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

**a.** ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 14a.

**b.** ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
a. ☐ The party or parties have completed all discovery.
b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**
☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**.
Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

► _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)

► _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached





# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

CASE NUMBER: CGC-08-473115  JEFF BERNARDI et al VS. AMTECH/SAN FRANCISCO ELE

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

| | |
|---|---|
| **DATE:** | **AUG-08-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)**

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?
**adr@sfbar.org or 415-982-1600**

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.



## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the consent to mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone, whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation period and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org. It is very likely we can match your need with one of our panelists.

**WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600**

# EXHIBIT D

3/14/08 → 3:20 P1

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI
ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER
ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS,
MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL
BUSTOS, on behalf of themselves and all persons similarly situated,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: (El nombre y dirección de la corte es): | CASE NUMBER (Número del caso): CGC08- 473115 |
|---|---|

SAN FRANCISCO COUNTY SUPERIOR COURT
400 Mcallister St # 103; San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP, 1330 Broadway, Ste. 1450, O~~GORDON PARK~~ GEBINYAT BAUTISTA

| DATE: (Fecha) MAR 7 2008 | Clerk, by (Secretario) | , Deputy (Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): Schindler Elevator Corporation

under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

COPY

JUDGE

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

BRANCH NAME:

CASE NAME:
BERNARDI, ET AL. V. AMTECH

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER. |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC08-473115 |
| | | | | JUDGE: |
| | | | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☑ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☐ Substantial amount of documentary evidence
   - d. ☐ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.☑ monetary   b.☑ nonmonetary; declaratory or injunctive relief   c.☐ punitive
4. Number of causes of action (specify):
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/6/08

LYNN ROSSMAN FARIS
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

## ORIGINAL

1

2   Lynn Rossman Faris (State Bar No. 96029)
    Jennifer Keating (State Bar No. 250857)
3   LEONARD CARDER, LLP
    1330 Broadway, Ste 1450
4   Oakland, CA 94612
    Tel: 510 272 0169
5   Fax: 510 272 0174

6   Attorneys for Plaintiffs

**F I L E D**
Superior Court of California
County of San Francisco

MAR 7 2008

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

AUG 8 - 2008 - 9:30 AM

DEPARTMENT 212

7

8   SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9   IN AND FOR THE COUNTY OF SAN FRANCISCO    SUMMONS ISSUED

10

11  JEFF BERNARDI, THOMAS BICKHAM, RANDY        ) CASE NO. 08-473115
    DAVENPORT, BRUCE DOUGLAS, MICAHEL          )
12  BOUZIDIN, DAN KAESLER, RICHARD KIM,        ) CLASS ACTION
    DAVID NAVA, MANUEL BUSTOS, on behalf of    )
13  themselves and all persons similarly situated, ) **COMPLAINT FOR**
                                               ) **DAMAGES, PENALTIES,**
14         Plaintiffs,                         ) **DECLARATORY AND**
                                               ) **INJUNCTIVE RELIEF**
15  vs.                                        )
                                               )
16  AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE,   ) UNLIMITED CIVIL CASE
    INC.; MITSUBISHI ELEVATOR COMPANY; OTIS    )
17  ELEVATOR COMPANY; SCHINDLER ELEVATOR       ) JURY TRIAL DEMANDED
    CORPORATION; and DOES 1 through 10 inclusive, )
18                                             )
           Defendants.                         )
19                                             )
                                               )

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1
2
3   Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE
4   DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA,
5   MANUEL BUSTOS, on behalf of themselves and all others similarly situated (hereinafter
6   "Plaintiffs") hereby allege as follows:

7                                    **INTRODUCTION**

8       1)      Plaintiffs seek damages, civil penalties, declaratory and injunctive relief for
9
10  themselves and the class of similarly situated employees they represent for the unlawful and/or
11  willful withholding of a portion of their wages (known as vacation pay) in violation of
12  California Labor Code Section 222 and 2699 and for late payment of wages due in violation of
13  the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C., Section 216(b).

14      2)      Plaintiffs are employed by Defendants AMTECH/SAN FRANCISCO, KONE,
15  INC., MITSUBISHI ELEVATOR CO., OTIS ELEVATOR CO., and/or SCHINDLER
16  ELEVATOR CORP.(hereinafter "Defendants") under a collective bargaining agreement which
17  requires Defendants to pay in full pay accrued during the prior six months as "vacation pay" on
18
19  January 15 and July 15 of each year.  Despite that clear obligation and prior warning that failure
20  to pay the accrued wages would be illegal, Defendants and each of them, have willfully and/or
21  unlawfully withheld a portion of the wages due to each Plaintiff and all other similarly situated
22  employed by Defendants in San Francisco, California.

23                              **JURISDICTION AND VENUE**
24
25      3)      This Court of unlimited jurisdiction has jurisdiction to enforce the provisions of
26  the California Labor Code  pursuant to the California Constitution, Article VI, ' 10 and has
27  jurisdiction over the FLSA cause of action pursuant to 29 U.S.C. §§ 216(b).
28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

2    4)    Venue for this action properly lies in San Francisco County Superior Court

3  because Plaintiffs were employed by Defendants in San Francisco and thus some or all of the

4  actions alleged herein occurred within the City and County of San Francisco.

5
                                      **PARTIES**
6

7    5)    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT,

8  BRUCE DOUGLAS, MANUEL BUSTOS, DAN KAESLER, RICHARD KIM, DAVID NAVA,

9  MICHAEL BOUZIDIN are employed by one of the above named Defendants as elevator

10 constructors in San Francisco, California.  More specifically, Plaintiff Jeff Bernardi is employed

11 by Amtech/San Francisco Elevator Company; Plaintiffs Thomas Bickham, Randy Davenport,

12 Dan Kaesler, Richard Kim and David Nava are employed by Otis Elevator Company; Plaintiff

13 Manuel Bustos is employed by Schindler Elevator Company; Plaintiff Bruce Douglas is

14 employed by Mitsubishi Elevator Company; and Plaintiff Michael Bouzidin is employed by

15 Kone, Inc.  Plaintiffs sue on their own behalf, and as regards the California causes of action, as

16 class representatives on behalf of all similarly situated present and former employees of

17

18 Defendants whose vacation wages were similarly unlawfully and/or willfully withheld.

19    6)    Defendant AMTECH/ SAN FRANCISCO ELEVATOR CO. (hereinafter

20 "AMTECH") does business in San Francisco by providing elevator installation, construction,

21

22 and maintenance services.  AMTECH is responsible for payment of wages and deductions from

23 those wages under Labor Code Section 222 as to those Plaintiffs and class members employed

24 by them.  Plaintiffs are informed and believe and thereon allege that AMTECH is a corporation

25 with its principal place of business is in South San Francisco, California.

26    7)    Defendant KONE, Inc. (hereinafter "KONE") is a company that does business in

27
   San Francisco by providing elevator installation, construction, and maintenance services.  KONE
28

2

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169    FAX (510) 272-0174

1

2  is responsible for payment of wages and deductions from those wages under Labor Code Section

3  222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and

4  believe and thereon allege that KONE is a corporation with its principal place of business in

5  San Leandro, California.

6

7      8)    Defendant MITSUBISHI ELEVATOR COMPANY (hereinafter

8  "MITSUBISHI") is a company that does business in San Francisco by providing elevator

9  installation, construction, and maintenance services. MITSUBISHI is responsible for payment of

10  wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and

11  class members employed by them. Plaintiffs are informed and believe and thereon allege that

12  MITSUBISHI is a corporation with its principal place of business in Oakland, California.

13

14      9)    Defendant OTIS ELEVATOR COMPANY (hereinafter "OTIS") is a company

15  that does business in San Francisco by providing elevator installation, construction, and

16  maintenance services. OTIS is responsible for payment of wages and deductions from those

17  wages under Labor Code Section 222 as to those Plaintiffs and class members employed by

18  them. Plaintiffs are informed and believe and thereon allege that OTIS is a corporation with its

19  principal place of business in San Francisco, California.

20

21      10)    Defendant SCHINDLER ELEVATOR CORPORATION (hereinafter

22  "SCHINDLER") is a company that does business in San Francisco by providing elevator

23  installation, construction, and maintenance services. SCHINDLER is responsible for payment

24  of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs

25  and class members employed by them. Plaintiffs are informed and believe and thereon allege that

26  SCHINDLER is a corporation with its principal place of business in San Leandro, California.

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169    FAX (510) 272-0174

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

11)     The true names and capacities, whether individual, organizational or otherwise, of defendant DOES 1-10 are currently unknown to Plaintiffs, who therefore sue such defendants by fictitious names, under California Code of Civil Procedure Section 474. Plaintiffs are informed and believe, and on that basis allege that each of the defendants designated as "DOE" is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated as "DOE" when such identities become known.

## CLASS ACTION ALLEGATIONS

12)     Named Plaintiffs bring their claims based on the California Labor Code and the Fair Labor Standards Act on behalf of themselves and also on behalf of a class consisting of:

> all elevator constructors who are or were employed by any Defendant in San Francisco as an elevator constructor, helper or apprentice under the collective bargaining agreement between the International Union of Elevator Constructors and the National Elevator Bargaining Association, and who had amounts unlawfully or willfully deducted from their vacation wages in violation of the California Labor Code and/or who were not timely paid their full vacation wages in violation of the Fair Labor Standards Act.

As to the FLSA claim, named Plaintiffs attach hereto as Exhibit A their "consents to sue" as required by Section 16(b) of the FLSA and will file similar consents to sue herein when executed by similarly situated employees.

13)     Plaintiffs are informed and believe and thereon allege that, at a minimum, several hundred elevator constructors employed by Defendants have been and will be subjected to unlawful vacation wage deductions and late payment of vacation wages due and owing, in violation of state and federal law. As such, members of the class are so numerous that joinder is impracticable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4

14)    The claims of the named plaintiffs are typical of the claims of the class as a whole because each of the named plaintiffs is an elevator constructor employed by one of the named Defendants who was and is employed to perform work for which vacation wages were owed and from which pay unlawful and/or willful deductions were taken (and therefore remain unpaid although they were due on January 15) in violation of the California Labor Code and the Fair Labor Standards Act. In addition, Plaintiffs are informed and believe and thereon allege that additional vacation wages will be withheld from their pay and the pay of all class members absent relief from this court.

15)    Common questions of fact and law predominate over individual issues in this action. These common issues include but are not limited to:

a) whether Defendants' uniform, class-wide policy and practice of illegal deduction of amounts from vacation pay accrued and owed to Plaintiffs and class members violates Labor Code Section 222;

b) whether Defendants' uniform, class-wide policy and practice of failure to pay the full amount of vacation wages on the date due violates the requirement of timely payment of wages under the FLSA and/or the regulations promulgated under the FLSA;

16)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the losses suffered by individual class members may be relatively small, the expense and burden of duplicative individual litigation make it impractical for class members individually to seek redress for the unlawful conduct alleged herein.

17)    Named plaintiffs are proper and adequate class representatives and will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in both class action and employment litigation.

5

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

**FACTS COMMON TO ALL CAUSES OF ACTION**

18) Named Plaintiffs and the class members are employed by one of the named Defendants and covered under the current Collective Bargaining Agreement (hereinafter ACBA") between the International Union of Elevator Constructors (IUEC) and the National Elevator Bargaining Association (NEBA). That agreement is a wage agreement arrived at through collective bargaining under Labor Code Section 222.

19) Specifically, Article XII of the CBA, entitled "Vacations" requires Defendants to compensate employees for vacation pay at an agreed upon wage. Pursuant to the collective bargaining agreement, this "vacation pay" is a percentage (either 6% or 8% depending on years worked in the industry) of an individual employee's total hours actually worked during the preceding six month period. Vacation pay must be paid to employees under the CBA twice each year on or before January 15 and July 15 for the six months immediately preceding the payment. The applicable portion of Article XII states:

> (a) "A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. . . ."
>
> (b) "The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid **in full** to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid **in full** to the employee by January 15 of the succeeding year." (Emphasis added.)

20) Vacation pay constitutes part of the overall compensation package to employees, and, as such, is part of Plaintiffs wages as defined by California Labor Code Section 200 and the

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169    FAX (510) 272-0174

6

2  amount of the wages are arrived at through collective bargaining pursuant to California Labor
3  Code Section 222.

4    21)    On or about January 15, 2008, Defendant Employers willfully and/or unlawfully
5  deducted amounts from plaintiffs' accrued vacation pay, which was due and owing and required
6  to be paid in full on January 15, 2008. The amounts withheld were neither authorized by statute
7  nor consented to or otherwise in any way authorized by Plaintiffs nor authorized by law.
8

9    22)    On behalf of named Plaintiffs and the class members they represent, the labor
10  union, the International Union of Elevator Constructors repeatedly demanded that Defendants
11  compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay
12  all such accrued vacation pay. Defendants have repeatedly failed and refused to correct these
13  violations and compensate employees for the vacation pay in full.
14

15    **FIRST CAUSE OF ACTION**
     **(California Labor Code Section 222)**
16

17    23)    Plaintiffs incorporate by reference paragraphs 1 through 22 above as if fully set
18  forth here.

19    24)    At all material times, Plaintiffs wages were and are established by a valid
20  collective bargaining agreement arrived at through collective bargaining. Despite that wage
21  agreement, on or about January 15, 2008, Defendants unlawfully and/or willfully withheld from
22  Plaintiffs part of Plaintiffs' vacation wages set by the CBA.
23

24    25)    Plaintiffs and the proposed class have been injured in an amount to be proven at
25  trial, by not receiving all vacation wages to which they were entitled on January 15, 2008 and
26  thereafter. Plaintiffs are informed and believe and thereon allege that Defendants intent to
27
28

7

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

1

2  continue their policy and practice of unlawfully deducting amounts from accrued vacation wages

3  unless enjoined by this court.

4      26)    Plaintiffs have given timely notice, as required by Labor Code Section 2699.3 to

5  Defendants and the California Labor and Workforce Development Agency.

6

7      27)    Defendants' failure and unlawful refusal to pay Plaintiffs and all similarly situated

8  employees the full amount of their accrued vacation wages set by the CBA violates California

9  Labor Code § 222. Plaintiffs will be irreparably harmed by such future unlawful deductions and

10  have no adequate legal remedy to prevent such unlawful conduct, absent this Court's injunction

11  against such conduct. Accordingly, individual Plaintiffs and similarly situated employees are

12  entitled to:

13

14      A)    Damages to be proven at trial in the amount of all vacation wages

15  unlawfully withheld, with prejudgment interest commencing on January 15, 2008, along with

16  reasonable attorneys fees and costs incurred in prosecuting this action;

17      B)    All applicable civil penalties under Labor Code § 2699, including but not

18  limited to $100 per each unpaid employee per pay period for the initial violation and $200 per

19  each unpaid employee per pay period plus 25% of the unpaid wage per unpaid employee per pay

20  period for all subsequent violations, per Labor Code §225.5; and/or $100 per each unpaid

21  employee per pay period for the initial violation and $200 per each unpaid employee per pay

22  period for all subsequent violations, per Labor Code § 2699(f).

23

24      C)    Injunctive relief to prohibit Defendants from making similar unlawful

25  and/or willful deductions from vacation pay in the future.

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE, (510) 272-0169    FAX (510) 272-0174

8

**SECOND CAUSE OF ACTION**
(Late Payment of Wages in Violation of the Fair Labor
Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder)

28)    Plaintiffs incorporate by reference paragraphs 1 through 27 above as if fully set forth herein.

29)    True and correct copies of Consents to Become Party Plaintiffs executed by Plaintiffs BERNARDI, BICKHAM, DAVENPORT, DOUGLAS, BUSTOS, KAESLER, KIM, NAVA, and BOUZIDIN are attached hereto, as Exhibit A.

30)    At all relevant times herein, individual plaintiffs and all similarly situated employees who submit Consents to Become Party Plaintiffs are or were employed by and engaged in providing elevator construction services to Defendants. In performing their duties for Defendants, Plaintiffs were "employees" employed by an "enterprise engaged in commerce or the production of goods for commerce" within the scope of 29 U.S.C. §207(a).

31)    At all material times, Defendants were required by the express terms of a written contract and/or by custom and practice to compensate employees for accrued Vacation Pay on a percentage basis based on actual hours worked by Plaintiffs on or before January 15, 2008 for the six month period (July 1-December 31, 2007) immediately preceding it.

32)    At all material times, Defendants failed to compensate employees the Vacation Pay owed and due on January 15, 2008 when such wages were due including in weeks in which Plaintiffs and the plaintiff class worked and were paid for hours in excess of forty in the workweek. By failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA.

9

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

33) As a result of Defendants failure and refusal to pay plaintiffs and all those similarly situated the full amount of the Vacation wages they were due, individual plaintiffs and all similarly situated employees of Defendants who submit Consents to Become Party Plaintiff are entitled to the amounts that remain unpaid as liquidated damages, in an amount to be proven at trial, in the form of back pay compensation for all Vacation Pay owed, and reasonable attorneys fees and costs under 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
### (Declaratory Relief - Cal. Code of Civil Procedure ' 1060)

34) Plaintiffs incorporate by reference paragraphs 1 through 33 above as if fully set forth herein.

35) An actual, substantial and ongoing controversy exists between Plaintiffs on the one hand, and Defendants on the other hand, as to whether Defendants are unlawfully withholding Vacation Pay from individual plaintiffs and members of the proposed class, in violation of Labor Code Section 222 and, by are unlawfully failing to pay vacation pay on a timely basis, failed to provide the overtime compensation provided for in violation by of the FLSA.

36) Plaintiffs submit that the answer to the above questions is "yes." On information and belief, Defendants' position is that the answer to all the above questions is "no." Accordingly, Plaintiffs on their own behalf and as class representatives of all members of the proposed class are entitled to declaratory relief resolving this dispute.

/ / /

/ / /

/ / /

10

COMPLAINT FOR DAMAGES, PENALTIES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE. (510) 272-0169    FAX (510) 272-0174

**PRAYER**

WHEREFORE, Plaintiffs pray for relief as follows:

1)     Compensatory damages in excess of $25,000.00, according to proof, including all unpaid vacation wages due and owing at the proper rate or pay, within the statute of limitations;

2)     An equal additional amount as liquidated damages for plaintiffs under the FLSA, within the statute of limitations;

3)     Civil penalties as provided by Labor Code Section 2699;

4)     Prejudgment interest;

5)     Reasonable attorneys' fees and costs of prosecuting this action;

6)     A judicial declaration that Defendants practice of unlawfully deducting part of the vacation pay owed to all proposed class members violates Labor Code Section 222 and the FLSA and regulations promulgated under the FLSA;

7)     A preliminary and permanent injunction, enjoining any further violations of law by Defendants; and

8)     Such other relief as the Court may deem just and appropriate.

**JURY TRIAL**

Plaintiffs in the above referenced action hereby demand a trial by jury.

Dated: March 7, 2008                           Respectfully submitted,
                                               LEONARD CARDER, LLP

                                               By: _____
                                                   Lynn Rossman Faris
                                                   Attorneys for Plaintiffs

11

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT A

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _JEFF BERNARD I_, a current or former employee of Amtech/San Francisco Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Amtech/San Francisco Elevator Co., for services rendered thereto.

Date: 2/21/08

By: Sign name: _Jeff Bernardi_
Spell name: _JEFF BERNARD I_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Thomas E Bithe_ a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/20/08_          By: Sign name: _____

                                             Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *Randy Davenport*, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: **2-22-08**      By: Sign name: _____
                       Spell name:

                       *Randy P Davenport*

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned Bruce Douglas current or former employee

of Mitsubishi Elevator Co., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Mitsubishi Elevator Co., for services rendered thereto.

Date: 2/19/2008    By: Sign name: _____
                       Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *Michael Rouzidiu*, a current or former employee of Kone, Inc., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Kone, Inc., for services rendered thereto.

Date: 3/5/08

By: Sign name: *Michael Rouyl*
Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *DAN KAESLER*, a current or former employee of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Otis Elevator Co., for services rendered thereto.

Date: 2-19-08

By: Sign name: _____

Spell name: DAN KAESLER

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned ___Richard Kim___, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/28/08_

By: Sign name: _____

Spell name: _Richard J. Kim_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned ___DAVID NAVA___ , a current or former employee

of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/08          By: Sign name: ___David Nava___
                           Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _MANUEL BUSTOS_ , a current or former employee of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/2008

By: Sign name: _Manuel Bustos_
Spell name: MANUEL BUSTOS

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

.Superior Court of California
County of San Francisco

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

### JUDICIAL ARBITRATION

#### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.


## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 provides **three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

### Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1   10/07 (ja)                                                    Page 9

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐   **Private Mediation**     ☐   **Mediation Services of BASF**   ☐   **Judicial Mediation**
☐   **Binding arbitration**                                                 Judge _____
☐   **Non-binding judicial arbitration**                               Judge _____
☐   **BASF Early Settlement Program**
☐   **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2  3/06                   **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:        FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
    STREET ADDRESS:
    MAILING ADDRESS:
    CITY AND ZIP CODE:
    BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT<br><br>(Check one):  ☐ UNLIMITED CASE      ☐ LIMITED CASE<br>(Amount demanded      (Amount demanded is $25,000<br>exceeds $25,000)       or less) | CASE NUMBER: |
|---|---|

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                Time:            Dept.:          Div.:            Room:
Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1.  **Party or parties** *(answer one):*
    a.  ☐  This statement is submitted by party *(name):*
    b.  ☐  This statement is submitted jointly by parties *(names):*

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a.  The complaint was filed on *(date):*
    b.  ☐  The cross-complaint, if any, was filed on *(date):*

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a.  ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
    b.  ☐  The following parties named in the complaint or cross-complaint
        (1)  ☐  have not been served *(specify names and explain why not):*
        (2)  ☐  have been served but have not appeared and have not been dismissed *(specify names):*
        (3)  ☐  have had a default entered against them *(specify names):*
    c.  ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4.  **Description of case**
    a.  Type of case in  ☐  complaint    ☐  cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007]    **CASE MANAGEMENT STATEMENT**    Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov

American LegalNet, Inc.<br>www.FormsWorkflow.com

4. b. Providing a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial  *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110 [Rev. January 1, 2007]                    **CASE MANAGEMENT STATEMENT**                    Page 2 of 4

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d. The party or parties are willing to participate in *(check all that apply)*:

   (1) ☐ Mediation

   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

   (4) ☐ Binding judicial arbitration

   (5) ☐ Binding private arbitration

   (6) ☐ Neutral case evaluation

   (7) ☐ Other *(specify)*:

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

  ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

  b. Reservation of rights: ☐ Yes ☐ No

  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

  ☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

  a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

  ☐ Additional cases are described in Attachment 14a.

  b. A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

... ... ... ... ... ... ... ... ... ... ... by the date specified (describe all anticipated discovery):

| Party | Description | Date |
|-------|-------------|------|

c. ☐ The following discovery issues are anticipated (specify):

**18. Economic Litigation**
a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other issues**
☐ The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**
a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21. Case management orders**
Previous case management orders in this case are (check one):   ☐ none   ☐ attached as Attachment 21.

**22. Total number of pages attached** (if any): _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| _____ | ► | _____ |
|---|---|---|
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

| _____ | ► | _____ |
|---|---|---|
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]    **CASE MANAGEMENT STATEMENT**    Page 4 of 4



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

**DATE:**    AUG-08-2008

**TIME:**    9:00AM

**PLACE:**   **Department 212**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
**without an appearance** at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL**
**CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-**
**JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR**
**SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION**
**PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
**(SEE LOCAL RULE 4)**

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint. All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the**
**place of filing a written response to the complaint. You must file a written**
**response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?
## adr@sfbar.org or 415-982-1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond the three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone, whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process. It is not limited to San Francisco litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

# EXHIBIT E

COPY

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450, Oakland, CA 94612

TELEPHONE NO.: (510) 272-0169    FAX NO.: (510) 272-0174
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:
MAILING ADDRESS: 400 McAllister St., # 103
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
BERNARDI, ET AL. V. AMTECH

ENDORSED
Superior Court of California
County of San Francisco

MAR 7 - 2005

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC-08-473115 |
| | | | | JUDGE: |
| | | | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/6/08

LYNN ROSSMAN FARIS
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

COPY

Lynn Rossman Faris (State Bar No. 96029)
Jennifer Keating (State Bar No. 250857)
LEONARD CARDER, LLP
1330 Broadway, Ste 1450
Oakland, CA 94612
Tel: 510 272 0169
Fax: 510 272 0174

Attorneys for Plaintiffs

ENDORSED
Superior Court of California
County of San Francisco

MAR 7 - 2008
GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET
AUG 8 - 2008 - 9:00 AM

DEPARTMENT 212

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER ELEVATOR CORPORATION; and DOES 1 through 10 inclusive, <br><br> Defendants. | CASE NO. <br><br> CLASS ACTION <br><br> COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF <br><br> UNLIMITED CIVIL CASE <br><br> JURY TRIAL DEMANDED |

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169     FAX (510) 272-0174

Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL BUSTOS, on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs") hereby allege as follows:

## INTRODUCTION

1) Plaintiffs seek damages, civil penalties, declaratory and injunctive relief for themselves and the class of similarly situated employees they represent for the unlawful and/or willful withholding of a portion of their wages (known as vacation pay) in violation of California Labor Code Section 222 and 2699 and for late payment of wages due in violation of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C., Section 216(b).

2) Plaintiffs are employed by Defendants AMTECH/SAN FRANCISCO, KONE, INC., MITSUBISHI ELEVATOR CO., OTIS ELEVATOR CO., and/or SCHINDLER ELEVATOR CORP.(hereinafter "Defendants") under a collective bargaining agreement which requires Defendants to pay **in full** pay accrued during the prior six months as "vacation pay" on January 15 and July 15 of each year. Despite that clear obligation and prior warning that failure to pay the accrued wages would be illegal, Defendants and each of them, have willfully and/or unlawfully withheld a portion of the wages due to each Plaintiff and all other similarly situated employed by Defendants in San Francisco, California.

## JURISDICTION AND VENUE

3) This Court of unlimited jurisdiction has jurisdiction to enforce the provisions of the California Labor Code pursuant to the California Constitution, Article VI, ' 10 and has jurisdiction over the FLSA cause of action pursuant to 29 U.S.C. §§ 216(b).

1

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4)    Venue for this action properly lies in San Francisco County Superior Court because Plaintiffs were employed by Defendants in San Francisco and thus some or all of the actions alleged herein occurred within the City and County of San Francisco.

**PARTIES**

5)    Plaintiffs JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MANUEL BUSTOS, DAN KAESLER, RICHARD KIM, DAVID NAVA, MICHAEL BOUZIDIN are employed by one of the above named Defendants as elevator constructors in San Francisco, California. More specifically, Plaintiff Jeff Bernardi is employed by Amtech/San Francisco Elevator Company; Plaintiffs Thomas Bickham, Randy Davenport, Dan Kaesler, Richard Kim and David Nava are employed by Otis Elevator Company; Plaintiff Manuel Bustos is employed by Schindler Elevator Company; Plaintiff Bruce Douglas is employed by Mitsubishi Elevator Company; and Plaintiff Michael Bouzidin is employed by Kone, Inc. Plaintiffs sue on their own behalf, and as regards the California causes of action, as class representatives on behalf of all similarly situated present and former employees of Defendants whose vacation wages were similarly unlawfully and/or willfully withheld.

6)    Defendant AMTECH/ SAN FRANCISCO ELEVATOR CO. (hereinafter "AMTECH") does business in San Francisco by providing elevator installation, construction, and maintenance services. AMTECH is responsible for payment of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and believe and thereon allege that AMTECH is a corporation with its principal place of business is in South San Francisco, California.

7)    Defendant KONE, Inc. (hereinafter "KONE") is a company that does business in San Francisco by providing elevator installation, construction, and maintenance services. KONE

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

2

1

2  is responsible for payment of wages and deductions from those wages under Labor Code Section

3  222 as to those Plaintiffs and class members employed by them. Plaintiffs are informed and

4  believe and thereon allege that KONE is a corporation with its principal place of business in

5  San Leandro, California.

6

7  8)    Defendant MITSUBISHI ELEVATOR COMPANY (hereinafter

8  "MITSUBISHI") is a company that does business in San Francisco by providing elevator

9  installation, construction, and maintenance services. MITSUBISHI is responsible for payment of

10  wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs and

11  class members employed by them. Plaintiffs are informed and believe and thereon allege that

12  MITSUBISHI is a corporation with its principal place of business in Oakland, California.

13

14  9)    Defendant OTIS ELEVATOR COMPANY (hereinafter "OTIS") is a company

15  that does business in San Francisco by providing elevator installation, construction, and

16  maintenance services. OTIS is responsible for payment of wages and deductions from those

17  wages under Labor Code Section 222 as to those Plaintiffs and class members employed by

18  them. Plaintiffs are informed and believe and thereon allege that OTIS is a corporation with its

19  principal place of business in San Francisco, California.

20

21  10)    Defendant SCHINDLER ELEVATOR CORPORATION (hereinafter

22  "SCHINDLER") is a company that does business in San Francisco by providing elevator

23  installation, construction, and maintenance services. SCHINDLER is responsible for payment

24  of wages and deductions from those wages under Labor Code Section 222 as to those Plaintiffs

25  and class members employed by them. Plaintiffs are informed and believe and thereon allege that

26  SCHINDLER is a corporation with its principal place of business in San Leandro, California.

27

28

COMPLAINT FOR DAMAGES, PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

11)     The true names and capacities, whether individual, organizational or otherwise, of defendant DOES 1-10 are currently unknown to Plaintiffs, who therefore sue such defendants by fictitious names, under California Code of Civil Procedure Section 474.  Plaintiffs are informed and believe, and on that basis allege that each of the defendants designated as "DOE" is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated as "DOE" when such identities become known.

## CLASS ACTION ALLEGATIONS

12)     Named Plaintiffs bring their claims based on the California Labor Code and the Fair Labor Standards Act on behalf of themselves and also on behalf of a class consisting of:

> all elevator constructors who are or were employed by any Defendant in San Francisco as an elevator constructor, helper or apprentice under the collective bargaining agreement between the International Union of Elevator Constructors and the National Elevator Bargaining Association, and who had amounts unlawfully or willfully deducted from their vacation wages in violation of the California Labor Code and/or who were not timely paid their full vacation wages in violation of the Fair Labor Standards Act.

As to the FLSA claim, named Plaintiffs attach hereto as Exhibit A their "consents to sue" as required by Section 16(b) of the FLSA and will file similar consents to sue herein when executed by similarly situated employees.

13)     Plaintiffs are informed and believe and thereon allege that, at a minimum, several hundred elevator constructors employed by Defendants have been and will be subjected to unlawful vacation wage deductions and late payment of vacation wages due and owing, in violation of state and federal law.  As such, members of the class are so numerous that joinder is impracticable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

4

14)    The claims of the named plaintiffs are typical of the claims of the class as a whole because each of the named plaintiffs is an elevator constructor employed by one of the named Defendants who was and is employed to perform work for which vacation wages were owed and from which pay unlawful and/or willful deductions were taken (and therefore remain unpaid although they were due on January 15) in violation of the California Labor Code and the Fair Labor Standards Act. In addition, Plaintiffs are informed and believe and thereon allege that additional vacation wages will be withheld from their pay and the pay of all class members absent relief from this court.

15)    Common questions of fact and law predominate over individual issues in this action. These common issues include but are not limited to:

a) whether Defendants' uniform, class-wide policy and practice of illegal deduction of amounts from vacation pay accrued and owed to Plaintiffs and class members violates Labor Code Section 222;

b) whether Defendants' uniform, class-wide policy and practice of failure to pay the full amount of vacation wages on the date due violates the requirement of timely payment of wages under the FLSA and/or the regulations promulgated under the FLSA;

16)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the losses suffered by individual class members may be relatively small, the expense and burden of duplicative individual litigation make it impractical for class members individually to seek redress for the unlawful conduct alleged herein.

17)    Named plaintiffs are proper and adequate class representatives and will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in both class action and employment litigation.

5

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

## FACTS COMMON TO ALL CAUSES OF ACTION

18) Named Plaintiffs and the class members are employed by one of the named Defendants and covered under the current Collective Bargaining Agreement (hereinafter ACBA") between the International Union of Elevator Constructors (IUEC) and the National Elevator Bargaining Association (NEBA). That agreement is a wage agreement arrived at through collective bargaining under Labor Code Section 222.

19) Specifically, Article XII of the CBA, entitled "Vacations" requires Defendants to compensate employees for vacation pay at an agreed upon wage. Pursuant to the collective bargaining agreement, this "vacation pay" is a percentage (either 6% or 8% depending on years worked in the industry) of an individual employee's total hours actually worked during the preceding six month period. Vacation pay must be paid to employees under the CBA twice each year on or before January 15 and July 15 for the six months immediately preceding the payment. The applicable portion of Article XII states:

> (a) "A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. . . ."

> (b) "The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid **in full** to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid **in full** to the employee by January 15 of the succeeding year." (Emphasis added.)

20) Vacation pay constitutes part of the overall compensation package to employees, and, as such, is part of Plaintiffs wages as defined by California Labor Code Section 200 and the

6

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

amount of the wages are arrived at through collective bargaining pursuant to California Labor Code Section 222.

21)    On or about January 15, 2008, Defendant Employers willfully and/or unlawfully deducted amounts from plaintiffs' accrued vacation pay, which was due and owing and required to be paid in full on January 15, 2008. The amounts withheld were neither authorized by statute nor consented to or otherwise in any way authorized by Plaintiffs nor authorized by law.

22)    On behalf of named Plaintiffs and the class members they represent, the labor union, the International Union of Elevator Constructors repeatedly demanded that Defendants compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay all such accrued vacation pay. Defendants have repeatedly failed and refused to correct these violations and compensate employees for the vacation pay in full.

### FIRST CAUSE OF ACTION
### (California Labor Code Section 222)

23)    Plaintiffs incorporate by reference paragraphs 1 through 22 above as if fully set forth here.

24)    At all material times, Plaintiffs wages were and are established by a valid collective bargaining agreement arrived at through collective bargaining. Despite that wage agreement, on or about January 15, 2008, Defendants unlawfully and/or willfully withheld from Plaintiffs part of Plaintiffs' vacation wages set by the CBA.

25)    Plaintiffs and the proposed class have been injured in an amount to be proven at trial, by not receiving all vacation wages to which they were entitled on January 15, 2008 and thereafter. Plaintiffs are informed and believe and thereon allege that Defendants intent to

7

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMTECH/SAN FRANCISCO ELEVATOR CO.; KONE, INC.; MITSUBISHI
ELEVATOR COMPANY; OTIS ELEVATOR COMPANY; SCHINDLER
ELEVATOR CORPORATION; and DOES 1 through 10 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS,
MICAHEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, MANUEL
BUSTOS, on behalf of themselves and all persons similarly situated,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>(El nombre y dirección de la corte es): | CASE NUMBER:<br>(Número del Caso): **CGC08 - 473115** |
|---|---|

SAN FRANCISCO COUNTY SUPERIOR COURT
400 Mcallister St # 103; San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lynn Rossman Faris (SBN 96029); Jennifer Keating (SBN 250857)
LEONARD CARDER, LLP, 1330 Broadway, Stc. 1450, O~~~~~~~~ GORDON PARK-LI, CHRISTINE BAUTISTA

| DATE:<br>(Fecha) MAR 7 2008 | Clerk, by<br>(Secretario) | , Deputy<br>(Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* MITSUBISHI ELEVATOR COMPANY

   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

2 continue their policy and practice of unlawfully deducting amounts from accrued vacation wages

3 unless enjoined by this court.

4     26)    Plaintiffs have given timely notice, as required by Labor Code Section 2699.3 to

5 Defendants and the California Labor and Workforce Development Agency.

6

7     27)    Defendants' failure and unlawful refusal to pay Plaintiffs and all similarly situated

8 employees the full amount of their accrued vacation wages set by the CBA violates California

9 Labor Code § 222.  Plaintiffs will be irreparably harmed by such future unlawful deductions and

10 have no adequate legal remedy to prevent such unlawful conduct, absent this Court's injunction

11 against such conduct.  Accordingly, individual Plaintiffs and similarly situated employees are

12 entitled to:

13

14     A)    Damages to be proven at trial in the amount of all vacation wages

15 unlawfully withheld, with prejudgment interest commencing on January 15, 2008, along with

16 reasonable attorneys fees and costs incurred in prosecuting this action;

17     B)    All applicable civil penalties under Labor Code § 2699, including but not

18 limited to $100 per each unpaid employee per pay period for the initial violation and $200 per

19 each unpaid employee per pay period plus 25% of the unpaid wage per unpaid employee per pay

20 period for all subsequent violations, per Labor Code §225.5; and/or $100 per each unpaid

21 employee per pay period for the initial violation and $200 per each unpaid employee per pay

22

23 period for all subsequent violations, per Labor Code § 2699(f).

24     C)    Injunctive relief to prohibit Defendants from making similar unlawful

25 and/or willful deductions from vacation pay in the future.

26

27

28

8

**SECOND CAUSE OF ACTION**
(Late Payment of Wages in Violation of the Fair Labor
Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder)

28)     Plaintiffs incorporate by reference paragraphs 1 through 27 above as if fully set forth herein.

29)     True and correct copies of Consents to Become Party Plaintiffs executed by Plaintiffs BERNARDI, BICKHAM, DAVENPORT, DOUGLAS, BUSTOS, KAESLER, KIM, NAVA, and BOUZIDIN are attached hereto, as Exhibit A.

30)     At all relevant times herein, individual plaintiffs and all similarly situated employees who submit Consents to Become Party Plaintiffs are or were employed by and engaged in providing elevator construction services to Defendants. In performing their duties for Defendants, Plaintiffs were "employees" employed by an "enterprise engaged in commerce or the production of goods for commerce" within the scope of 29 U.S.C. §207(a).

31)     At all material times, Defendants were required by the express terms of a written contract and/or by custom and practice to compensate employees for accrued Vacation Pay on a percentage basis based on actual hours worked by Plaintiffs on or before January 15, 2008 for the six month period (July 1-December 31, 2007) immediately preceding it.

32)     At all material times, Defendants failed to compensate employees the Vacation Pay owed and due on January 15, 2008 when such wages were due including in weeks in which Plaintiffs and the plaintiff class worked and were paid for hours in excess of forty in the workweek. By failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA.

9

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169     FAX (510) 272-0174

33)    As a result of Defendants failure and refusal to pay plaintiffs and all those similarly situated the full amount of the Vacation wages they were due, individual plaintiffs and all similarly situated employees of Defendants who submit Consents to Become Party Plaintiff are entitled to the amounts that remain unpaid as liquidated damages, in an amount to be proven at trial, in the form of back pay compensation for all Vacation Pay owed, and reasonable attorneys fees and costs under 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### (Declaratory Relief - Cal. Code of Civil Procedure ' 1060)

34)    Plaintiffs incorporate by reference paragraphs 1 through 33 above as if fully set forth herein.

35)    An actual, substantial and ongoing controversy exists between Plaintiffs on the one hand, and Defendants on the other hand, as to whether Defendants are unlawfully withholding Vacation Pay from individual plaintiffs and members of the proposed class, in violation of Labor Code Section 222 and, by are unlawfully failing to pay vacation pay on a timely basis, failed to provide the overtime compensation provided for in violation by of the FLSA.

36)    Plaintiffs submit that the answer to the above questions is "yes." On information and belief, Defendants' position is that the answer to all the above questions is "no." Accordingly, Plaintiffs on their own behalf and as class representatives of all members of the proposed class are entitled to declaratory relief resolving this dispute.

///

///

///

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

10

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1)    Compensatory damages in excess of $25,000.00, according to proof, including all unpaid vacation wages due and owing at the proper rate or pay, within the statute of limitations;

2)    An equal additional amount as liquidated damages for plaintiffs under the FLSA, within the statute of limitations;

3)    Civil penalties as provided by Labor Code Section 2699;

4)    Prejudgment interest;

5)    Reasonable attorneys' fees and costs of prosecuting this action;

6)    A judicial declaration that Defendants practice of unlawfully deducting part of the vacation pay owed to all proposed class members violates Labor Code Section 222 and the FLSA and regulations promulgated under the FLSA;

7)    A preliminary and permanent injunction, enjoining any further violations of law by Defendants; and

8)    Such other relief as the Court may deem just and appropriate.

## JURY TRIAL

Plaintiffs in the above referenced action hereby demand a trial by jury.

Dated: March 7, 2008

Respectfully submitted,
LEONARD CARDER, LLP

By: _____
Lynn Rossman Faris
Attorneys for Plaintiffs

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 272-0169    FAX (510) 272-0174

11

# EXHIBIT A

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned ___JEFF BERNARDI___, a current or former employee

of Amtech/San Francisco Elevator Co., hereby consent to become a party plaintiff in an

action arising under the Fair Labor Standards Act regarding the compensations paid to

me by said Amtech/San Francisco Elevator Co., for services rendered thereto.

Date: 2/21/08          By: Sign name: _Jeff Bernardi_

                       Spell name: _JEFF BERNARDI_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Thomas E. Bickhart_ a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2/20/08_          By: Sign name: _____
                             Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Randy Davenport_, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co., for services rendered thereto.

Date: _2-22-08_          By: Sign name: _____
                         Spell name:
                         _Randy P Davenport_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned Bruce Douglas current or former employee of Mitsubishi Elevator Co., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Mitsubishi Elevator Co., for services rendered thereto.

Date: 2/19/2008    By: Sign name: _Bruce Doyles_
                      Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned *Michael Bouzidin*, a current or former employee

of Kone, Inc., hereby consent to become a party plaintiff in an action arising under the

Fair Labor Standards Act regarding the compensations paid to me by said Kone, Inc.,

for services rendered thereto.

Date: 3/5/08          By: Sign name: _____
                          Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned _Dan Kaeslen_, a current or former employee

of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising

under the Fair Labor Standards Act regarding the compensations paid to me by said

Otis Elevator Co.,  for services rendered thereto.

Date: _2-19-08_    By: Sign name: _____

Spell name: _Dan Kaeslen_

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned  Richard  Kim , a current or former employee
of Otis Elevator Co., hereby consent to become a party plaintiff in an action arising
under the Fair Labor Standards Act regarding the compensations paid to me by said
Otis Elevator Co.,  for services rendered thereto.

Date: 2/28/08 .          By: Sign name: _____
                              Spell name:  Richard  J.  Kim

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned **David Nava**, a current or former employee of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action arising under the Fair Labor Standards Act regarding the compensations paid to me by said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/08

By: Sign name: _David Nava_
Spell name:

## CONSENT TO BECOME PARTY PLAINTIFF

I, the undersigned MANUEL BUSTOS , a current or former employee

of Schindler Elevator Corp., hereby consent to become a party plaintiff in an action

arising under the Fair Labor Standards Act regarding the compensations paid to me by

said Schindler Elevator Corp., for services rendered thereto.

Date: 2/20/2008          By: Sign name: Manuel Bustos

Spell name: MANUEL BUSTOS

CASE NUMBER: CGC-08-473115  JEFF BERNARDI et al VS. AMTECH/SAN FRANCISCO ELE'

## NOTICE TO PLAINTIFF

A Case Management Conference is set foi

**DATE:**    **AUG-08-2008**

**TIME:**    **9:00AM**

**PLACE:**    **Department 212**
             **400 McAllister Street**
             **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
**without an appearance** at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint. All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



## Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**



## Introduction

**Did you know that most civil lawsuits settle without a trial?**

**And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?**

**These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.**

**ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.**

## Advantages of ADR

**ADR can have a number of advantages over a lawsuit.**

- *ADR can save time.* **A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.**

- *ADR can save money.* **Court costs, attorneys fees, and expert fees can be saved.**

- *ADR can be cooperative.* **This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.**

- *ADR can reduce stress.* **There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.**

- *ADR encourages participation.* **The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.**

- *ADR is flexible.* **The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.**

- *ADR can be more satisfying.* **For all the above reasons, many people have reported a high degree of satisfaction with ADR.**

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.



## ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### *Description*

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called <u>judicial arbitration</u>. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through <u>private arbitration</u>. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.



A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.



## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672



# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**          ☐  **Mediation Services of BASF**  ☐   **Judicial Mediation**
☐ **Binding arbitration**                                              Judge _____
☐ **Non-binding judicial arbitration**                                 Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐  Defendant   ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐  Defendant   ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐  Defendant   ☐  Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

ADR-2  3/06                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) | ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:            Div.:              Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐  have had a default entered against them *(specify names):*
   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.  Type of case in ☐ complaint   ☐ cross-complaint   *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4

Cal. Rules of Court,
rules 3.720-3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a. ☐   The trial has been set for *(date):*
b. ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐   days *(specify number):*
b. ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   Fax number:
f.   E-mail address:
g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a.   Counsel · ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐   All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐   The case has gone to an ADR process *(indicate status):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

  b. Reservation of rights: ☐ Yes ☐ No

  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

  a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

☐ Additional cases are described in Attachment 14a.

  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☐ The following discovery will be completed by the date specified (describe all anticipated discovery):

    **Party**                    **Description**                   **Date**

  c. ☐ The following discovery issues are anticipated (specify):

**18. Economic Litigation**
  a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
  b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other issues**
  ☐ The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**
  a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

  b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21. Case management orders**.
  Previous case management orders in this case are (check one): ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached (if any):** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| | ▶ | |
|---|---|---|
| _____ | | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ▶ | |
| _____ | | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |
| | | ☐ Additional signatures are attached |

**CASE MANAGEMENT STATEMENT**



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)



THE BAR ASSOCIATION OF SAN FRANCISCO

**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?

## adr@sfbar.org or 415-982-1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more....

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible, experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone, whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

# EXHIBIT F

# NEBA AGREEMENT

## WITH

### INTERNATIONAL UNION

— of —

### ELEVATOR CONSTRUCTORS

*July 9, 2007 to*
*July 8, 2012*

# INDEX

| ARTICLE | | Page |
|---|---|---|
| I | Parties to the Agreement | 1 |
| II | Recognition Clause | 1 |
| III | Membership Requirements | 2 |
| IV | Work Jurisdiction | 5 |
| IV (A) | Systems, Modular and Industrial Structure | 17 |
| V | Wages | 20 |
| VI | Holidays | 24 |
| VII | Construction Work | 26 |
| VIII | Repair Work | 31 |
| VIII (A) | Modernization Work | 35 |
| IX | Contract Service | 39 |
| X | Designation of Apprentices/Helpers Work and Qualifications | 47 |
| XI | System of Payment | 52 |
| XII | Vacations | 55 |
| XIII | Traveling Time and Expenses | 58 |
| XIV | Strikes and Lockouts | 60 |
| XV | Arbitration | 62 |
| XVI | Jurisdictional Territory | 70 |
| XVII | Health Benefit Plan | 72 |
| XVIII | Pension Plan | 75 |

---

Whenever any words are used in this Agreement in the masculine gender they shall be construed as though they are also used in the feminine gender or neuter gender in all situations where they would so apply.

| ARTICLE | | Page |
|---|---|---|
| XVIII (A) | 401(k) Annuity | 78 |
| XIX | Educational Fund | 79 |
| XX | Elevator Industry Work Preservation Fund | 82 |
| XXI | Payment for Lost or Stolen Tools | 84 |
| XXI (A) | Metric Tools | 85 |
| XXII | Hiring, Layoffs and Transfers | 86 |
| XXIII | Scope and Terms of Agreement | 94 |
| XXIV | Re-Opening Clause | 95 |
| XXV | Termination of Agreement | 96 |
| XXVI | Local Option | 96 |
| XXVII | Reporting Time, Subpoenaed Witnesses, Uniforms | 98 |
| Appendix "A" | Decisions of the Joint Industry Committee | 105 |
| | Letters of Agreement | 115 |
| | Substance Abuse | 130 |

# ARTICLE I

## Parties to the Agreement

This Agreement, made by and between the National Elevator Bargaining Association (hereinafter referred to as "NEBA") and the INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS (hereinafter referred to as "IUEC" or the "Union"), for the purpose of establishing harmonious relations and facilitating peaceful adjustment of wage schedules and working conditions. The INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS makes this Agreement for and on behalf of its affiliated local unions and a list of the local unions for which the International negotiates and executes this Agreement is attached hereto and made a part hereof. NEBA makes this Agreement for and on behalf of its employer members (hereinafter referred to individually as the "Company" or the "Employer"), and a list of the Employers for which NEBA negotiates and executes this Agreement is attached hereto and made a part hereof.

# ARTICLE II

## Recognition Clause

**Par. 1.** The Union claims and the Employer acknowledges and agrees that the Union has supplied proof that a majority of its Elevator

1

covered by this Agreement shall, as a condition of employment obtain and maintain membership in a local union of the International Union of Elevator Constructors on and after the thirtieth (30th) day following the beginning of their employment or the date this Article becomes effective, whichever is later.

**Par. 2.** The Company shall be obligated under this Article, after it becomes effective as above provided, to terminate the employment of any employee who fails to obtain or maintain membership in a local union as required by this Article, upon receipt of a written request for such termination from his local union: except that the Company shall have the right to refuse such request if it has reasonable grounds for believing (1) that such membership is not available to the employee on the same terms and conditions generally applicable to other members, or (2) that membership has been denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

**Par. 3.** Employees working in any state which prohibits the execution or application of Agreements requiring membership in a labor organization as a condition of employment have the right to join or refrain from joining

3

Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices have authorized the Union to represent them in collective bargaining with the Employer.

The Employer recognizes the Union as the exclusive Section 9(a) bargaining representative for all Elevator Constructor Mechanics and Elevator Constructor Helpers and Elevator Constructor Apprentices (hereinafter referred to sometimes as "Mechanics, Helpers and Apprentices") in the employ of the Employers engaged in the installation, repair, modernization, maintenance and servicing of all equipment referred to in Article IV, Par. 2 and Article IV (A).

**Par. 2.** The Union recognizes that it is the responsibility of the Company in the interest of the purchaser, the Company and its employees to maintain the highest degree of operating efficiency and to continue technical development to obtain better quality, reliability, and cost of its product provided, however, that this provision is not intended to affect the work jurisdiction specified in Article IV and other Articles of the Agreement.

## ARTICLE III

### Membership Requirements

**Par. 1.** All Mechanics, Helpers and Apprentices

2

## ARTICLE IV

### Work Jurisdiction

**Par. 1.** It is agreed by the parties to this Agreement that all work specified in Article IV shall be performed exclusively by Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices in the employ of the Company.

**Par. 2.**

(a) The handling and unloading of all equipment coming under the jurisdiction of the Elevator Constructor, from the time such equipment arrives at or near the building site, shall be handled and unloaded by the Elevator Constructors. Mechanical equipment such as a fork lift or truck mounted swing boom may be used by the Elevator Constructors. A derrick, crane or material hoist can be used under the supervision of Elevator Constructors to handle and unload the heavy material described in Paragraph 5(a). Where unusual conditions are expected to exist prior to delivery of equipment at or near the building site in regard to handling and unloading of equipment in the primary or secondary jurisdiction of the local union, the Company shall contact the Local's Business Representative to make appropriate arrangements for the handling and unloading of such equipment. In areas outside the jurisdiction of the local union, the Company shall contact the Regional Director.

5

---

the International Union of Elevator Constructors. Employees who decide not to join the Union, however, and who are covered by this Agreement shall, as a condition of employment, be required to pay a monthly service fee to the Union. The service fee shall be the employees' prorata share of costs of collective bargaining and the handling of grievances and arbitrations. The service fee shall not include any prorata share of costs of items other than collective bargaining and handling of grievances and arbitrations, and under no circumstances will the service fee be used by the Union for any purpose other than to meet the expenses of collective bargaining and handling of grievances and arbitrations.

On and after the thirtieth (30th) day following the date of this Agreement or on and after the thirtieth (30th) day following the date of commencement of employment by an employee, whichever is later, regular tendering of the service fee shall be a condition of employment, subject to the rights of employees and obligations of parties under the law.

Service fees shall be payable on or before the first day of each month.

**Par. 4.** All of the provisions of this Article shall be effective to the extent permitted by applicable law.

4

(b) The erecting and assembling of all elevator equipment to wit: electric, hydraulic, steam, belt, dumbwaiters, residence elevators, parking garage elevators (such as Bowser, Pigeon Hole, or similar types of elevators), shuttles, compressed air and handpower, automatic people movers, monorails, airport shuttles and like-named devices used in the transportation of people for short distances of travel (less than 5 miles), as well as vertical reciprocating conveyor systems.

(c) It is understood and agreed that the pre-assembly of all escalators, moving stairways and link belt carriers that may be done in the factory shall include the following:

1. Truss or truss sections with tracks, drive units, machines, handrail drive sheaves, drive chains, skirts on the incline sections but not curved sections, step chains and steps installed and permanently aligned.

2. Balustrade brackets may be shipped attached but not aligned.

3. Setting of all controllers and all wiring and conduit from the controller.

All other work on escalators, moving stairways and link belt carriers shall be performed in the field by Elevator Constructor Mechanics, Helpers and Apprentices either before or after the truss or truss sections are joined and/or hoisted and placed in permanent position. This includes any and all work not done in the factory.

6

The erecting and assembly of all theater stage and curtain elevator equipment and guides and rigging thereto, organ consoles and orchestra elevators shall be performed by Elevator Constructor Mechanics, Helpers and Apprentices.

(d) All wiring, conduit, and raceways from main line feeder terminals on the controller to other elevator apparatus and operating circuits. Controllers are not to be shipped from the factory with extended wiring attached thereto.

(e) The erecting of all guide rails.

(f) The installation of all grating under the control of the Company. The installation of all counterweight screens, overhead work, either wood or iron, and all material used for mounting of elevator apparatus in machine room, overhead or below.

(g) The drilling of overhead beams for attaching machines, sheaves, kick angles, and all other elevator equipment.

(h) The setting of all templates.

(i) All foundations, either of wood or metal, that should take the place of masonry.

(j) The assembly of all cabs complete.

(k) The installation of all indicators.

(l) The erecting of all electrical or mechanical automatic or semi-automatic gates complete.

(m) The hanging of all automatic or semi-automatic elevator hoistway doors, together with the installation of hangers and tracks.

7

(n) The installation of all devices for opening and closing, and locking of elevator car and hoistway doors and gates.

(o) The drilling of doors for mounting of closing devices.

(p) The drilling of angle supports for mounting of closing devices except one template hole.

(q) The drilling of sills for sill trips.

(r) The operating of temporary cars.

(s) The setting of all elevator pressure open or pit tanks.

(t) The setting of hydraulic power units (power units include: motor, pump, drive valve system, internal piping, muffler, internal wiring, controller and tank). Where power units arrive in parts, they shall be assembled at the job site. The wiring and piping to and between multiple hydraulic power units shall be performed at the job site.

(u) All air cushions with the exception of those built of brick or those put together with hot rivets.

(v) Landing door entrances.

**Par. 3.**

(a) Nothing contained in Article IV shall preclude the Company from preassembling and prefabricating the following:

(1) Temporary elevators

A temporary elevator is defined as a nonpermanent elevator installed prior to or during

8

construction work inside or outside buildings. The assembly, disassembly and moving of temporary elevators from job to job or area to area may be accomplished in the most economical fashion provided, however, whatever work is required to be performed at the job site in connection therewith shall be performed exclusively by Elevator Constructor Mechanics, Helpers and Apprentices.

(2) Residence elevators

Residence elevators shall mean elevators installed solely for use in a single family residence and not for general public use. Single family residences may be part of a multi-unit structure.

(3) Dumbwaiters

(4) Dock elevators

(5) Parking garage elevators (such as Bowser, Pigeon Hole or similar types of elevators)

(6) Apartment House elevators

Apartment house elevators shall mean an elevator installed in a multi-unit, multifamily structure, (excluding condominiums) but not to exceed three (3) stories in height (i.e. 36 ft.) and the elevator shall not make more than three (3) stops nor exceed a capacity of 2500 lbs.

(7) Preassembled plug connectors may be used to interconnect the solid state components of the elevator systems (solid state to solid state only), and to connect any compo-

9

nent in and on the car (excluding traveling cable).

When the use of fiber optics is applied to the elevator system, preassembled plugs/coupling devices may be used to maintain the integrity of the connection(s).

It is understood and agreed that the connecting and/or coupling of devices will be done by the Elevator Constructor whether accomplished by external wiring or preassembled plug connectors as provided in this Paragraph.

(8) Limited Use/Limited Access Elevators which shall mean elevators described under the scope of Limited Use/Limited Access Elevators as defined in A.S.M.E. A17.1.

Incline stairway chair lifts and incline and vertical wheelchair lifts shall mean lifts described under the scope of A.S.M.E. A17.1.

Limited Use/Limited Access Elevators, incline stairway chair lifts, inclined and vertical wheelchair lifts, and residence elevators may be installed in the most economical fashion, provided there is no factor of safety involved. Whatever work is required to be performed at the job site in connection therewith shall be performed exclusively by Elevator Constructor Mechanics, Helpers and Apprentices.

(9) Landing door entrance assemblies which will be limited to struts, sills, headers, frames and associated hardware for installation purposes: door header including tracks, hangers,

10

and all relating devices (adjusting and aligning to be done in the field).

(10) Car-top inspection station which may only include pre-wired service light, gate switch, alarm device and inspection station.

(a) Pre-wired canopies with lights and fans.

**Par. 3.** (b) It is understood and agreed that the preassembly and/or prefabrication of electric walks, Trav-o-lators, speed ramps or similar type of moving walks, (limited to 15° incline per ANSI Code), shall include the following:

(1) Truss sections with drive units, machines, handrail drive sheaves and drive chains installed and aligned.

(2) Truss sections with tracks installed and aligned.

(3) Balustrade brackets may be shipped attached but not aligned.

(4) Setting of all controllers and all wiring and conduit from controllers.

Work to be done in the field shall include setting and aligning of truss sections and supports, installation of pallets (platforms and belting), handrails, handrail idler sheaves, centering guides, combplates, balustrades and trim.

**Par. 4.**

(a) It is agreed that when sinking, drilling, boring or digging cylinder wells for hydraulic lifts, hydraulic elevators or screw lifts, the

11

Company shall employ Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices.

(b) On any job where the Company subcontracts the sinking, drilling, boring or digging of the cylinder wells for hydraulic lifts, hydraulic elevators or screw lifts, one Elevator Constructor Mechanic shall be employed by the Company to supervise and assist in any and/or all work related to sinking, drilling, boring or digging of the cylinder well including the installation of the casing whether its sections be welded, screwed or riveted or by any other method joined.

(c) It is agreed that the work performed by the subcontractor shall be strictly limited to the work in connection with the digging of the hole and the installation of the casing. It is understood that the Company will have the preceding sentence inserted in his contract with the subcontractor.

(d) The Company shall have the Elevator Constructor Mechanic on the job at the time the subcontractor arrives on the job for the drilling of the hole and during the entire time the subcontractor performs any work in connection with the drilling of the hole including the setting up and/or assembly and disassembly of the rig.

(e) If the Company violates the requirement defined in Par. (d) it shall be assessed and pay as liquidated damages a sum equal to double the total compensation of the Elevator Con-

12

structor Mechanic in the area for the number of hours an Elevator Constructor Mechanic should have been on the job and was not on the job in the sinking, drilling, boring or digging the cylinder well. This liquidated damage shall be paid by the Company to the said jointly administered trust fund.

In the case of a second offense, the liquidated damages shall be computed on the same basis as the first offense, except that the amount shall be tripled instead of doubled; for the third and subsequent offenses during the term of this Agreement, the liquidated damages shall be $500 more than the second offense.

The Company's Regions shall constitute separate areas for the counting of repeated violations by the Company and only violations in the same district shall be counted for the purpose of imposing graduated penalties.

(f) Should a work stoppage or strike occur because of a dispute over the application or interpretation of this paragraph none of the foregoing penalties will be imposed.

**Par. 5.**

(a) Where heavy material is to be hoisted or lowered outside of the structure, a derrick, crane or material hoist can be used under the supervision of Elevator Constructors in the employ of the Company. Heavy material under subparagraph (a) is confined to machines, controllers, generators, trusses, or sections of

13

trusses, plungers and cylinders. (Where multiple sections of cylinders and plungers are used, they shall be connected in the field by Elevator Constructors. Exception: the Company's multiple sections of cylinders may be connected either in the field or factory up to thirty-eight (38) feet in length; where multiple sections of plungers are used, they shall be connected in the field by Elevator Constructors.) In addition to the foregoing, the Company shall have the right to utilize derricks, cranes or a material hoist to hoist or lower tools of the trade, gang boxes, welders, air and gas tanks, cutting torches, material handling equipment and safety equipment.

(b) Where conditions are such that the following heavy material can be hoisted up the hoistway, it shall be hoisted by the Elevator Constructors. Where conditions are such that the following heavy material cannot be hoisted up the hoistway, it can be hoisted with a crane or material hoist under the supervision of Elevator Constructors. Heavy material under subparagraph (b) is confined to beams, sheaves, bundles of rails and preassembled landing door entrances.

(c) The above heavy material in subparagraphs (a) and (b) shall be hoisted separately with the exception of plungers and cylinders, rails, beams, preassembled landing door entrances and where conditions warrant machines with beams, which may be hoisted together.

14

(d) All other material is to be hoisted or lowered by Elevator Constructors without the use of derrick or crane.

Par. 6. The wrecking or dismantling of elevator plants shall be performed by Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices. It is understood and agreed that the Union reserves the right to refuse to install any new elevators in any plant where the wrecking or dismantling of the old elevator plant has been done by other than Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices. Before the local union shall refuse to install a new elevator, such action must be first approved by the International. Elevator plants as referred to in this paragraph are understood to include elevators, escalators, moving stairways, dumbwaiters, moving walks and all other equipment coming under the jurisdiction of the Elevator Constructor.

Par. 7. Where Elevator Constructor Mechanics are not available to lay car floor covering, it is agreed that the Company may employ others to do this work.

Par. 8. Inserts and/or bond blocks are to be set by Elevator Constructor Mechanics in the primary jurisdictions of local unions at the option of the Company. Inserts may be set by

15

others outside of the primary jurisdictions of local unions where a full day's work cannot be provided.

**Par. 9.** No restrictions shall be imposed as to methods, tools, or equipment used.

**Par. 10.** It is agreed that the work specified in Article IV has always been performed exclusively by Elevator Constructor Mechanics, Helpers and Apprentices in the employ of the Company at the site of the installation. It is agreed that effective July 9, 1977, the work specified in Article IV that is performed exclusively by Elevator Constructor Mechanics, Helpers and Apprentices may be performed at the site of the installation or at another assembly point provided that (1) the assembly point is not in or adjacent to the Company's manufacturing facility, (2) the assembly point is within the primary or secondary jurisdiction of the local union in whose jurisdiction the site of installation is located, and (3) the work is performed by Elevator Constructor Mechanics, Helpers and Apprentices of the local union in whose jurisdiction the site of installation is located. If the site of installation is located outside the jurisdiction of a local union (in open territory), it is agreed that (1) the assembly point must be within twenty-five (25) miles of the site of installation, (2) the assembly point is not in or adjacent to the Company's manufacturing facility, and (3) the work is per-

16

formed by Elevator Constructor Mechanics, Helpers and Apprentices from the local union who ordinarily perform work for the Company in the vicinity of the site of the installation. The unloading and handling of all equipment coming under the jurisdiction of the Elevator Constructor or at an assembly point shall be performed in accordance with Par. 2(a) of this Article.

**Par. 11.**
(a) All differences and disputes concerning Article IV or Article IV(A) shall be settled in accordance with the grievance procedures in Article XV.

(b) While any question or dispute pertaining to Article IV or Article IV(A) is being processed, the Company, where possible, shall assign the employees work other than the work in dispute. Where the work has progressed to a point where it is not possible to perform work other than the work in dispute, then the employee shall perform the disputed work pending final resolution as provided herein.

## ARTICLE IV(A)

## Systems, Modular and Industrial Structures

**Par. 1.** Systems Building. Systems, modular, industrialized or similar structures are those whose superstructures and components are

17

pre-assembled in sections, rooms, or floors, in whole or in part, in areas adjacent to or remote from the permanent site of the structure. The erection and assembly of elevator components in building modules is to be done by Elevator Constructor Mechanics, Helpers and Apprentices whether the assembly site is adjacent to the job or remote from the job. Where the Company has a choice or selection of the assembly site, such sites are to be mutually agreed upon by the General President of the International Union of Elevator Constructors and the Company. It is understood that if members of one local perform part of such work at an assembly site remote from the permanent job site, members of the local covering the permanent job site will perform the remainder of the work. The elevator work remaining to be done after modules have been put into permanent place, shall be performed by Elevator Constructor Mechanics, Helpers and Apprentices so that the jurisdiction of the Elevator Constructor as related to any other Building Trade, shall remain intact as outlined in the latest "Green Book" or "Plan for Settling" Jurisdictional Disputes, Nationally & Locally" or its successor as approved by the Building & Construction Trades Dept., AFL–CIO.

**Par. 2.** The work to be done by Elevator Constructors is as follows:

(a) The installation and assembly of all ma-

18

chine room equipment whether overhead or below on prefabricated machine room floors.

(b) Assemble car frames and cabs complete with door operating equipment, control, signal and operating devices.

(c) Connect electric traveling cables to either car, controller or half-way junction box. The connections to be prepared and/or made at both ends of assembly site.

(d) Stackle hoist, compensating and governor cables and pre-connect to car or counterweight hitches.

(e) The setting of templates.

(f) The installation of all grating and counterweight screens, overhead work, either wood or iron, and all material used for mounting of elevator apparatus in machine rooms, overhead or below.

(g) All foundations, either of wood or metal, that should take the place of masonry.

(h) The installation and aligning of guide rails in hoistway modules.

(i) Erect and assemble doors, hangers, tracks, door locks or locking devices for opening or closing and all related equipment.

(j) Install corridor side operating and signal devices.

(k) Install hoistway wiring.

(l) Install all elevator equipment and devices in hoistway and hoistway modules including governor rope tension sheaves, control equipment, buffers and supports.

19

(m) The operating of temporary elevators.

(n) The installation and aligning of all pistons and cylinders on hydraulic elevators.

(o) Landing door entrances.

Unloading, handling, hoisting and lowering of material covered in (a) through (o) will be performed under the supervision of Elevator Constructors.

**Par. 3.** Nothing in this Article is intended to change the practices either party has previously enjoyed in erection of elevators in conventional type buildings as related to Article IV.

## ARTICLE V

### Wages

**Par. 1.** The rate of wages to be paid to Elevator Constructor Mechanics, Helpers and Apprentices shall be determined in accordance with the following schedule. Effective January 1, 2008 and every twelve (12) months thereafter, during the term of this Agreement, each local's existing total package shall be increased according to the following schedule:

| | |
|---|---|
| 1st Year Gross Increase............. | 5.75% |
| 2nd Year Gross Increase............. | $3.00 |
| 3rd Year Gross Increase............. | $3.00 |

| | |
|---|---|
| 4th Year Gross Increase............. | $3.00 |
| 5th Year Gross Increase............. | $3.00 |

**Par. 2.** Subtracted from the gross increase shall be the credits agreed upon in Paragraph 3 below. The remainder shall be the wage rate increase for the Elevator Constructor Mechanics in that Local.

**Par. 3.** The amounts of credits for wage rate increases effective January 1, 2008 and every twelve (12) months thereafter shall be as follows:

| Current Wage Rate Amount Contribution Level $15.065 | Fringe | Total |
|---|---|---|
| January 1, 2008 ............ | $1.25 | $16.315 |
| January 1, 2009 ............ | $1.75 | $18.066 |
| January 1, 2010 ............ | $1.50 | $19.565 |
| January 1, 2011 ............ | $1.50 | $21.065 |
| January 1, 2012 ............ | $1.50 | $22.565 |

The above gross increases will be reallocated and the above credit amounts increased or decreased accordingly after the effective date of this Agreement by whatever different amounts, if any, the Union determines are necessary to fund the Health Plan, the Pension Plan, Education Fund and Elevator Industry Work Preservation Fund by modifying the hourly contribution rate up to twenty five



($.25) cents per fund per year at the recommendation of the joint trustees.

The above gross increase will be reallocated and the above credit amounts increased or decreased accordingly after the effective date of this Agreement by whatever different amounts, if any, the Union determines is necessary to fund the Annuity Fund by modifying the hourly contribution rate up to twenty five ($.25) cents to the Annuity Fund per year at the discretion of the Union.

**Par. 4.** Subtracting the credits from the gross increases yields the following wage rate increases for the Elevator Constructor Mechanic:

1st Year Wage Rate Increase...... Subtract the $1.25 per hour fringe contribution increase from the computed total package percentage, and the result will be the wage rate increase for the Elevator Constructor Mechanic.

2nd Year Wage Rate Increase........ $1.25
3rd Year Wage Rate Increase........ $1.50
4th Year Wage Rate Increase........ $1.50
5th Year Wage Rate Increase........ $1.50

22

**Par. 5.** The wage rate for the Elevator Constructor Helpers shall be seventy (70) percent of the Elevator Constructor Mechanic's rate.

**Par. 6.** The wage rate for Elevator Constructor Apprentices shall be the progressive scale of wages set forth below, and those progressive elevations shall become effective the next full pay cycle following September 1st, commencing September 1, 2003 and each year thereafter.

Probationary Apprentice, (0-6 months): 50% of Mechanic's Rate.

First Year Apprentice, 55% of Mechanic's Rate, plus fringe benefits as provided by the collective bargaining agreement.

Second Year Apprentice, 65% of Mechanic's Rate, plus fringe benefits as provided by the collective bargaining agreement.

Third Year Apprentice, 70% of Mechanic's Rate, plus fringe benefits as provided by the collective bargaining agreement.

Fourth Year Apprentice, 80% of Mechanic's Rate, plus fringe benefits as provided by the collective bargaining agreement.

**Par. 7.** When four (4) or more men, including the Elevator Constructor Mechanic-In-Charge, are employed on new construction or modernization jobs, the Elevator Constructor Mechanic-In-Charge of the job shall have his hourly rate increased 12-1/2% for all hours worked.

23



**Par. 8.** The wage rate of a given Local shall continue as long as satisfactory to both parties, but no change be made more often than twelve (12) months.

**Par. 9.** The gross increases set out in this Article shall apply to all Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices engaged in construction, repair, modernization and contract service work, as defined and covered in this Agreement.

## ARTICLE VI

### Holidays

**Par. 1.** The following shall be designated as paid holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, the Friday after Thanksgiving Day and Christmas Day.

**Par. 2.** In addition, each local may retain established unpaid holidays already agreed upon by past procedure or observed by local building trades councils or declared by State or National Governments. Any new Federal holidays such as Presidents' Day and Columbus Day are not to be considered as paid or unpaid holidays unless previously celebrated by the parties to this Agreement.

**Par. 3.** To be eligible for a paid holiday, an employee must have been on the Company's payroll within the calendar week, Sunday to Saturday inclusive, previous to the week in which the holiday occurs. "On the payroll" means that an employee must have performed actual work or have been on an authorized paid vacation. If an employee desires to extend his vacation beyond the earned paid vacation period, such extension of that time shall not be considered as "on the payroll".

**Par. 4.** The holiday provisions of this Article shall apply to all Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices engaged in construction, repair, modernization and contract service work as defined and covered in this Agreement.

**Par. 5.** Eligible employees shall be paid for the regular workday and the paid holidays enumerated in Par. 1 at the regular straight time rate of the classification worked prior to the observance of the holiday. The rate of pay for all work performed on paid holidays shall be at the double time rate in addition to the holiday pay. Any unpaid holidays observed as provided in Par. 2 shall be without pay, but if worked shall be double time rate.

**Par. 6.** When a paid holiday falls on Saturday, it shall be observed on Friday. When a paid holiday

day falls on Sunday, it shall be observed on Monday.

**Par. 7.** The Company shall not lay off or terminate an employee to circumvent holiday pay as provided herein.

**Par. 8.** Employees who work on a holiday that falls on a Saturday or Sunday and that holiday is observed on a Friday or Monday, respectively, shall be paid at the specified overtime rates for work performed on Saturdays or Sundays. (i.e., if July 4th falls on Saturday it will be celebrated on Friday, July 3rd. Work performed on July 3rd will be double time (2X) and work performed on July 4th will be paid at the specified overtime rate).

## ARTICLE VII

## Construction Work

**Par. 1.** Construction work is hereby defined as erecting and assembling of apparatus as enumerated in Article IV and Article IV (A) of this Agreement, except general repairs and modernization as defined in Article VIII and VIII (A). It is hereby agreed that all Construction Work as above defined shall be performed exclusively by Mechanics, Helpers and Apprentices.

26

**Par. 2.** It is agreed that the regular working day shall consist of eight (8) hours worked consecutively with an unpaid lunch period, between 6 A.M., and 5 P.M., five (5) days per week, Monday to Friday, inclusive. Hours of work at each job site shall be those established by the general contractor and worked by the majority of trades. (The above working hours may be changed by mutual agreement as provided in Article XXVI). If the general contractor shuts down operations on a day not recognized as a holiday under this Agreement, the Company shall make every effort to place the affected employees on other work for that day.

**Par. 2A.** Upon written notification to the Local Business Representative, the Company may establish hours worked on a job site for a four (4) ten (10) hour day workweek at straight time pay for construction work. It is agreed that the regular working day shall consist of ten (10) hours worked consecutively with an unpaid lunch period, between 6 A.M. and 6 P.M., four (4) days per week, Monday to Thursday, inclusive. Any work performed on Friday, Saturday and Sunday and before and after the regular working day on Monday to Thursday where a four (4) ten (10) hour day workweek has been established, will be paid double the rate of single time.

When working in a per diem area and work continues on the same job site the following

27

week, the employee shall receive per diem for Friday, Saturday and Sunday.

It is agreed that when a Holiday falls on Sunday to Thursday, it shall be observed on the day of the Holiday or per Article VI, Par. 6 and, providing the employee complies with Article VI, Par. 3, he/she will be paid ten (10) hours for that Holiday. If the Holiday falls on Friday or Saturday, the employee will be paid eight (8) hours for that Holiday.

**Par. 3.** Work performed on Construction Work on Saturdays, Sundays and before and after the regular working day on Monday to Friday, inclusive, shall be classed as overtime, and paid for at double the rate of single time.

**Par. 4.** When any four (4) of the seven (7) Atlantic City Formula Trades obtain a six (6) hour day, the Union shall work a six (6) hour day, the working day to be between the hours of 6 A.M. and 5 P.M. When sufficient Mechanics, Helpers and Apprentices are not available, an eight (8) hour day shall be worked. Whenever a local union obtains a six (6) hour day under this paragraph, the local union and the Company shall bargain as to the hours and overtime rates to be applied on the six (6) hour day.

**Par. 5.**

(a) When a majority of the Atlantic City Formula Trades (this means there must be four

28

(4) of the seven (7) union Atlantic City trades), on a job work a shift or shifts following the day shift, the Company may work the following shifts. However, trades who perform the work as per their regular overtime rates shall not be considered as shift work.

(b) It is agreed that the "Day Shift" shall consist of eight (8) hours between 8 A.M. and 4:30 P.M., five (5) days per week, Monday through Friday, inclusive.

(c) The shift following the "Day Shift" shall work 7 1/2 hours between the hours of 4:30 P.M. and 12:30 A.M. and shall receive eight (8) hours pay plus an additional 10% per hour. The shift preceding the "Day Shift" shall work seven (7) hours between the hours of 12:30 A.M. and 8 A.M. and receive eight (8) hours pay plus an additional 15% per hour.

Any and all work during hours other than the established hours for any one of the three shifts shall be paid at double the hourly wage rate including any premium rate of the assigned shift.

(1) When an employee is called in prior to the regular starting time for his shift or he works beyond the regular quitting time of his shift, he shall receive double the hourly wage rate of his assigned shift for all hours in excess of the established hours for his shift.

(2) When an employee is required to work hours that are not continuous with the established hours for his assigned shift he shall be

29

paid for such hours at double the hourly wage rate of his assigned shift or double the hourly wage rate of the shift on which such excess hours are performed whichever rate is higher.

(3) When the Company assigns an employee to a shift the employee shall work that shift a minimum of five (5) consecutive days. However, should the Company reassign an employee to another shift prior to working five (5) consecutive days, or within twenty-four (24) hours of completing a shift, the employee shall receive the applicable overtime rate of the new shift he is assigned to for the first day only or the applicable overtime rate of the shift to which he had previously been assigned, whichever is higher, thereafter the employee shall receive the applicable rates for the new shift to which he is assigned. An employee who requests a shift reassignment and is reassigned as outlined herein, shall receive the applicable rates for the new shift to which he is assigned at single time only.

(4) When an employee has performed work on another job and he is directed to work on a shift job within twenty-four (24) hours after completing work on the other job, he shall receive the applicable overtime rate of his prior job or the applicable overtime rate of the shift to which he is assigned whichever rate is higher.

(d) Any work performed on Saturday, Sunday, or a Holiday shall be paid at double the

30

hourly wage rate of the applicable shift including any premium rate.

(e) In the case of the second and third shifts and for the purpose of fringe benefit computations, each employee who works a full shift shall be considered to have worked eight (8) hours.

(f) The working hours set forth in Par. 3 and Par. 4 above may be changed by mutual agreement as provided in Article XXVI.

## ARTICLE VIII

### Repair Work

**Par. 1.** Repair Work is hereby defined as general repairs on apparatus enumerated in Article IV and Article IV(A) of this Agreement. Repair work shall be exclusively performed by Mechanics, Helpers and Apprentices.

**Par. 2.** General repairs are hereby defined as follows:

**Team repairs:**

Renewal of all ropes.

Renewal of brake linings (except small machines).

Shortening of all hoisting and counterweight cables.

Replacement of any traveling cable exceeding 60 feet in length.

31

Rewiring car switches, governors and selectors or any other apparatus in the car.
Refastening guide rails.
Replacing or repairing car floor covering.
Rewiring or reinstalling limit switches.
Replacing automatic rail or track oilers.

## One or Two Man Repairs:

Armature repairs.
Renewing of car shoes or roller guides.
Repairs to cab or car gate.
Renewal of motor bearings.
Replacing thrust bearings.
Rewiring controllers.

Installation and/or replacement of the following (except when the completion of such work requires more than eight (8) hours, excluding travel time, it shall be performed by a team):

Proximity devices (door protection only).
Emergency lighting (battery chargers and lights).
Braille Plates.
Telephones/Communication Devices (with existing wiring and box in place).
Fixture Cover Plates (no wiring).
Key switches/Security devices (with existing wiring, excluding full Fireman's Service Operation).
Controller Wiring Changes (minor changes).

33

Safety test where test weights are required.
Replacement of crosshead, counterweight or deflector sheave bearings.
Rescoring of sheaves or drums.
Replacement of worm and gears.
Rebabbitting of bearings.
Hydraulic repair work except cleaning, oiling, greasing, belts, small valves, adjusting and one man pressure relief valve test performed in accordance with Appendix A, item 22.
Adjusting or readjusting using test weights.
Realigning guide rails.
Replacing crossheads, stiles, safeties or equalizers.
Hoistway door closers with hydraulic or pneumatic checks.
All escalator and moving walk repair work must be done by a team. (Exception Article IX, Contract Service Work, callbacks and examination may be done by one person if there is no factor of safety).
Exception to above: Residence elevator as described in A.S.M.E. A17.1 code which shall be one person.

## One man repairs:

Installing sound isolation.
Replacement of door hangers (except for freight bi-parting doors).
All door closer work (except for freight bi-parting doors).

32

Fixture Replacement (in existing locations only).

Replacement of relays, timers, or mechanical devices with solid state devices and circuitry.

The replacement of equipment on existing elevator installations.

Other repair work assignments not listed above may be one man assignments providing there is no factor of safety involved.

**Par. 3.** When escalators are prepared and/or disassembled for cleaning, oiling, greasing, adjusting and minor replacement, (minor replacement meaning work requiring one (1) hour or less), the work shall not be classed as repair work.

When escalators are prepared and/or disassembled for cleaning, etc., purposes as mentioned above, and any replacement and/or repairs requiring more than one (1) hour, only the replacement and/or repairs shall be classed as repair work.

When escalators are prepared and/or disassembled primarily for replacement and/or repairs, all work shall be classed as repair work.

**Par. 4.** When men who are employed on contract service work perform any of the repair work listed above during hours other than be-

34

tween 6 A.M. and 6 P.M., Monday to Friday, inclusive, it shall be paid for at double the rate of single time. (Exception: employees performing one man repair while on call-backs shall be paid at 1.7 times the single time rate).

**Par. 5.** It is agreed the regular working day shall consist of eight (8) hours worked consecutively with an unpaid lunch period, between 6 A.M. and 6 P.M., five (5) days per week, Monday to Friday, inclusive. All other working time shall be classed as overtime and paid for at double the rate of single time.

## ARTICLE VIII(A)

## Modernization Work

**Par. 1.** Modernization work is hereby defined as any and all work performed on apparatus enumerated in Article IV and Article IV(A) in any existing or occupied building, to bring equipment up to date, including general repairs which are a part of a modernization job. However, a job which the machine is changed out or rails are removed, or new rails are installed shall be construction work. An escalator modernization shall be defined as the replacement of any or all components except the truss including general repairs which may be a part of a modernization job. Any other general repairs

35

and contract service work shall be excluded from this Article. Modernization work shall be exclusively performed by Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices.

**Par. 2.** It is agreed the regular working day shall consist of eight (8) hours worked consecutively with an unpaid lunch period, between 6 A.M. and 6 P.M., five (5) days per week, Monday to Friday, inclusive. All other working time shall be classed as overtime and paid for at double the rate of single time.

**Par. 3.** Upon notification to the Local Business Representative or to the Regional Director, if the modernization job is outside the jurisdiction of a local union, the Company may establish shift work. Shift work shall not be permitted except in cases where at least two (2) shifts per day are established for at least five (5) or more consecutive days including Saturday, Sunday, or Holiday when worked. One of the shifts must be the "Day Shift" as defined in Par. 4 below. When special circumstances exist, such as production or operation needs of the customer, a second and third shift will be worked without any day shift when the Company and the Local Business Representative or Regional Director, if the modernization job is outside the jurisdiction of the local union, have mutually agreed that one of the

36

two (2) shifts does not have to be the "Day Shift."

**Par. 4.** It is agreed that the "Day Shift" shall consist of eight (8) hours between 8 A.M. and 4:30 P.M., five (5) days per week, Monday through Friday, inclusive.

**Par. 5.** The shift following the "Day Shift" shall work 7 1/2 hours between the hours of 4:30 P.M. and 12:30 A.M. and shall receive eight (8) hours pay plus an additional 10% per hour. The shift preceding the "Day Shift" shall work seven (7) hours between the hours 12:30 A.M. and 8 A.M. and shall receive eight (8) hours pay plus an additional 15% per hour.

**Par. 6.** Any and all work during hours other than the established hours for any one of the three shifts shall be paid at double the hourly wage rate including any premium rate of the assigned shift.

(a) When an employee is called in prior to the regular starting time for his shift or he works beyond the regular quitting time of his shift, he shall receive double the hourly wage rate of his assigned shift for all hours in excess of the established hours for his shift.

(b) When an employee is required to work hours that are not continuous with the established hours for his assigned shift he shall be paid for such hours at double the hourly wage rate of his assigned shift or double the hourly

37

wage rate of the shift on which such excess hours are performed whichever rate is higher.

(c) When the Company assigns an employee to a shift the employee shall work that shift a minimum of five (5) consecutive days. However, should the Company reassign an employee to another shift prior to working five (5) consecutive days, or within twenty-four (24) hours of completing a shift, the employee shall receive the applicable overtime rate of the new shift he is assigned to for the first day only or the applicable overtime rate of the shift to which he had previously been assigned, whichever is higher, thereafter the employee shall receive the applicable rates for the new shift to which he is assigned. An employee who requests a shift reassignment and is reassigned as outlined herein, shall receive the applicable rates for the new shift to which he is assigned at single time only.

(d) When an employee has performed work on another job and he is directed to work on a shift job within twenty-four (24) hours after completing work on the other job, he shall receive the applicable overtime rate of the shift to job or the applicable overtime rate of the shift to which he is assigned whichever rate is higher.

**Par. 7.** Any work performed on Saturday, Sunday, or Holiday shall be paid at double the hourly wage rate of the applicable shift including any premium rate.

38

**Par. 8.** In the case of the second and third shifts and for the purpose of fringe benefit computations, each employee who works a full shift shall be considered to have worked eight (8) hours.

**Par. 9.** The working hours set forth in Par. 4 and Par. 5 above may be changed by mutual agreement as provided in Article XXVI.

## ARTICLE IX

## Contract Service

**Par. 1.** Contract Service is hereby defined as any contract obtained by the Company for regular examination or care of apparatus enumerated in Article IV and Article IV(A) of this Agreement and general repairs as indicated in Article VIII, Par. 2 for a period of not less than one (1) month. Contract Service Work shall be exclusively performed by Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices.

**Par. 2.** Two (2) Helpers or Apprentices to each three (3) Mechanics may be employed in contract service work. The Helper or Apprentice when working with the Mechanic shall perform all work assigned to him by the Mechanic.

A 70% Helper or a second year Apprentice may work alone under the general supervision

39



of the Mechanic in his assigned district, provided such Helper or Apprentice is met on the first job daily. The Helper or Apprentice shall notify the office and/or Mechanic when changing jobs and at the completion of the work day. When working alone the Helper or second year Apprentice shall perform only oiling, cleaning, greasing, painting, replacing of combplate teeth, relamping and fixture maintenance, the inspection, cleaning and lubrication of hoistway doors, car tops, bottoms, and pits, observing operation of equipment and at no time when working alone shall such a Helper or Apprentice perform any other work or function normally performed by Mechanics. The word "District" means the regular contract service route of the Mechanic or Mechanics to whom the Helper or Apprentice has been assigned that day.

**Par. 2A.** When the Company obtains a contract that requires a Mechanic and Helper or Apprentice to be on the job and/or in a building at all times during the regular weekly working hours, such Helper or Apprentice shall not be considered as part of the two (2) to three (3) agreement mentioned above, provided no Probationary Helpers or Probationary Apprentices are assigned to such regularly scheduled work.

**Par. 2B.** Where a Local Office has contract service work requiring more than two (2) Elevator

Constructor Mechanics full time, the third Elevator Constructor employed in that office may be a Helper or Apprentice. A 70% Helper or second year Apprentice may work alone under the general supervision of the Mechanic in his assigned district provided such Helper or Apprentice is met on the first job daily. The Helper or Apprentice shall notify the Mechanic when changing jobs and at the completion of the work day. When working alone such Helper or second year Apprentice shall perform only cleaning, oiling, greasing, painting, replacing of combplate teeth, relamping and fixture maintenance, the inspection, cleaning and lubrication of hoistway doors, car tops, bottoms, and pits, observing operation of equipment and at no time when working alone shall such a Helper or Apprentice perform any other work or functions normally performed by Mechanics. The word "District" means the regular contract service route of the Mechanic or Mechanics to whom the Helper or Apprentice has been assigned that day. The phrase "Local Office" as mentioned in this paragraph means Local Representatives, Resident Mechanics, etc. performing contract service work as defined in Par. 1 of this Article, in a city outside the primary of a local union. (Local Representatives, Resident Mechanics, etc., as referred to above, shall be permitted to do one man or as a member of a team, team repairs, in accordance with Article VIII, Par. 2),

and, as a member of a team, ADA modernization and unloading of construction material. However, where a local office is located within a zoned or per diem area of a local union, the employee(s) assigned to such office shall be paid expenses in accordance with the Local Travel and Expense Agreement when performing work, as a member of a team, team repairs, ADA modernization and unloading of construction materials.

Inasmuch as Local Representatives, are on call for extended periods of time, they shall, upon request, receive a minimum of six (6) weekends per year when they are relieved of their on-call obligation. These weekends are in addition to their accrued vacation. The Local Representative must give fourteen (14) calendar days notice before each requested weekend off.

**Par. 2C.** Upon reasonable request of the International Office of the IUEC, the Company shall make available to the properly designated International Representative the information necessary to determine that all employees in a service office are being treated relative to wages, hours worked, straight time and overtime hours paid, Pension and Health Benefit Plan payments in accordance with the NEBA Agreement.

**Par. 3.** It is agreed the regular working day shall consist of eight (8) consecutive work hours,

42

with an unpaid lunch period, between 6 A.M. and 6 P.M., five (5) days per week, Monday to Friday, inclusive. Any Mechanic, Helper or Apprentice assigned regular hours beginning before 8 A.M. or ending after 5 P.M. shall be so assigned for a five (5) consecutive working day increment. It is agreed that for business reasons of the Company or personal reasons of the affected employee, the Company and the local union may modify these times.

It is agreed that in order for call-backs to be answered in downtown business areas or similar business areas, the Company may assign a Mechanic or Mechanics to remain at a mutually agreed building beyond regularly established working hours not to extend beyond 6:30 P.M. For all such work beyond his regularly established working hours the Mechanic or Mechanics shall be paid at the rate of time and one-half. Should such assigned Mechanic or Mechanics be authorized to continue work on a job when a call-back extends beyond 6:30 P.M., the man or men shall receive applicable travel time and travel expense home. Where a paid or non-paid holiday occurs, Monday through Friday, inclusive, the work performed on Saturday during the week in which any holiday occurs shall be time and one-half the single time rates.

**Par. 4.** Work performed on Sundays shall be classed as overtime and paid for at the rate of

43

double time (2X). All other time worked before and after the regular working day or in excess of eight (8) consecutive work hours with an unpaid lunch period and on Saturdays shall be at the rate of time and one-half.

**Par. 5.** Call-backs on contract service on overtime, except Sundays and holidays, shall be paid for at the rate of 1.7 times the rate of single time.

**Par. 6.** Call-backs on contract service on Sundays and holidays shall be paid for at double the rate of single time.

**Par. 7.** On contract service where the Company has a contract in one building only or adjacent buildings, for the examination and care of enough elevators to warrant keeping a man or men working continuously for sixteen (16) hours, the Company may establish a shift from 5:00 P.M. to 12:00 A.M. or 12:00 A.M. to 7:00 A.M. Pay for this work will be eight (8) hours pay for seven (7) hours worked at the regular rate of pay. Saturday, Sunday, and Holidays are classed as overtime and paid at the overtime rate. For the sixteen (16) hour calculation the seven (7) hour shift will be counted as an eight (8) hour shift.

**Par. 8.**

(a) Employees engaged in contract service work agree they will respond to call-backs

outside of their regular work hours. The Company, the local union, and the employees shall meet and cooperate in establishing a call-back system, which will cover such issues as a list of employees available on designated dates to respond to overtime call-backs, the number of employees on call-back at any given time, replacements for vacations and holidays, and trading of on-call duty. In the event the local union, the employees, and the Company cannot agree on the establishment of the call-back system, the Company and the IUEC will meet to establish the system.

Travel time from home to job and from job to home on overtime call-backs (starting after regular working hours and terminating before start of regular working hours) shall be paid for at the same overtime rate applying to the work. Travel expenses on overtime call-backs shall be paid as agreed in Local Expense Agreements.

When consecutive overtime call-backs occur, the employee shall receive the applicable overtime rate and travel expenses from home to job, from that job to one or more other jobs and then back home.

Men called out before the regular working hours shall receive the applicable travel time and travel expense from home to job. (Exception: The Company may call and instruct men to report to any given job at his regular starting time in his route in the primary).

of their primary contact. However, such employees will be available for call out by either leaving another phone number where they can be contacted or by carrying on their person a communication device such as a pager, cellular telephone, two-way radio, or other such communication device which enables the Company to contact them.

## ARTICLE X

### Designation of Helper's and Apprentice's Work and Qualifications

**Par. 1.** It is agreed by the Union that there shall be no restrictions placed on the character of work which a Helper or Apprentice may perform under the direction of a Mechanic. A Helper or Apprentice certified to weld shall be paid Mechanic's rate when performing welding, (excluding tack welding). However, Helpers and Apprentices on contract service work are subject to the provisions of Article IX.

**Par. 2.** The total number of Helpers and Apprentices employed shall not exceed the number of Mechanics on any one job, except on jobs where two teams or more are working, one extra Helper or Apprentice may be employed for the first two teams and an extra Helper or Apprentice for each additional three teams.

47

When call-backs made during regular working hours extend into overtime and the employee is authorized to continue work, he shall receive the applicable travel time and travel expense home.

(b) Employees who are designated to be available for overtime call-backs pursuant to paragraph (a) above, or who are called out before the regular working hours, or who are on call-backs that extend into overtime, shall be entitled to and receive such compensation as described below during the period of time that such employees are responding to call-backs outside of their regular hours of work.

The rate of pay for overtime call-backs shall not be less than 1.7 times the straight time rate of pay.

The premium pay described above is made in lieu of standby pay and in recognition of the fact that contract service employees agree to make themselves available for overtime calls.

(c) It is understood and agreed that employees who are available to respond to overtime call-backs are waiting to be engaged (as defined by the Fair Labor Standards Act) by the Company. Employees who are waiting to be engaged are free to participate in personal activities; are not required to remain at home, at the Company's premises or any other specified location during the period that they are on call. Employees who are "on call" may leave the location they have indicated as the place

46

Further, the Company may use as many Helpers and Apprentices as best suits his convenience under the direction of a Mechanic in wrecking old plants and in handling and hoisting material, and on foundation work. When removing old and installing new cables on existing elevator installations, the Company may use two Helpers or Apprentices to one Mechanic.

**Par. 3.** A newly-hired employee without previous mechanical experience shall be classified as an Apprentice and shall work as a probationary employee in the status of an Apprentice for a period or periods totaling six (6) months within the aggregate period of not more than nine (9) months. The Company and the Union shall have the privilege of testing the ability of probationary employees during this six (6) month period. If they agree that the Apprentice during this probationary period does not display sufficient aptitude to become a first year Apprentice he shall be discharged.

Probationary Apprentices shall advance from the fifty (50) percent wage rate to the first year Apprentice's wage rate upon completion of six (6) months in the elevator industry provided such Probationary Apprentices have worked a minimum of one hundred (100) hours in each thirty (30) day period during the six (6) months. The first year Apprentice wage rate shall be effective at the beginning of the next weekly pay period following completion of the six (6) months.

48

It is understood that probationary employees during the probationary period above set out may be discharged or laid off at any time with or without cause and no reason need be assigned therefore, and no such discharge shall be construed as a grievance. The probationary period may be worked with more than one employer provided such employer has a labor contract with the IUEC, and the period of six (6) months probation may cover an aggregate period of not more than nine (9) months. A month shall be deemed worked when the probationary employee completes one hundred (100) hours in any thirty (30) day period.

**Par. 4.** An Apprentice may work as a Temporary Mechanic provided he/she has completed a minimum of his/her first year apprenticeship requirements, and other requirements for Temporary Mechanics prescribed from time to time by NEIEP, and upon agreement of the Employer and the Union Representative, or Regional Director if he/she works outside the jurisdiction of the Local Union, and at the same scale as a regular Mechanic. Those selected first will be Apprentices who have completed all of their apprenticeship training and are waiting to take the Mechanic's Exam. Those selected second will be workmen who have completed all of their training and failed the Mechanic's Exam and are actively participating in the educational program, they must

49

maintain attendance and passing requirements mandated by NEIEP. Those selected third will be fourth year Apprentices and those selected fourth will be third year Apprentices, followed by finally second year apprentices. Employers may select Apprentices and Helpers in its employ to work as Temporary Mechanics under the provisions of this paragraph if there are no qualified Mechanics available in that Local.

Apprentices serving as Temporary Mechanics will be put back to Apprentice Status when their temporary assignment is completed or within fifteen (15) working days of when the Employer is notified there is a qualified Mechanic available whichever comes first. The order for putting back Temporary Mechanics to Apprentice Status will be in reverse order; 1) second year Apprentices, 2) third year Apprentices, 3) fourth year Apprentices and 4) workmen who have completed all their training and failed the Mechanic's Examination and are actively participating in the educational program and finally Apprentices who have completed all of their apprenticeship training and are waiting to take the Mechanic's Exam.

In order to administer this procedure, NEIEP will provide to the Company on a semi-annual basis a listing of all the Employer's eligible apprentices and helpers and the modules they have completed.

It is agreed that the withdrawal of or failure to issue a Temporary Mechanic's card will not

be used by the Union to advance its position with respect to a dispute unrelated to this paragraph of Article X.

No Apprentice may qualify or be raised to the capacity of Mechanic until he has worked for a period of three (3) years in the elevator Industry, has successfully completed the required NEIEP courses, has been certified by NEIEP that he has completed the necessary "on the job" training and has passed a Mechanic's Examination administered by the NEIEP Director's Office. Such examination shall only be administered by NEIEP no more or no less than once every twelve (12) months in each local. The National Elevator Industry Education Program has developed and will periodically update a standardized Mechanic's Examination which will be used in each local. An Apprentice who has successfully passed a Mechanic's Examination shall become a Mechanic no later than eleven (11) months after the date of the examination. Should he fail to qualify, he cannot again take the Mechanic's Examination for a period of one (1) year.

**Par. 5.** Employees who enter the Military Service shall, upon re-employment, be accorded all rights provided by law. 

**Par. 6.** Upon completion of the required classroom education program and mandatory on-the-job training (OJT) hours, all fourth (4th) year Ap-

prentices will be afforded the opportunity to sit for the NEIEP Mechanic's Exam. Those who pass the exam are elevated to the status of Mechanic, as referred to in Article X, Paragraph 4.

Those who do not sit for or who do not pass the first two scheduled Mechanic's Exams, upon completion of the required classroom education program and mandatory on-the-job training (OJT) hours shall be reclassified as a third (3rd) year Apprentice for all purposes on the following January 1st. Those third (3rd) year Apprentices who do not sit for or who do not pass the third scheduled Mechanic's Exam will be treated as a Helper for purposes of lay-off on the following January 1st. They will be subject to the Apprenticeship Program for the purposes of eligibility for taking the NEIEP Mechanic's Exam.

This status shall continue for a period not to exceed the next scheduled NEIEP Mechanic's Exam. Those who do not pass the next scheduled NEIEP Mechanic's Exam will be ineligible for employment with any NEBA Employer at the discretion of the Employer.

# ARTICLE XI

## System of Payment

**Par. 1.** It is agreed that all Mechanics, Helpers and Apprentices shall be paid weekly by

52

check, which shall be sent to any address they elect to designate other than the Company's address. Mechanics, Helpers and Apprentices shall be given the option to be paid by direct deposit or by direct mail. However, there shall be no obligation on the part of any employee or the Company to participate in the direct deposit/direct mail program and no discrimination against either one if either should elect not to participate. Once enrolled, an employee in direct deposit/direct mail program may elect to discontinue enrollment by giving the Company ten (10) working days written notice. Should a change to a time ticket be required, the Company shall notify the Mechanic and/or Helper or Apprentice in writing of the reason for such change within five (5) working days.

Mechanics, Helpers and Apprentices shall be paid by voucher on the next regular work day following the employee's regular pay day if the employee does not receive his regular pay check.

It is further agreed that in those instances where the Company is consistently unable to comply with the provisions of this paragraph, the Company shall pay each employee on the job or at the office on company time by cash or by check.

**Par. 2.** Elevator Constructors shall receive at the time of weekly payment, a check stub containing the following information:

53

1. Employee's name and social security number.

2. Total hours worked-regular and overtime, accumulative.

3. Total wages-weekly and accumulative.

4. Federal income taxes withheld.

5. FICA taxes withheld.

6. Health Benefit Plan & Pension deductions weekly and accumulative.

7. Any other authorized or legitimate deductions.

8. Vacation pay — weekly and accumulative in amount of money.

and effective January 1, 2008:

9. Annuity contributions-weekly and accumulative in amount of money

10. 401(k) deductions-weekly and accumulative in amount of money

At the time of weekly payment, at the employee's request, the Employer shall also provide the employee with a document, in writing, reporting the time the employee submitted to his Employer for that payment, regardless of whether the employee submitted his time on paper, electronically, or by any other medium.

Should the Company's payroll and/or accounting department experience a short work week due to a holiday or any other reason, the Company shall make any special arrange-

54

ments necessary to insure employees receiving pay on schedule.

## ARTICLE XII

## Vacations

**Par. 1.** The following plan is established for Vacation Pay: (a) A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked.

No Vacation Pay shall accrue for the first six (6) months worked in the business.

(b) The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid in full to the employee by January 15 of the succeeding year.

(c) A man with less than five (5) years in the business who works 1750 hours or more but less than 2000 hours in any vacation year shall receive at least 120 hours vacation pay. A man with more than five (5) years in the business who works 1750 hours or more but less than

55



2000 hours in any vacation year shall receive at least 160 hours vacation pay. The vacation year shall run from January 1 through December 31.

(d) Where vacation pay equal to ten (10) or more days has been accumulated for an employee and fifteen (15) or more days for an employee with more than five (5) years of service such employees must take a minimum vacation of ten (10) and fifteen (15) days, respectively.

(e) The employee shall have the option of taking any additional vacation accrued in excess of the amount stated under Paragraph (d) above provided he has obtained prior approval from the Company.

(f) It is understood and agreed that work conditions must be taken into consideration when vacations are arranged.

Time off for vacation shall be taken as a full complete period whenever possible.

(g) Vacation Pay accrued will change from 6% to 8% on the first payroll period after the first month following completion of five (5) years in the business. These five (5) years include the six (6) months probationary period.

(h) The local union shall furnish the Company, on request, dates that Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices were first employed in the elevator industry.

(i) When a man leaves the Company the Va-

cation Pay shall be retained. He shall receive the retained amount due him at the time specified in (b) above.

(j) When a man retires from the industry, the Company shall pay any vacation pay he is owed within thirty (30) days after his retirement provided he notifies the Company in advance and in writing.

(k) Where vacations interfere by temporarily breaking up a team, the Company shall have the right to place the extra man to the Company's advantage. Serious interference shall be taken up with the Business Representative.

(l) Time spent outside the industry, whether or not a member of the local union, shall not count toward vacation eligibility status. An employee with at least one (1) year's service in the industry who takes time off for service in the Armed Services shall have such service time counted toward his vacation eligibility status upon return to the industry.

(m) Hours worked for the Company by a member of a local union, while outside of the jurisdiction of that local, shall count for vacation pay.

(n) Hours paid as holiday pay, vacation pay, or traveling time outside of the regular working hours are not to be counted as hours worked when computing vacation pay (Exception: traveling time on overtime callbacks, whether emergency maintenance or emer-

gency repair work, shall be counted as hours worked when computing vacation pay).

(o) At the time vacation pay is paid, Federal and State taxes shall be withheld on the basis of the number of weeks of vacation or portion of a week of vacation the accrued vacation pay represents. The intent of this provision is that taxes will be withheld at weekly rates rather than the higher rates for a lump sum payment of vacation pay.

## ARTICLE XIII

### Traveling Time and Expenses

**Par. 1.** When Elevator Constructors are sent outside the primary jurisdiction, but within the zoned area of the secondary, travel time and travel expense shall be paid in accordance with the Local Expense Agreement.

When Elevator Constructors are sent beyond the zoned area of the secondary jurisdiction or outside the secondary jurisdiction all travel time during the regular established work hours, Monday through Friday, inclusive, shall be paid at single time rates. Likewise, all travel time before and after the regular established work hours, Monday through Friday, inclusive, shall be paid at time and one-half rates. Further, all travel time on Saturdays, Sundays and Holidays shall be paid at

time and one-half rates (as agreed to in Article IX, Contract Service, travel time on overtime call-backs is excepted from the above). Expenses incurred on trip to be paid by the Company in accordance with the Local Expense Agreement.

Employees operating vehicles provided by the Company shall not be entitled to payment of wages or commuting expenses for time spent driving before or after the regular working hours from the employee's home to the first job site of the regular work day or driving from the last job site of the regular work day to the employee's home. (Note: Employees shall be reimbursed for any tolls in excess of the toll charge for passenger vehicles). This is not intended to circumvent expenses or travel time paid pursuant to Art. IX or Art. XIII and/or a Local Travel and Expense Agreement or established local practice.

**Par. 2.** Local Unions and NEBA Representatives are requested to establish zones within the secondary jurisdiction and traveling time and traveling expense allowances for each zone, consistent with existing arrangements.

**Par. 3.** When the Local Union and the NEBA Representative are unable to resolve differences regarding local travel time and travel expense agreements and presently recognized primary and secondary jurisdiction, either

party may request the General President, IUEC and the NEBA Executive Director to study the dispute. The General President, IUEC and the NEBA Executive Director, or their designees, shall entertain the request, and after investigation and study, are authorized to make recommendations to the Local Union and the NEBA Representative.

The General President, IUEC and the NEBA Executive Director, or their designees, may issue guidelines that the Local Union and the NEBA Representative may utilize in negotiating changes to and resolving disputes over local travel time and travel expense agreements.

All parties shall continue to work under the existing local travel time and local travel expense agreement for thirty (30) days from the date that NEBA and the IUEC are notified that the parties have reached an impasse. The General President, IUEC and the NEBA Executive Director, or their designees, may at their discretion extend the present Agreement for one additional thirty (30) day period.

## ARTICLE XIV

## Strikes and Lockouts

**Par. 1.** It is agreed by both parties to this Agreement that so long as the provisions herein con-

60

tained are conformed to, no strikes or lockouts shall be ordered against either party. It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2.** No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator Constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by lawful picketing or strikes by building trades local unions affiliated with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers and Apprentices on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

61

## ARTICLE XV

### Arbitration

**Par. 1.** Any difference or dispute regarding the application and construction of this Agreement, shall be referred to as a "grievance" and shall be resolved under the following procedure. Both parties commit to making an earnest effort to resolve differences in accordance with the procedure outlined below:

**Par. 2.** Oral Step. Any employee, local union, or the Employer with a grievance (hereinafter called the "grievant"), shall discuss the grievance with the designated Employer Representative (or Local Union Business Representative) within ten (10) working days after the cause of the grievance is known or should reasonably have been known. The Employer shall designate to each local union the Employer's Representative(s) for the purpose of responding to grievances at this step. If the grievance is initiated by an employee, the Local Business Representative shall be present during the discussion.

Within three (3) working days after the above discussion, the Employer's Representative shall notify the employee and the Local Union Business Representative of his disposition of the matter.

The Local Business Representative shall similarly respond to the Employer's grievance.

**Par. 3.** Written Step One. If the issue remains unresolved after the conclusion of the Oral Step, the grievant, within ten (10) working days of the conclusion of the Oral Step, may submit in writing on provided forms a brief statement of the grievance, including the Article and paragraph of the Agreement allegedly violated (if known), and the remedy requested.

Within fifteen (15) working days after the written grievance is received by the Employer (or the Union), a meeting will be held to discuss the grievance. The Employer shall be represented by the Regional Field Manager, Field Employee Relations or his designee and the designated Employer Representative described in Paragraph 2. The union shall be represented by the IUEC Regional Director or other Representative designated by the General President and the Local Business Representative described in Paragraph 2.

At the meeting (or any continuation thereof agreed to by the parties), the Employer (or the Union) shall give its written answer to the grievance on the provided form. Within ten (10) working days of that disposition, the Employer or the Union shall indicate on the grievance form whether it appeals therefrom. If the grievance disposition is not appealed, it shall be final and binding on all parties.

**Par. 4.** Written Step Two. If the grievance is appealed it shall be placed on the agenda of a

scheduled meeting of the National Arbitration Committee. The Employer shall be represented by the NEBA Executive Director or his designee and a panel of two (2) additional Employer Representatives. The Union shall be represented by the General President or his designee and two (2) additional representatives.

The National Arbitration Committee shall meet once per calendar quarter. Each party shall submit an agenda not less than seven (7) working days prior to the meeting.

The NEBA Executive Director or his designee (or the General President, IUEC or his designee) shall render a disposition of the grievance in writing at the National Arbitration Committee Meeting. If the grievance disposition is accepted, it shall be final and binding on all parties.

**Par. 4(A).** NEBA and the Union agree to the following program for Advisory Arbitration of grievances on a test basis. Either party may terminate the program upon ninety (90) days' written notification to the other at any time after December 31, 2008:

1. Upon the request of either party a grievance not resolved at the National Arbitration Committee (NAC) may be submitted to Advisory Arbitration by written notification to the other party within fifteen (15) working days after receipt of the other party's written disposition at the NAC level.

2. There shall be a mutually designated panel of four (4) Advisory Arbitrators, each of whom agrees to hear cases during a designated three-day week session (Tuesday through Thursday) in a designated location each year, which shall be at least thirty (30) days after receipt of the written notification that the case has been submitted to Advisory Arbitration. The thirty (30) day time limit may be waived by mutual agreement of the parties.

3. Each party (that is, NEBA and the Union) may present up to three (3) cases at each three-day session. Should either party not use its full complement of cases that week, and should the parties mutually agree, the other party may use the other's unused allotment to present additional cases.

4. Each party will be limited to three (3) attendees (counsel included) during the presentation of any case. Hearings shall be informal and the rules of evidence will not apply. No record, stenographic or tape recordings of any session will be made.

5. The parties will not use the traditional means of presenting evidence, there will be no witness testimony, either direct or cross examination. The spokesman for each side will present its case by way of summary presentation that combines elements of opening statement, proffers of evidence, and closing argument, all in a single narrative. The spokesman may offer documents (without formal authentication),

and summarize the testimony of potential witnesses. A pre-hearing brief limited to ten (10) pages in length may be offered at the hearing. Each side's initial presentation will be limited to one (1) hour, with an opportunity provided for rebuttal and follow-up. The Advisory Arbitrator may ask questions of anyone present. Each case shall be concluded within four (4) hours. There will be no post-hearing briefs.

6. At the conclusion of the hearing in any case, the Advisory Arbitrator shall endeavor to advise the parties orally what his Advisory Opinion would be in the case. At the request of any party, the Advisory Arbitrator shall issue a written Advisory Opinion which shall be labeled in bold letters at the top of the opinion "Advisory Non-Binding Opinion", within thirty (30) days, which shall be an opinion of ten (10) pages or less.

7. Nothing said by the parties or their representatives during the Advisory Arbitration process, nor any pre-hearing brief or position statement introduced during a case, can be used or introduced by the other party during Impartial Arbitration proceedings or in any other proceeding. Nor may the Advisory Arbitrator's Advisory Opinion, whether delivered orally or in writing, be used, introduced or disclosed during Impartial Arbitration or in any other proceeding.

8. It is the mutual intent and desire of the parties that following the presentation of a

case at Advisory Arbitration, the parties themselves will agree upon final resolution of the case, in accordance with the Advisory Arbitrator's Advisory Opinion, or some variation thereof. However, should that not result, either party may refer a case heard at Advisory Arbitration to Impartial Arbitration under Paragraph 5 of this Article, by written notice to the other party within thirty (30) days of the Advisory Arbitration hearing or receipt of the Advisory Arbitrator's written Advisory Opinion, whichever is later, unless the parties mutually agree to extend said time.

Any Advisory Arbitrator hearing a case at Advisory Arbitration shall be disqualified from hearing the same case at Impartial Arbitration.

9. The cost of the Advisory Arbitrators and the hearing arrangements shall be mutually borne by the parties.

**Par. 5.** Impartial Arbitration. If the grievance is not settled by the National Arbitration Committee, the Union or the Employer, within fifteen (15) working days of the Employer's (or Union's) disposition as outlined in Paragraph 4, may appeal the grievance to impartial arbitration. Such appeal shall take the form of a letter to the NEBA Executive Director (or the General President, IUEC).

**Par. 6.** The parties shall mutually agree upon the selection of an impartial arbitrator. If, within

fifteen (15) days, the parties are unable to agree on the person to be selected as arbitrator, the parties shall jointly request to submit the matter to arbitration conducted in accordance with the Labor Arbitration Rules and Procedures of the American Arbitration Association and by an arbitrator who is a member of the National Academy of Arbitrators.

The arbitrator shall render his decision immediately upon the close of the record if the parties mutually agree otherwise the decision shall be rendered within thirty (30) days of the close of the record or the receipt of the briefs if the parties desire to file briefs. In an arbitration, either party may rely upon Articles in the Agreement other than those set forth in the original grievance form. The decision of the impartial arbitrator shall be final and binding on all parties.

**Par. 7.** It is understood that the arbitrator does not have the authority to add to, subtract from or modify in any way the provisions of this Agreement.

**Par. 8.** Grievances of the Union or the Employer shall originate at Written Step Two by submission to the NEBA Executive Director (or the General President, IUEC). The grievance of an IUEC Regional Director shall be filed and processed beginning at Written Step One of the procedure.

**Par. 9.** Discharge Grievances Expedited Impartial Arbitration. Recognizing the special nature of cases involving the discharge of an employee, the parties agree that such case(s) shall be handled as follows:

(a) Any discharge grievance not resolved at the Written Step One meeting may immediately be referred by either party to the NEBA Executive Director or his designee and the General President, Union or his designee for their immediate review and discussion. Such grievance need not wait to be placed on the agenda of the scheduled National Arbitration Committee, but rather shall be discussed, either in person or by telephone, by the parties within ten (10) working days of the referral from Written Step One. The parties shall make an earnest effort to resolve their differences at this meeting, but failing such agreement, either party may request immediate, expedited impartial arbitration.

(b) Within ten (10) working days of a request for impartial arbitration by either party, the parties shall mutually agree upon the selection of an impartial arbitrator who shall be obliged to schedule a hearing at the earliest possible available date on his/her schedule where both parties are available to present their respective cases. The arbitrator shall hear the case. Post hearing briefs must be submitted within two (2) weeks of the conclusion of the hearing. The arbitrator shall render the

award within two (2) weeks of the submission of briefs. Post hearing briefs may be waived by mutual agreement of the parties.

**Par. 10.** Compensation and expenses of the arbitrator shall be shared equally between the Employer and the Union.

**Par. 11.** Any of the time limits contained herein may be mutually extended by the representatives of the parties. Failure to appeal the grievance within the time limits described above without mutual agreement shall be considered an abandonment of the grievance. If a grievance is not dispositioned within the above time limits, it shall be immediately processed to the next step of the procedure.

## ARTICLE XVI

## Jurisdictional Territory

**Par. 1.** The primary jurisdiction of any local union shall include only that territory in which its members will agree to travel on their own time.

The secondary jurisdiction shall include the balance of the territory now within the jurisdiction of the local union.

**Par. 2.** Any change to the present jurisdiction of a local must be approved by the International

70

Union of Elevator Constructors and the NEBA Executive Director before becoming effective.

**Par. 3.** The primary jurisdiction of Local No. _____ of the City of _____, relative to the wage scale and working conditions shall include the following territory: _____

The secondary jurisdiction of Local No. _____ of the City of _____, relative to working conditions shall include the following territory: _____

**Par. 4.** The parties agree that they meet annually and by mutual agreement more often, if necessary to discuss jurisdictional issues. The parties agree to fairly act upon justifiable written requests by Local Unions for extensions of existing jurisdictions. The Company and the IUEC shall advise a Local Union within sixty (60) days after the meeting at which the request is considered, of its disposition of the request.

When opening a Local Office the following steps shall be followed:

1. The Company shall notify the Local Business Manager/Representative when opening a new "Local Office" in a Local Union's secondary jurisdiction or open territory.

2. The Company shall bargain with the Local Business Manager/Representative or International when considering the assignment of a bargaining unit employee to a Local Office. No

71

bargaining unit employee will negotiate directly with the Company.

3. The Company agrees to make forty (40) hours per week available to the first employee assigned to a Local Office. As each additional employee is assigned to such office thereafter, the Company agrees to make not less than thirty-two (32) hours of work available to the most recent addition and forty (40) hours per week available to all but the last employee so assigned.

4. Local Office employees will perform work per Article IX, Par. 1 and Article IX, Par. 2B.

5. Local Office employees shall not perform work in the primary of a local union unless mutually agreed to by the Company and the Local Business Manager/Representative.

6. Local Office Employees shall perform their work in accordance with the NEBA National Agreement at all times.

## ARTICLE XVII

## Health Benefit Plan

**Par. 1.** The Health Benefit Plan covering life insurance, sickness and accident benefits, and hospitalization insurance, or any changes thereto that are in accordance with the National Elevator Industry Health Benefit Plan and Declaration of Trust, shall be a part of this

72

Agreement and adopted by all parties signatory thereto.

**Par. 2.** The Health Benefit Plan shall be financed by mutual contribution, of Employers and Elevator Constructor Mechanics, Helpers and Apprentices as provided herein. The Employer agrees to continue to pay and contribute eight dollars and twenty seven and one half cents ($8.275) for each hour of work performed by all Elevator Constructor Mechanics, Helpers and Apprentices in its employ. The eight dollars and twenty seven and one half cents ($8.275) hourly contribution rate shall increase upon every anniversary of the wage rate change of each Local Union, in accordance with the following (except as modified pursuant to Article V, Paragraph 3):

| Effective Date | Amount of Increase | Hourly Contribution Rate |
| --- | --- | --- |
| January 1, 2008 | $0.50 | $ 8.775 |
| January 1, 2009 | $0.75 | $ 9.525 |
| January 1, 2010 | $0.50 | $10.025 |
| January 1, 2011 | $0.50 | $10.525 |
| January 1, 2012 | $0.50 | $11.025 |

Each Elevator Constructor Mechanic, Helper and Apprentice shall continue to contribute three and one-half cents ($.035) per

73

hour. Payments of said contributions by the Employer and Elevator Constructor Mechanics, Helpers and Apprentices shall be in accordance with the National Elevator Industry Health Benefit Plan and Declaration of Trust.

Par. 3. It is understood and agreed that the contributions provided for in Par. 2 shall be used by the Trustees to maintain the plan of benefits provided by the Health Benefit Plan to the extent that it is feasible to do so on a sound financial basis without any increase in said hourly contribution rates during the term of this Agreement (except as modified by Article V, Par. 3).

Par. 4. It is understood and agreed that the decision(s) to increase or decrease the benefits provided by the Health Benefit Plan are matters committed to the discretion of the Trustees, except that the Trustees should not make any change in the plan of benefits which would result in the need for an increase in the contribution rates set forth in Par. 2. It is further understood and agreed, that the Actuary of the Health Benefit Plan shall continuously monitor the financial condition of the Health Benefit Plan and shall promptly advise the Trustees whenever in the opinion of the Actuary, it is necessary for the Trustees to modify benefits provided by the Health Benefit Plan in order to maintain the Health Benefit Plan in sound financial condition without any in-

crease in the hourly contribution rates set forth in Par. 2. The Actuary shall report to the Trustees with respect to such matters at least once each year as soon as is feasible after the financial and actuarial information for the Health Benefit Plan as of the end of the plan year is available.

Par. 5. In no event shall a contribution rate of the Company exceed the lowest contribution rate paid by any other contributor to the Health Benefit Plan for the type of work covered by this Agreement.

## ARTICLE XVIII

### Pension Plan

Par. 1. The National Elevator Industry, Inc., and the International Union of Elevator Constructors shall continue the Pension Trust Fund known as the "National Elevator Industry Pension Plan," which is administered by a board of eight (8) Trustees, four (4) appointed by the National Elevator Industry, Inc., and four (4) appointed by the International Union of Elevator Constructors. The Board of Trustees have adopted a Declaration of Trust and Plan of Pension Benefits which shall be a part of this Agreement and binding on all parties signatory to this Agreement.

The normal retirement age of the Pension Plan is sixty-five (65) years of age.

**Par. 2.** The Plan of Pension Benefits shall be financed by contributions as provided herein. The Company agrees to continue to pay and contribute four dollars and forty six cents ($4.46) for each hour of work performed by all Elevator Constructor Mechanics, Helpers and Apprentices in its employ.

The four dollars and forty six cents ($4.46) hourly contribution shall increase upon every anniversary of the wage rate change of each Local Union, in accordance with the following (except as modified pursuant to Article V, Paragraph 3):

| Effective Date | Amount of Increase | Hourly Contribution Rate |
| --- | --- | --- |
| January 1, 2008 | $0.50 | $4.96 |
| January 1, 2009 | $0.50 | $5.46 |
| January 1, 2010 | $0.50 | $5.96 |
| January 1, 2011 | $0.50 | $6.46 |
| January 1, 2012 | $0.50 | $6.96 |

Payments of said contributions by the Company shall be in accordance with the terms of the Declaration of Trust adopted by the Board of Trustees. However, in no event shall contri-

butions by the Company exceed the lowest contribution paid by any employer contributor to the Pension Plan for the type of work covered by this Agreement performed in the same geographical jurisdiction of a given local.

**Par. 3.** Under the terms of this Agreement, including the agreed-upon contribution rate to the Pension Plan, it is the understanding and intention of the parties that the Trustees of the Plan, in fulfilling their duties as Trustees, will operate and administer the Pension Plan in a sound fiscal manner and in accordance with the Agreement and Declaration of Trust. It is the intention of the parties that the Trustees will annually review the applicable benefit rates of the Plan, and following such review, may increase the benefit rate to a level such that the funding period will be fifteen (15) years or less, so that neither withdrawal liability nor an unfunded vested liability will be created and so that the Plan will remain comfortably in the "green zone" under the rules of the Pension Protection Act of 2006, that is, the Plan will stay outside of "endangered" and "critical" status as defined by the Pension Protection Act. Each year, as soon as feasible after the financial and actuarial information for the Plan as of the last day of the prior Plan Year is available, the Plan actuary shall advise the Trustees with respect to the funding of the Plan, taking into account the criteria set forth in this paragraph.

## ARTICLE XVIII(A)

### 401(k) Annuity

The National Elevator Industry 401(k) Retirement Plan shall have a provision added to enable the Plan to accept annuity contributions and shall be known as the Elevator Constructors Annuity and 401(k) Plan.

The Plan shall be administered by a board of eight (8) Trustees; four (4) appointed by the International Union of Elevator Constructors and four (4) appointed by the National Elevator Industry, Inc.

The Board of Trustees shall adopt a Declaration of Trust and Plan of Benefits which shall be part of this Agreement and binding on all parties signatory to this Agreement.

The annuity benefits shall be funded by Employer contributions as follows (except as modified pursuant to Article V, Paragraph 3):

| Effective Date | Amount of Increase | Hourly Contribution Rate |
|---|---|---|
| January 1, 2008 | $0.25 | $1.85 |
| January 1, 2009 | $0.50 | $2.35 |
| January 1, 2010 | $0.50 | $2.85 |
| January 1, 2011 | $0.50 | $3.35 |
| January 1, 2012 | $0.50 | $3.85 |

## ARTICLE XIX

### Educational Fund

**Par. 1.** The National Elevator Industry, Inc., and the International Union of Elevator Constructors have established an Education Trust Fund administered by a joint board of trustees. The Educational Trust Fund known as the "National Elevator Industry Education Program" shall provide an apprenticeship program for the education and training of Apprentices as well as a continuing education program for elevator Mechanics. Such Fund has been established pursuant to and in compliance with the provisions of Section 302 of the Labor-Management Relations Act, as amended.

**Par. 2.** The apprenticeship program called for herein shall be for a period of four (4) years and shall in all respects conform to the regulations of the United States Department of Labor and/or applicable state apprenticeship councils governing registered apprenticeship programs. The pattern standards for the apprenticeship program are set forth in the National Guidelines for Apprenticeship Standards and are incorporated herein. Through coordination with the Director of the National Elevator Industry Education Program, local committees consisting of representatives of employers signatory to this Agreement and IUEC Local Unions, shall prepare and submit for approval

to the applicable state apprenticeship councils such documents as may be necessary to secure registration of the apprenticeship program called for herein. Upon the approval of the parties hereto, such committees may alter the program of apprenticeship set forth in the National Guidelines for Apprenticeship Standards if in their opinion such alterations are called for by applicable state law.

**Par. 3.** The Board of Trustees of the Education Trust Fund shall have full authority and discretion to adopt Agreements and Declarations of Trust and educational and training programs which shall become a part of this Agreement and binding on all parties to the Agreement. Individuals, Companies and Local Unions may appeal decisions of a Local Joint Apprenticeship Committee to the Board of Trustees of the Educational Trust Fund which may review, modify or set aside such decision and order relief as appropriate. This provision of this Article shall be effective to the extent permitted by applicable law.

**Par. 4.** The National Elevator Industry Education Program shall be financed by contributions by Employers as provided. Upon the effective date of this Agreement the Company agrees to continue to pay and contribute to such Fund fifty-five cents ($.55) per hour for each hour of work performed by all Elevator Constructor Mechan-

80

ics, Helpers and Apprentices. The amount of the Company contribution will be as follows (except as modified by Article V, Par. 3):

| Effective Date | Amount of Increase | Hourly Contribution Rate |
| --- | --- | --- |
| July 9, 2007 | $0.00 | $0.55 |
| January 1, 2008 | $0.00 | $0.55 |
| January 1, 2009 | $0.00 | $0.55 |
| January 1, 2010 | $0.00 | $0.55 |
| January 1, 2011 | $0.00 | $0.55 |
| January 1, 2012 | $0.00 | $0.55 |

Payment of said contributions shall be in accordance with the terms of the Declaration of Trust adopted by the Board of Trustees. However, in no event shall contributions by the Company exceed the lowest contribution paid by any employer contributor to the Fund.

**Par. 5.** It is understood and agreed that if prior to any calendar year the Trustees shall advise the IUEC and NEBA that the amount of the contributions set forth in Par. 4 above are providing more than sufficient funds to finance and maintain the existing education program, then the IUEC and NEBA shall meet to discuss and agree upon whether the amount of the Companies' contributions to the Education Plan should be reduced and the wage rate of

81

Union or Employers party to this Agreement, but shall be administered solely by the Trustees and its duly authorized representatives for the purposes permitted.

**Par. 2.** The Fund shall be governed by a written Trust Agreement and administered by a Board of Trustees, in accordance with, and so provided in, the governing documents of the Fund and subsequent amendments thereto.

**Par. 3.** The assets of the Fund shall be used for any purpose authorized by Section 6(b) of the Labor-Management Cooperation Act of 1978 and Section 302(c)(9) of the Taft Hartley Act, 29 U.S.C. Section 186(c)(9). The Fund shall not be used for any other purpose, including a purpose which is inconsistent with the provisions of this Agreement, or used for the purpose of funding any lobbying effort or participation in any litigation, or administrative proceeding in which the Fund is seeking or supporting a result which is contrary to the interests of any Employer signatory to this Agreement, or used in connection with an organizational campaign to organize any employees of an Employer which is bound by the terms of this Agreement in a job classification other than the classifications of Elevator Constructor Mechanic, Elevator Constructor Helper and Elevator Constructor Apprentice.

**Par. 4.** No Employer signatory to this Agreement shall be obligated to provide information

83

Elevator Constructor Mechanics, Helpers and Apprentices increased by the amount of any agreed upon reduction.

It is also understood and agreed that if at any time the Trustees of the Education Plan shall advise the IUEC and NEBA that the Education Plan does not have sufficient funds to maintain the existing education program, then the IUEC and NEBA shall meet to discuss and agree upon whether the amount of the Companies' contributions to the Education Plan shall be increased. In no event shall the Companies' contribution exceed the lowest contribution paid by any employer contributor to the Education Plan.

## ARTICLE XX

## Elevator Industry Work Preservation Fund

**Par. 1.** The Elevator Industry Work Preservation Fund shall be funded by a contribution of eighteen cents ($0.18) per hour and continued each year thereafter for each hour of work performed by each employee covered by this Agreement to the Elevator Industry Work Preservation Fund (except as modified by Article V, Par. 3). Except for the transfer of contributions described in Section 5 below, the monies of the Fund shall be at all times segregated from other Union or Employer assets, and shall not be used or controlled by the

82

to the Union or to the Fund with respect to any matter which the Fund may be reviewing or pursuing or otherwise related to the activities of the Fund, nor shall any Employer signatory to this Agreement be obligated to participate in any of the activities of the Fund in any other manner. The Trustees of the Fund shall not take any action which directly or indirectly changes any of the Articles or intent of this Agreement, nor shall any provision of this Article be construed to change the meaning or intent of any other Article of this Agreement.

**Par. 5.** Contributions to the Elevator Industry Work Preservation Fund will be reported on and transferred on a monthly basis using the Monthly Remittance Report to the National Elevator Industry Benefit Funds (NEIBF), which will in turn segregate and deposit the contributions to the Work Preservation Fund in that Fund's separate account.

## ARTICLE XXI

### Payment for Lost or Stolen Tools

**Par. 1.** The Company agrees that they should make every effort to provide a reasonably safe place for tools and likewise the employee shall make every effort to protect not only his own tools but also to protect the Company tools. The Company and the local union agree to jointly re-

84

imburse Elevator Constructor Mechanics, Elevator Constructor Helpers and Elevator Constructor Apprentices for tools lost on the job or stolen while in transit or stolen from any vehicle being used by the employee on the following basis:

a) Up to a maximum claim of $200, the Company will pay 75% and the local union will pay 25%.

b) On claims of more than $200, the local union will pay $50 with the remainder, up to a maximum of $900, paid by the Company.

Alternatively, the Company may elect to list those tools which its employees are required to utilize. In that event the Company shall not be required to reimburse its employees for other than those tools it shall require.

Actual receipts for replacement tools must be submitted, in either case, to the local union and the Company by the Employee claiming the loss before reimbursement can be authorized. The local union and the Company reserve the right to inspect replacement tools.

## ARTICLE XXI (A)

### Metric Tools

When and if the Company requires the use of metric tools by an employee in the course of his employment, the Company agrees, upon receipt from the employee, to reimburse the em-

85

ployee for all tools required or to provide such tools, at the Company's option.

## ARTICLE XXII

### Hiring, Layoffs and Transfers

Par. 1. In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of employment of applicants and of preventing discrimination because of age, citizenship, disability, race, color, creed, sex, religion or national origin, the parties hereto agree to the following system of employment:

(a) The Union shall establish, maintain and keep current an open list for the employment of workmen qualified to perform the duties required. Such list shall be established, maintained and kept current on a nondiscriminatory basis and shall not be based on or in any way affected by Union membership, Union By-Laws, regulations or constitutional provisions or any other aspect or obligation of Union membership, policies or requirements. Upon request such list shall be made available to the Company for inspection. An employee who does not meet the requirements set forth in the Substance Abuse Program will be deemed unqualified and not placed on any list for referral or referred out to any company.

86

(b) The Company shall hire experienced Mechanics, Helpers and Apprentices who permanently live in the area, are seeking employment and are qualified to perform the work required by the Company before hiring a transient employee or a new inexperienced employee. An employee shall be considered a transient until he makes a showing that he is permanently changing his home and residing in the territorial jurisdiction of the local with which he has registered for referral. The employee shall verify the change by providing to the local, a motor vehicle registration and drivers license with the new address. The employee shall send the change of address to the International in order to be registered with the local for referral. Provided the foregoing criteria are met, an employee's status as a transient shall continue for a period of six (6) months from the time he has registered with the local. When hiring an experienced Mechanic, Helper or Apprentice the Company shall use the Union as the first source of applicants for employment. Upon the Company's request, the Union shall refer, on the basis set forth hereinafter, such an applicant within a period of 72 hours after such request, exclusive of Saturdays and Sundays. When seeking Apprentice applicants, the Company will utilize the list provided by the Local Joint Apprenticeship Committee (JAC). If the Union or JAC fails to refer qualified workmen within the specified

87

period the Company may obtain workmen from any other available source. The Company has the right to reject any and all applicants referred to it by the Union. The Company, where requested by the Union, shall give, in writing, the reason for any rejection. It is further understood and agreed that if any workman is continually rejected by the Company within a local union's jurisdiction or if the Company, as a matter of practice, repeatedly rejects applicants referred by the Union, the local union Business Representative or the Company may submit the matter of rejection to the designated Company Labor Relations Representative and IUEC Regional Director. Failing agreement, the matter may be referred to the National Arbitration Committee under Article XV. The Company Labor Relations Representative and IUEC Regional Director, National Arbitration Committee or the Impartial arbitrator shall have authority to decide the matter and impose an appropriate remedy. If they find that the continued rejection of a particular workman was justified, the appropriate remedy may include directing the removal of the named workman from the list for a period of time. If they find that the Company has unreasonably or discriminatorily exercised its right of rejection, the appropriate remedy may include directing that the Company not have a right of exercising his right of rejection for a period of time.

88

(c) The Union shall refer to the Company only workmen whose names appear on the open employment list and in so doing shall be governed by the following criteria:

(1) If the Company requests by name from the open employment list a particular workman previously employed by the Company, who permanently lives in the area, that workman shall be referred by the Union to the Company unless the workman is unwilling to accept employment with the Company.

(2) If the Company requests by name from the open employment list a particular workman who has not previously been employed by the Company, who permanently lives in the area, that workman shall be referred by the Union to the Company unless the workman is unwilling to accept employment with the Company.

(3) When hiring an experienced Apprentice from the local open employment list, the Company will first hire those classified as fourth year Apprentices whose names appear on the open employment list. Thereafter, the Company may select and hire or reemploy any Apprentice. However, at its sole discretion, the Company may select and rehire or reemploy any Apprentice who has previously worked for the Company during the immediately preceding twelve (12) month period, irrespective of the availability of any fourth year Apprentice.

(4) In the event the General President of the

89

IUEC shall be of the opinion that a severe unemployment situation exists in any local's jurisdiction, he shall contact the NEBA Executive Director and confer with him as to the problem and possible resolutions. Failing agreement the matter may be submitted to the impartial arbitrator as provided under Article XV. An agreement as to resolution of the problem between the General President of the IUEC and the NEBA Executive Director or the decision of the arbitrator may modify the provisions of subparagraph (1) and (2) above as may be deemed necessary under the circumstances.

(d) All Employment Practice provisions are to be posted in the Union Hall and in the Company's Personnel Office.

(e) As soon as practical the General President of the IUEC shall review all locals of the Union where there is a part-time Business Representative for the purpose of determining whether such Business Representative is able to establish and maintain an open employment list and to operate the procedures in this Article in a satisfactory manner. He shall then advise the NEBA Executive Director as to such determination and if there is any disagreement, they shall endeavor to resolve the matter. Failing agreement, the matter may be submitted to the impartial arbitrator provided under Article XV.

90

**Par. 2.** Applicants for apprenticeship shall be evaluated and ranked in accordance with the selection procedures contained in the pattern affirmative action plan set forth in the National Guidelines for Apprenticeship Standards, as they may be amended from time to time, or such similar procedures adopted to conform to applicable state laws or regulations, by local committees consisting of representatives of IUEC Local Unions and Employers signatory to this collective bargaining agreement. Employers seeking new employees shall contact the appropriate local committee for dispatch of an apprentice in accordance with that committee's referral procedures. The Local Union and the Companies are entitled to a copy of the complete ranked applicant list. If applicants for Apprenticeship are not referred from the Apprentice applicant list, the Employer may obtain Apprentices from any other available source.

**Par. 3.** When an Employer makes layoffs, the probationary Apprentice will be laid off first; thereafter, any transient Helper, then any transient Apprentice, followed by any Helper who permanently lives in the area; thereafter, a first year Apprentice; thereafter, a second year Apprentice; thereafter, a third year Apprentice and thereafter, a fourth year Apprentice. The Employer will determine the order of lay off in each classification. Employees laid off shall be paid at the next weekly payroll period following the layoff.

91

The Temporary Mechanic shall be set back in the same order as mentioned in Article X, Par.4 prior to layoff of a transient Mechanic, not including temporary transfers referred to in paragraph (4) below, and lastly those Mechanics who permanently live in the area will be laid off.

Par. 4. The Company shall have the right to transfer temporarily from one local union's jurisdiction to another, key Mechanics (such as adjustor, certified welder, Mechanic-In-Charge, experienced escalator Mechanic, Mechanic trained to handle special equipment such as hydro drilling equipment, Mechanic required to train or orient other employees in that local union's jurisdiction as to the Company's equipment, Mechanic transferred temporarily to open an office). A Mechanic-In-Charge is only on a construction or modernization job where there are four (4) or more Elevator Constructors including the Mechanic-In-Charge. In addition, where the Company does not have a regular work force, the Company shall have the right to transfer Mechanics temporarily on a one-to-one basis in the case of two (2) man jobs up to a maximum of three (3) such jobs at any given time. It is understood that the foregoing limitations shall not be applicable where there are no qualified Mechanics available in the local union. Mechanics temporarily transferred under the above provisions may remain in the area only until completion of their work

on the particular job for which they have been transferred.

The Company and the IUEC shall mutually decide upon what is a regular work force as used in this Par. 4 and that decision shall become incorporated in and a part of this Agreement.

Par. 5. Where the Company is opening a new office in one local union's jurisdiction they may permanently transfer one Mechanic from the jurisdiction of another local union to start the new office provided they have advised the Business Representative in advance of the transfer. The Company may permanently transfer an employee from one local union to work in the jurisdiction of another local union subject to the following conditions:

(a) Prior notice shall be given to the International Union.

(b) The Company shall consider the following factors in reaching a decision to transfer such an employee:

1. The availability of qualified personnel in the other local union.

2. The business necessity for such a transfer and other relevant considerations.

(c) The Company shall not permanently transfer any employee for the purpose of circumventing an expense agreement.

(d) Any dispute concerning such a transfer shall be subject to the grievance and arbitration procedure herein.

(e) It is understood and agreed that prior to terminating an employee for unsatisfactory performance who is to be replaced under this paragraph or any other employee, the Company will give a written warning to the employee with a copy to the Business Representative in order that the employee be given an opportunity to improve his work performance. Such a termination may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal.

Par. 6. Whenever a building owner or other customer of the Employer requires persons working on its premises to provide personal identification as a condition of entering or working on the premises, the Employer will provide the employee with such identification for use on such jobs which will not contain the employee's Social Security, driver's license or any other personal identification numbers of the employee.

## ARTICLE XXIII

### Scope and Terms of Agreement

Par. 1. This Agreement shall be binding upon all Employers and the local unions which are

94

named in the attached lists. This Agreement shall be incorporated in and become a part of any Agreement entered into between the Employers and the local unions of the International Union and no local Agreements shall be made changing this Agreement except as herein provided for in Article XXVI. No local union shall, through its by-laws, constitution, or otherwise, change any of the Articles or intent of this Agreement. Nor shall the Employers make any rules or issue any instructions that are contrary to this Agreement.

This Agreement defines the entire relationship between the parties for the term of this Agreement and, except as herein specifically provided for, neither party shall during the term of this Agreement have any obligation to bargain with respect to any matter not covered by this Agreement nor concerning any change or addition hereto.

## ARTICLE XXIV

### Re-Opening Clause

Par. 1. NEBA and the Union agree that if the Labor Management Relations Act of 1947 is repealed, modified or amended in any respect, the Union and NEBA agree that upon service of a thirty (30) days notice by either party, this

95

contract may be reopened for negotiation dealing with Union security or secondary strikes, that will be covered by the repeal, modification or amendment of that Act.

## ARTICLE XXV

### Termination of Agreement

**Par. 1.** This Agreement shall become effective on the Ninth day of July 2007, and shall terminate at midnight on the Eighth day of July 2012.

## ARTICLE XXVI

### Local Option

**Par. 1.** It is agreed between the Company and the Union that in order to more effectively compete or to address other local conditions to benefit the entire elevator industry, it is permissible for any local union to negotiate special conditions with the Company for the following classes of work, except that the wage rate as determined by Article V of this Agreement may not be changed:

1. Modernization Work
2. General Repairs
3. Contract Service
4. Construction Work

Special conditions include but are not restricted to such items as terms associated with Local Transportation and Expense Agreements, work jurisdiction associated with Article IV of this Agreement, staffing, premium rates of pay, shift work or working hours on Modernization, Construction, Repair and Contract Service. In the case of Contract Service, special conditions shall also include problems arising because of areas where an employee's physical well-being may be in jeopardy.

**Par. 2.** The above mentioned special conditions shall be negotiated by a Committee of two (2) Representatives from the local Union, one (1) International Representative and three (3) Representatives from the Company and their decisions shall be binding on both parties.

**Par. 3.** Agreement on special conditions shall continue as long as satisfactory to both parties, but no change shall be made more often than six (6) months except that changes in construction working hours may be changed more often if mutually agreed. Sixty (60) days notice in writing shall be given by the party desiring such changes and such written notice shall constitute cause for a meeting of both parties.

**Par. 4.** Both parties commit to making an earnest effort to reach an agreement, however, when the Local Union Representative and the Com-

pany's designated representative are unable to resolve a dispute over changes in the Local Option Agreement as provided in this Article, either party may request the General President of the IUEC and the NEBA Executive Director to review, make recommendations or issue guidelines to resolve the dispute.

## ARTICLE XXVII

## Reporting Time, Subpoenaed Witnesses, Uniforms

**Par. 1.** Whenever a Mechanic, Helper or Apprentice covered by this Agreement reports to work on a construction, service or maintenance job on request of the Company and there is no work available, except for reasons beyond the control of the Company, the employee shall receive two hours pay at straight time rates.

**Par. 2.** Any employee who is covered by this Agreement who is subpoenaed to court by the Company or by the Company's Counsel shall be paid for all time at the straight time hourly wage rate, fringe benefits, and all reasonable expenses.

**Par. 3.** When required by the Company, Elevator Constructor Mechanics, Helpers and Apprentices shall wear uniforms bearing the Com-

pany's name and/or trademark. Such uniforms shall be furnished by the Company at no cost to the employee.

**Par. 4.** Whenever the Company asks an employee to work with cleaning solvents or other materials and substances that pose a risk to life or health, the Company will first advise the employee of the risks and train the employee in proper use or handling of the materials and substances. The contents of all such materials and substances and their possible risks and adverse effects shall be clearly marked on their containers. Suitable protective clothing and equipment must be provided to employees handling such materials and substances.

IN WITNESS WHEREOF, the parties hereunder have set forth their hand and seal on the date stated above.

For:
National Elevator Bargaining Association

By:
E. James Walker
Henry P. Bechard
Michael Shields
Joseph Zaffuto

**EMPLOYER MEMBERS OF NATIONAL
ELEVATOR BARGAINING ASSOCIATION**

KONE Inc.
One Kone Court
Moline, IL 61265

Otis Elevator Company
One Farm Springs Road
Farmington, CT 06032

Schindler Elevator Corporation
20 Whippany Road
Morristown, NJ 07960-4639

Fujitech

Mitsbishi

North American Elevator Services

100

**INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS**

By:
Dana A. Brigham,
    General President
Timothy R. Smith,
    Assistant General President
Kevin P. Stringer,
    General Secretary-Treasurer
Mike Avery,
    Labor Committee
James K. Bender II,
    Labor Committee
Bernie F. Carey,
    Labor Committee
Dale E. Coalmer,
    Labor Committee
Michael J. Langer,
    Labor Committee
Patrick J. McGarvey,
    Labor Committee
Larry J. McGann,
    Regional Director
William R. Johnston, Jr.,
    Secretary-Treasurer, IUEC Local #5
R. Allen Spears
    National Coordinator, EIWPF

101

## LOCAL UNIONS
### OF
## INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS

Local No. 1, New York, NY
Local No. 2, Chicago, IL
Local No. 3, St. Louis, MO
Local No. 4, Boston, MA
Local No. 5, Philadelphia, PA
Local No. 6, Pittsburgh, PA
Local No. 7, Baltimore, MD
Local No. 8, San Francisco, CA
Local No. 9, Minneapolis, MN
Local No. 10, Washington, DC
Local No. 11, Cincinnati, OH
Local No. 12, Kansas City, MO
Local No. 14, Buffalo, NY
Local No. 15, Milwaukee, WI
Local No. 16, New Orleans, LA
Local No. 17, Cleveland, OH
Local No. 18, Los Angeles, CA
Local No. 19, Seattle, WA
Local No. 20, Louisville, KY
Local No. 21, Dallas/Fort Worth, TX
Local No. 23, Portland, OR
Local No. 24, Birmingham, AL
Local No. 25, Denver, CO
Local No. 27, Rochester, NY
Local No. 28, Omaha & Lincoln, NE and Council Bluffs, IA
Local No. 30, Memphis, TN

102

Local No. 31, Houston, TX
Local No. 32, Atlanta, GA
Local No. 33, Des Moines, IA
Local No. 34, Indianapolis, IN
Local No. 35, Albany, NY
Local No. 36, Detroit, MI
Local No. 37, Columbus, OH
Local No. 38, Salt Lake City, UT
Local No. 39, Providence, RI
Local No. 41, Springfield, MA
Local No. 44, Toledo, OH
Local No. 45, Akron, OH
Local No. 48, Charleston, WV
Local No. 49, Jacksonville, FL
Local No. 51, Richmond, VA
Local No. 52, Norfolk, VA
Local No. 55, Peoria, IL
Local No. 59, Harrisburg, PA
Local No. 62, Syracuse, NY
Local No. 63, Oklahoma City, OK
Local No. 71, Miami, FL
Local No. 74, Tampa, FL
Local No. 79, Little Rock, AR
Local No. 80, Greensboro, NC
Local No. 81, San Antonio, TX
Local No. 83, Tulsa, OK
Local No. 84, Reading-Scranton, PA
Local No. 85, Lansing, MI
Local No. 91, New Haven, CT
Local No. 93, Nashville, TN
Local No. 124, Mobile, AL
Local No. 126, Honolulu, HI

103

Local No. 131, Albuquerque, NM
Local No. 132, Madison, WI
Local No. 133, Austin, TX
Local No. 135, Charlotte, NC
Local No. 138, Poughkeepsie, NY
Local No. 139, Orlando, FL
Local No. 140, Phoenix-Tucson, AZ

104

# APPENDIX A

## Decisions of the
## Joint Industry Committee

The following decisions of the Joint Industry Committee were included as Appendix A to the Standard Agreement between NEII and the IUEC which expired on July 8, 2002. NEBA and the Union recognize these decisions as binding during the term of the present Agreement, except to the extent any of these decisions are in conflict with changes made to Article IV or Article IV (A) during negotiations for the present Agreement.

### 1. Wiring of Car Stations

After due consideration of all the information that the Executive Board could gather, back as far as 1948, it was the decision of the Board that the Manufacturers be permitted to do the internal wiring in the car stations to a terminal block within the car station.

### 2. Pre-Drilled Overhead Beams

Decision arrived at was that Otis would refrain from drilling holes on the bottom flange of the eye beam used to support the deflector sheave as soon as it was possible to stop the production line.

### 3. Pre-Wiring of Controllers

On the protest registered over the pre-wiring of controllers, the employers agreed that the pre-wiring of

105

cross connections on controllers would be discontinued and in the future, auxiliary panels would go out without any leads for any wiring on them.

The employers further agreed that there would be no objection to a local removing the wiring, and replacing it, until the situation is corrected.

### 4. Multi-Wire Cable

The ruling of the Board was that the use of multi wire cable has become prevalent throughout the Industry and they can find no objection to its use.

### 5. Key Hole Slots

A review of past decisions and precedent established the fact that it had been previously agreed that key hole slots provided in car and/or landing doors are not a violation of Article IV of the Standard Agreement.

Also, it is found that it had previously been agreed that holes provided in the factory for mounting of interlocks, safety edges, detectors and photocells, are not a violation of Article IV of the Standard Agreement.

When Door Closer arms, lazy arms, or relating arms are fastened to the doors by means of drilled and/or tapped holes on the door such drilling and tapping shall be done in the field by Elevator Constructors. In cases where doors are delivered to the job site, pre-drilled or tapped for such devices as referred to in this paragraph, doors will not be installed until a satis-

factory settlement between the employer and the Union is made.

### 6. Escalators

It is agreed that the escalator truss or parts of truss maybe used as a shipping container for escalator components, such as tracks, sprockets, etc. Such components shall be secured within the truss with only sufficient fastenings to provide safe transit and shall not be permanently aligned.

It shall not be a requirement that tracks be removed from the truss prior to final alignment.

Connections between the straight inclined track system and the upper and lower end curved track systems shall be made in the field by Elevator Constructors.

Upper and lower sprockets or carriages are to be installed in the field by Elevator Constructors. See Article IV, Par. 2, Item C for additional information.

### 7. Extended Wiring On Controllers

Controllers are not to be shipped from the factory with extended wiring attached thereto.

In the case of escalator controllers, because of limited space available, extended wiring in the form of cables or separate wires may be connected at one end to the controller in the factory provided, however, that the other end of such extended wiring is not prepared for connections.

8. **Plug-In Connections Door Protection**

Prepared plug-in connections for door protection devices such as furnished on the photobell protection device is not a violation of Article IV of the Standard Agreement.

9. **DMR Plug-In Connection**

The plug connection presently being used on the DMR Regulating Unit will be discontinued. Factory installed wires leading out of the regulator shall have the loose ends unprepared for field connection by the Elevator Constructor.

It is agreed that the employer will use up present stock of regulators equipped with plugs. However, any regulators installed on new jobs after July 1, 1964, will be prepared as described in the above paragraph.

10. **Car Door Operators**

Haughton Type 'T' and 'TH' and Westinghouse Type 'E' and other similar car door operators shall have the external wiring to the motor and the door or gate contact installed in the field by Elevator Constructors.

11. **Wood Flooring**

When wood flooring on elevator platforms, including stage lifts, organ consoles and orchestra elevators, is to be installed in the field the work shall be done by Elevator Constructors.

108

12. **Door Operators**

(1) The pattern for the Industry, for shipping door operators would be based on the practice in existence at the time of the Joint Industry Committee's decision of December 12, 1963.

(2) As a guide for present and future Joint Industry Committees, it was determined that the following Exhibits would be used to settle any future dispute relative to the shipping of door operators and would be construed as examples of the practice in existence in December 9-12, 1963.

Exhibit 'A' (Haughton 'T' Operator as per photo dated 12/13/67)

Operators may be shipped as per this Exhibit except all external wiring, all greenfield, all greenfield connectors and the gate switch shall be removed.

Exhibit 'B' (Haughton 'TH' Two-speed Operator as per photo dated 12/13/67)

Operators may be shipped as per this Exhibit except all external wiring, all greenfield, all greenfield connectors and the gate switch shall be removed.

Exhibit 'C' (Haughton 'TH' Center-opening Operator as per photo dated 12/13/67)

Operators may be shipped as per this Exhibit except all external wiring, all greenfield, all greenfield connectors and the gate switch shall be removed.

109

Exhibit 'D' (Westinghouse 'E' Line Operator as per photo 5005B1A, dated 12/13/67)

Operators may be shipped as per this Exhibit except all external wiring, all greenfield, all greenfield connectors and the magnetic locks shall be removed.

Exhibit 'E' (Dover Operator per photo dated 12/13/67)

Operators may be shipped as per this Exhibit except all external wiring, all greenfield, all greenfield connectors, the gate switch and the cams to actuate the safety edges shall be removed.

13. **Pre-Assembling of Machine to Machine Beams (Armor Elevator Co.)**

It was agreed by the Joint Industry Committee that the Armor Elevator Company is in violation of Article IV, Paragraph 2, sub-item "g" of the Standard Agreement by the method of pre-assembling the machine to the machine beams and the pre-drilling of the governor mounting plate.

14. **Holes Drilled in the Factory for the Mounting of Sight Guards**

shall not be considered a violation of Article IV of the Standard Agreement. The Installation (and tapping if required), shall be done in the field by Elevator Constructors.

15. **Type M Hoistway Door Track Assembly (Haughton Elevator Company)**

It was mutually agreed that the spirator would be removed and that the pre-drilling and tapping was covered by Decision #1 of the Joint Industry Committee dated December 12, 1963.

16. **Pre-Fastening Booster or Blocking Beams to Machine Beams (General Elevator Company of Baltimore)**

The Joint Industry Committee finds that General Elevator of Baltimore method of pre-fastening booster or blocking beams, as established and shown on Exhibit 'A' entitled "Standard Machine Beam Detail with Booster Beam" dated May 7, 1968 is not a violation of Article IV.

17. **Dover Leveling Switches**

Dover Leveling Switches, as they are now constructed, are not a violation of the Standard Agreement.

18. **Westinghouse and Otis Basement Machines**

Westinghouse Basement Type #28 Geared Machine with deflector sheave attached as per DS Sheet 274D and Otis Basement Type 16BT machine with attached deflector sheave as per sheet 6588G are not in violation of Article IV of the Standard Agreement.

the members of the International Union have a perfect right to refuse to use explosive powered tools.

**21.   Cargo Masters 500 lbs. up to 1000 lbs.**

All door assembly units must be removed before installation of car.

Pre-wiring of Cargo Master to be limited to door and ejector operation.

Ejector unit must be shipped separately.

The above conditions apply specifically to the Cargo Master with a capacity of 500 lbs. to 1000 lbs. as manufactured by Guilbert, Inc., and are not to be applied to the D/W provision of Article IV, Paragraph 3, Item 3, of the Standard Agreement.

**22.   Procedure For One Man Pressure Relief Valve Test**

At a meeting of the National Arbitration Committee held on February 8, 1984, at the Sheraton Bal Harbour, Bal Harbour, Florida, it was jointly agreed that pressure relief valve test work may be performed by one mechanic so long as the following procedure is followed:

Item 1. The elevator must be equipped with a quick release coupling to which a pressure gauge could be connected.

Item 2. The Elevator Constructor mechanic is to be supplied with a temporary run button (the cable is

113

**19.   Top Emergency Exit Switches (Otis)**

It was agreed that the switch could be removed in the field and remounted.

**20.   Otis Integral Hanger**

That the primary function and responsibility of both the Union and the Industry is to assure a safe, reliable and workmanlike installation as regard door equipment. The employers agree that they cannot object to the dismantling of components if such becomes necessary to accomplish this.

(It continues:) There has been some question on interpretation of this clause, therefore, it has been agreed that the application of this decision requires that the mechanic-in-charge use his discretion with regard to removal of the hanger bar to accomplish the stated objective. Management supervisors should not be critical or attempt to penalize the mechanic for using such discretion but if he questions the decision, it should be adjusted between the Construction Manager and the Local Business Representative.

At the 1954 meeting of the International Executive Board and the Manufacturers' Labor Committee, it was mutually agreed that:

The Executive Board believes that when Article IV, Paragraph 8, that states "NO restrictions shall be imposed as to methods, tools, or equipment used" was written in the Standard Agreement, neither party, at the time, had in mind lethal tools, therefore; we believe

112

to be of a length which would permit the Elevator Constructor to position himself outside of the machine room or the hoistway while performing the test).

Item 3. With the elevator at the top floor, doors closed, shut off the main line disconnect.

Item 4. Disconnect one wire, which places the elevator on inspection, add one jumper on the directional limit, one jumper on the final limit, and connect the temporary run button to the appropriate terminals.

Item 5. Connect the pressure gauge to the quick release coupling.

Item 6. Put in the main line disconnect and position yourself outside of the machine room and/or hoistway and using the temporary run button, run the elevator up against the stop ring until you observe (hear) the bypass valve open.

Item 7. After checking the pressure gauge the mechanic is to open the bottom hoistway door and observe the cylinder and pipe for possible damage or leakage.

Item 8. If damage has occurred it will be repaired in the normal manner using a repair crew.

Item 9. The car will then be restored to normal service and observed as it runs the first few trips.

---

Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham:

This is to confirm the understanding and agreement reached at the recent contract negotiations between NEBA and the Union.

It is understood and agreed that where a man has worked for more than one company and has worked at least 1750 hours entitles him to the minimum vacation pay guaranteed by Article XII. The obligation to pay minimum Vacation Pay shall be prorated between all the companies for whom the man worked based upon the hours the man worked for each company. The determination regarding a proration shall be made as of the end of the Vacation year December 31.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

Mr. Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham:

At our recent contract negotiations the parties agreed that effective July 9, 2002 as part of the Company Management Training Program, the Company shall have the right to work up to twelve (12) salaried non-bargaining unit employees per year as Temporary Helpers for a total of three to eighteen months duration each with no more than one working per local per year; for which it shall pay $1800.00 per person to the local union and $180.00 per person to the International Union. The International shall be notified as to the names of the trainees and the location of their assignments.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

116

---

Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham;

This is to confirm the understanding and agreement reached at the recent contract negotiations between NEBA and the Union, that the International Union of Elevator Constructors will hold the Company harmless in the event of administrative proceedings, arbitrations or litigations involving the applicability and/or enforcement of Article III, Par. 3.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

117

## MEMORANDUM OF AGREEMENT

This will confirm that during the negotiations for the collective bargaining agreement between NEBA and the IUEC to be effective July 9, 2007, the parties agreed to the following:

a) In the event that the Company experiences difficulties with employee response to emergency overtime call-backs in any local office, the Company shall inform the local union and the local union shall cooperate with the Company in establishing a call back system. In the event the Company and the local union cannot agree on the establishment of the call back system the Company and the IUEC shall establish a call back system.

b) Employees on contract service shall be required to carry and use beepers or any other designated communication devices that permit them to be contacted and informed of an emergency call while the employee is on the way to work at the beginning of the workday and while the employee is on the way home from work at the end of the workday.

**AGREED:**
Dana Brigham

**AGREED:**
E. James Walker

118

## TRADE SECRET AGREEMENT

During the term of my employment with the Company and thereafter, I will refrain from disclosing to other persons or entities, except with the Company's consent and for the Company's benefit during the course of such employment, any trade secrets or confidential information of the Company.

I will deliver to or leave with the Company all written and other materials containing The Company's trade secret, confidential, or proprietary information upon termination of my employment.

I acknowledge receipt of an executed copy of this agreement:

By: _____    _____
Employee signature              Print name

Date _____

By: _____
For the Company

119

Mr. Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham:

This will confirm the understanding reached during the recent contract negotiations concerning holidays that fall on Saturday or Sunday and that are celebrated on Friday or Monday, respectively.

The Union agrees that the Employer has an obligation to provide contract service to some of its customers on these Friday or Monday holidays. The Union further agrees that to provide such service it must require contract service employees to work on such days. It is agreed that the Employer shall have the right to schedule employees to work on such days in sufficient numbers needed to perform such work. The Employer agrees that it will make every effort to consider the desires of its employees when employees are scheduled to work such days.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

120

---

Dear Mr. Walker:

All new hires hired after July 8, 1997 will be classified as probationary Apprentices.

This is to confirm our understanding and agreement that any individual with an industry date prior to July 9, 1997, who is still a Helper as of the effective date of our new Agreement, will receive 70% of Mechanic's rate, plus fringe benefit and will remain at that rate until such time as he is qualified and meets the requirements as a fourth year Apprentice.

AGREED:
Dana Brigham

AGREED:
E. James Walker

121

Mr. Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham:

This letter will confirm the transfer policy between the primary and subprimary of the newly merged locals will be as follows:

a) Each merged local becomes a subprimary of the local with which it was merged.

b) The current employees form the permanent bench in each subprimary and primary.

c) The current expense Agreement in each affected local will remain in effect until replaced by a new expense Agreement negotiated between NEBA and the IUEC.

d) An employee sent from the primary to the subprimary, or vice versa, on a temporary basis will be paid expenses as required by his/her permanent base expense Agreement.

e) An employee who is transferred on a permanent basis from the primary to the subprimary, or vice versa, and this assignment does not require a household move shall receive four (4) weeks per diem from his/her old location expense Agreement, thereafter he/she is a permanent employee in the new location.

f) An employee who is transferred on a permanent basis from the primary to the subprimary, or vice

122

versa, and does require a household move shall receive six (6) weeks per diem from his/her old location expense Agreement, thereafter he/she is a permanent employee in the new location.

g) When a person on the bench is hired in the primary and/or subprimary he/she shall be used in the new location by application of paragraphs (d), (e), or (f) above.

h) When an employee is permanently transferred as outlined in paragraphs (e) and (f) above, he/she is guaranteed a total of six (6) months employment in the new location or he/she will be paid per diem for the entire period less the per diem already paid.

This provision (h) does not apply if the employee is discharged for cause.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

123

## LETTER OF UNDERSTANDING

The parties agree that no Local Joint Apprenticeship Committee may implement any rule that conflicts with any language of the Collective Bargaining Agreement.

Dana A. Brigham, General President, IUEC

E. James Walker, Jr., Executive Director, NEBA

124

---

Mr. Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Dear Mr. Brigham:

This will confirm the understanding reached during our recent negotiations concerning local unions that may be merged or dissolved by the International Union of Elevator Constructors (IUEC) after January 1, 1992 and until the termination of the Agreement that will expire on July 8, 2012. NEBA agrees to meet and discuss the effects of such mergers on a local by local basis. Such discussions shall include but are not limited to hiring, expense agreements and open territory between the merged locals.

There shall be no change in any term or condition of employment under the Agreement or any local expense agreement until such time as the parties reach a mutual agreement as to such changes.

It is further agreed that such discussions are to begin as expeditiously as possible following the conclusion of negotiations for a new Agreement.

Very truly yours,
E. James Walker

**AGREED:**
Dana Brigham

125

Mr. Dana Brigham, General President
International Union of Elevator Constructors
7154 Columbia Gateway Drive
Columbia, MD 21046

Re: Letter of Agreement

Dear Dana:

This memorandum details the agreement between the parties concerning potential conflicts between the Company's Alcohol and Drug Policy and those policies provided by customers as a precondition for securing contracts for the Company.

The Company will continue its practice of applying good faith efforts to apply its own policy. Should these efforts be unsuccessful and a customer insists on implementation of their own policy, the Company may institute such policies to the extent necessary to obtain the work.

Good faith efforts by the Company to avoid using the customer's policy will include:

1. Advising the customer that the Company has agreed with the IUEC to a comprehensive company wide policy that addresses the maintenance of a safe and healthy work environment for its employees, and that it does not wish to apply any additional or different regulations.

2. If written confirmation of the company's position fails to change the customer's position, the Company will attempt to obtain customer approval to as much of its policy as possible.

127

---

**MERGED LOCALS**

Due to the wage disparity created by merging the following locals, for the benefit of both the Employer and the IUEC, we will use the language in the letter confirming the transfer policy between the Primary and Sub-Primary of the newly merged locals contained in this Agreement. Using the increase schedule that we have provided, parity will be achieved for all of the merged locals within two (2) years.

| Receiving Local | Merged Local | Percentage of Parity | 1st Wage Increase | 2nd Wage Increase | 3rd Wage Increase | 4th Wage Increase | 5th Wage Increase |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 93 | 64 | 96.60% | 98% | 100% | | | |

126

3. If the customer insists on the complete substitution of its policy for the Company's policy, the Company shall then seek volunteers to man said jobs.

4. The Company will not discipline, discharge or lay off employees solely due to their refusal to volunteer. However, such employees may be laid off if there Is not sufficient other work to which they may be assigned.

5. The IUEC recognizes the importance of securing adequate volunteers and will cooperate in assisting in efforts to secure them.

This agreement shall remain in effect for one year unless extended in writing by the parties.

Very truly yours,
E. James Walker

AGREED:
Dana Brigham

128

## MEMORANDUM OF UNDERSTANDING

Except as otherwise agreed to by the parties, the terms of all agreements between the International Union of Elevator Constructors and/or its local Unions and the National Elevator Bargaining Association and its member Companies, including but not limited to local expense and local option agreements, that are in existence on the effective date of this Agreement shall continue in effect unless inconsistent with or superseded by this Agreement in which case the terms of this Agreement prevail.

AGREED:
Dana Brigham

AGREED:
E. James Walker

129

## SUBSTANCE ABUSE

**Par. 1.** In order to eliminate substance abuse in the workplace; to assist employees with substance abuse related illnesses, to have a safe workplace and efficient work-force. Such Substance Abuse Program shall be subject to the conditions set forth in this Article.

**Par. 2.** There shall be no random testing for drugs or alcohol for any reason other than stated in Paragraph 6. An employee who refuses to submit to random testing of any kind, for reasons other than stated in Paragraph 6, shall not be disciplined, nor shall that employee be refused access to the jobsite.

**Par. 3.** Testing may be performed on new-hire applicants for employment as a condition of employment prior to placing them on the payroll. The employer shall have the right to require a drug test for any referral for employment if such referral has not worked for that employer within the past 12 months.

Testing of referrals will be considered a part of the employer's pre-employment process. The referral will be employed while the employer is awaiting the return of the test results. If the test result is positive, subject to paragraph 5, the employer has no responsibility to that referral and may terminate the referral without consequence. However, said individual

130

shall become eligible for employment in the industry at such time that the individual complies with a recognized rehabilitation or counseling program under this Substance Abuse Policy.

**Par. 4.** An employee may be tested when probable cause exists to believe that the employee is impaired on the job. Probable cause will be deemed to exist under the following circumstances:

(a) The employee's conduct or actions indicating alleged impairment shall be observed by one supervisor on the jobsite and confirmed by a second supervisor whenever possible. The supervisor(s) shall record their observations in writing stating the date, time, length of observation, jobsite and actions of the employee which they believe constitute drug or alcohol impairment. Such statements shall be signed; and

(b) A determination is made that the employee's conduct is symptomatic of alcohol or drug impairment by an independent physician or health care professional qualified to make such a determination, following a consultation with the employee. The physician or health care professional shall be of the Employer's choosing and the cost of

131

store samples. Chain of custody procedures must be observed at all times. The Company will comply with any state laws concerning drug testing.

The results of the test of an employee who tests positive the first time must be confirmed by SAMHSA standards. For a positive, adulterated or substituted result reported on a single specimen or a primary specimen, the employee may request through the MRO that the same specimen (or split specimen) be tested by a second authorized (SAMHSA certified) laboratory. The employee has 72 hours (from the time the MRO notified the employee that the specimen was reported positive, adulterated or substituted to request a retest of the same specimen (or split specimen). If the independent retest indicates a negative result, the Employer may elect to retest the employee's initial sample. If the results are again negative, the employee will be put back to work immediately (if he is off work) and made whole for any loss of pay occasioned by the first positive test results.

**Par. 6.** An employee whose final test results are positive (and who has not tested positive previously) will be referred to the Company's Medical Review Officer, (see attachment) Employee Assistance Program or some other recognized and approved rehabilitation or coun-

133

such consultation and determination shall be borne by the Employer if it is not covered by applicable insurance; or

(c) Any employee involved in an accident which results in professional medical treatment or damage to company property will be required to submit to a test for the presence of alcohol or drugs. This requirement will be waived when the injury or accident was solely the result of a third party's action, or where it can be determined that drugs or alcohol were not a contributing factor.

**Par. 5.** An employee who is properly requested to undergo testing in accordance with the minimum procedures set forth in paragraph 4 above shall be tested within 24 hours. If the employee refuses, the employee is subject to disciplinary action up to and including termination and the employee shall be deemed unqualified and barred from work within the industry until such time the employee successfully complies with a recognized rehabilitation or counseling program under paragraph 6 of this section.

The Company must use a recognized and reputable concern for testing, with sufficient facilities and quality control features to ensure accuracy in test diagnosis and the capability to

132

seling program. The cost of such programs may be offset by appropriate insurance coverage. If the employee enters such a program, his status as an employee will not be affected, except as provided for in paragraph 3 above, and he will be allowed access to the job under the conditions established by the program. An employee who refuses a proper request to enter, participate in and successfully comply with such a program shall be deemed unqualified and barred from returning to work within the industry. Employees may be disciplined, up to and including discharge, for subsequent positive test results. Employees who test positive two (2) times, and have been discharged by the Employer, shall be deemed unqualified and shall not return to work within the industry until he/she has successfully complied with a substance abuse program. Said individual, upon returning to work, may be randomly tested for substance abuse for a period of one year at the Employer's expense.

**Par. 7.** Testing may be for drug or alcohol impairment only and not for any other medical conditions. Neither the Company nor any medical or testing personnel, shall disclose any information regarding the fact of testing or the results of testing to any other employer or customer. All test results and related information will be given the same confidentiality as any other medical information in the Company.

134

**Par. 8.** Any employee(s) who possesses, sells, transports or distributes illegal drugs or unauthorized alcohol at a work site, on the company premises, or on company time is subject to immediate discharge.

This statement of principles shall apply to all employees represented by the International Union of Elevator Constructors. Substance abuse testing and treatment measures are appropriate for all employer non-bargaining unit employees as well, including company executives and officers.

135

e)  Unless a positive test result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

f)  The employer will bear the costs of all testing except for retests requested by employees after an initial positive test result.

g)  Anytime an employee submits to a drug test under the Substance Abuse Program of this Agreement at the request of an employer, a copy of a positive test result shall be confidentially delivered to the employee no later than the end of the next business day after receipt of the test results by the employer.

Refusal to test or provide an adequate sample when required by this policy shall constitute insubordination and is a violation of this Agreement.

Any specimen altered by the employee will be considered a positive test result and therefore a violation of this policy. Any specimen altered by the employer will be considered a negative test result.

## MEDICAL REVIEW OFFICER

The Company will appoint a Medical Review Officer (MRO) to administer this Policy. The responsibilities of the MRO shall be to:

137

## RIGHTS OF EMPLOYEES

a)  Before requesting an employee to undergo drug or alcohol testing, the employer shall provide the employee with a form on which to acknowledge that the employee has seen the drug and alcohol testing policy.

b)  If an employee tests positive for drug or alcohol use, the employee must be given written notice of the right to explain the positive test and indicate any over-the-counter or prescription medication that the employee is currently taking or has recently taken and any other information relevant to the reliability of, or explanation for, a positive test.

c)  Within three (3) working days after notice of a positive initial test result the employee may submit information to the employer, in addition to any information already submitted under paragraph (b), to explain that result.

d)  An employee who tests positive will have 72 hours following the date which the employee is notified of the test result to advise the company, in writing, of the employee's desire to request a retest of the original sample at the employee's own expense.

136

a) Select and utilize services of a testing laboratory that meets one of the criteria for drug testing established by [Bargainers in local areas will have to decide whether to use U.S. Department of Health and Human Services standards or other state or local law standards for all elements of the program including approved MROs for testing of specimens collected under this Policy.]

b) Provide specimen test kits and collection locations that follow chain of custody collection techniques mandated by [adopted standard].

c) Maintain appropriate systems, records, and administrative procedures to provide participating employers with accurate and timely information as to the drug and alcohol free status of employees.

d) Ensure that the testing facility conducts both an initial drug screen and a confirmation test on specimens before reporting positive results.

e) Notify the tested individual of a positive result and provide the individual with an opportunity to explain the reasons why their test might be positive.

138

f) Review and verify a confirmed positive test result and process the donor's request for a confirmatory retest of the original sample.

g) Review a participating employee's medical record if so requested by the employee.

h) Notify the employer's contact person of all test results, both positive and negative, if required.

i) Refer individuals testing positive to the appropriate medical evaluation and participate in return to duty decisions as set forth in this Policy.

j) Ensure the drug and alcohol policy and program complies with [Federal, State, and local law].

139

## LETTER OF UNDERSTANDING

In the event any State or the Federal government re-
quires an exam for the fourth-year apprentices, the
parties agree that such fourth-year exam shall not be
considered a requirement under Article X, Para. 6.

Dana A. Brigham, General President

James Walker, Executive Director

140

# EXHIBIT G

Aug-24-07  12:12    From-SAN FRANCISCO ELEVATOR                    +4159702513           T-786   P.04/13   F-065

INTERNET
FORM NLRB-501                    UNITED STATES OF AMERICA                    FORM EXEMPT UNDER 44 U S C 3512
(11-94)                    NATIONAL LABOR RELATIONS BOARD
                           CHARGE AGAINST EMPLOYER

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 20-CA-33552 | Date Filed 8/20/2007 |

INSTRUCTIONS:
File an original and 4 copies of this charge with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1 EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|

| a Name of Employer | | b Number of Workers Employed |
|---|---|---|
| Otis Elevator Company | | 50+ |

| c. Address (street, city, State, ZIP, Code) | d. Employer Representative | a. Telephone No. (415) 546-0880 |
|---|---|---|
| 444 Spear St. San Francisco, CA 94105 | Rob McNeill | Fax No. (415) 546-0907 |

| f Type of Establishment (factory, mine, wholesaler, etc.) | g. Identify Principal Product or Service |
|---|---|
| Manufacturer/Installer of Elevator and Escalator Equipment | Elevators and Escalators |

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a), subsections (1) and (list subsections) (5) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2 Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices.)

Otis Elevator Company violated its duty to bargain collectively, when it unilaterally made changes to the terms and conditions of employment. Specifically, the company violated the act when it unilaterally began using vacation pay, provided for under Article XII of the collective bargaining agreement, to offset the cost of any sick leave hours paid pursuant to the San Francisco Paid Sick Leave Ordinance

SAN FRANCISCO CA    2007 AUG 20 A 10 19    RECEIVED NLRB, REGION 20

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

| 3 Full name of party filing charge (if labor organization, give full name, including local name and number) | | |
|---|---|---|
| International Union of Elevator Constructors Local #8 | | |

| 4a. Address (street and number, city, State, and ZIP Code) | 4b Telephone No. (415) 285-2900 |
|---|---|
| 690 Potrero Ave. San Francisco, CA 94110-2117 | Fax No. (415) 285-2020 |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union of Elevator Constructors

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By | [signature] | Business Representative/Recording Secretary (Title, if any) |
|---|---|---|
| | (Signature of representative or person making charge) | |
| Address | 690 Potrero Ave. San Francisco, CA 94110-2117 | Fax No (415) 285-2020 (415) 285-2900 (Telephone No.) | August 16, 2007 Date |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

Aug-24-07  12:12    From-SAN FRANCISCO ELEVATOR              +4158702513           T-786   P.03/13   F-065

INTERNET
FORM NLRB-501
(11-94)

**UNITED STATES OF AMERICA**
**NATIONAL LABOR RELATIONS BOARD**
**CHARGE AGAINST EMPLOYER**

FORM EXEMPT UNDER 44 U.S.C. 3512

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 20-CA-33551 | Date Filed 8/20/2007 |

INSTRUCTIONS:
File an original and 4 copies of this charge with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a Name of Employer<br>North American Elevator Services | | b Number of Workers Employed<br>40+ |
| c Address (street, city, State, ZIP, Code)<br>250 E. Grand Ave. Suite 87<br>South San Francisco, CA 94080 | d Employer Representative<br>Dennis Fuller | e. Telephone No.<br>(650) 616-8161<br>Fax No<br>(650) 616-3979 |
| f Type of Establishment (factory, mine, wholesaler, etc.)<br>Manufacturer/Installer of Elevator and Escalator Equipment | g Identify Principal Product or Service<br>Elevators and Escalators | |

h The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a), subsections (1) and (list subsections) _(5)_ _____ of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices.)

North American Elevator Services violated its duty to bargain collectively, when it unilaterally made changes to the terms and conditions of employment. Specifically, the company violated the act when it unilaterally began using vacation pay, provided for under Article XII of the collective bargaining agreement, to offset the cost of any sick leave hours paid pursuant to the San Francisco Paid Sick Leave Ordinance.

SAN FRANCISCO, CA       2007 AUG 20  A 10: 19       RECEIVED NLRB REGION 20

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
International Union of Elevator Constructors Local #8

| 4a Address (street and number, city, State, and ZIP Code)<br>690 Potrero Ave. San Francisco, CA 94110-2117 | 4b. Telephone No.<br>(415) 285-2900 |
|---|---|
| | Fax No.<br>(415) 285-2020 |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union of Elevator Constructors

| 6 DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | |
|---|---|
| By _[signature]_<br>(Signature of representative or person making charge) | Business Representative/Recording Secretary<br>(Title, if any) |
| 690 Potrero Ave. San Francisco, CA 94110-2117<br>Address | Fax No. (415) 285-2020<br>(415) 285-2900<br>(Telephone No.)    August 16, 2007<br>Date |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)



JOHAN W.E. MAITLAND
jmaitland@drm.com
Direct: (802) 846-8325
Fax: (802) 862-7512

October 15, 2007

VIA FACSIMILE

Ms. Paula Katz
Field Attorney
National Labor Relations Board Region 20
901 Market St
San Francisco, CA 94103

Re:    Otis Elevator Company and International Union of Elevator Contractors, Local #8
       Case No. 20 CA 33552

Dear Ms. Katz,

I am following up on our discussion about deferral.

Otis Elevator Company ("Otis") continues to believe that deferral is appropriate in this case.
Otis is concerned, however, that our agreement to defer this case does not result in any
unintended consequences. Therefore, Otis agrees that it will continue to process the grievance
according to the terms of the collective-bargaining agreement, including submission of this issue
to arbitration. At this time, Otis is not aware of any procedural obstacles that would prevent
arbitration of this issue. If there are any future procedural issues that might result in the
possibility that the substantive issue would not be addressed at arbitration, Otis agrees to contact
you immediately.

I hope this addresses any concerns you may have regarding deferral. Please feel free to call me
if you have any questions or would like to discuss this further.

Sincerely yours,

Johan W.E. Maitland



# NATIONAL LABOR RELATIONS BOARD

## Region 20

901 Market Street, Suite 400

San Francisco, California 94103-1735

**RECEIVED**

Downs Rachlin Martin PLLC
Telephone: 415/356-5130
FAX: 415/356-5156
Website: www.nlrb.gov
Board Agent's E-Mail: Paula.Katz@nlrb.gov

OCT 2 4 2007

Johan W.E. Maitland, Esq.
Downs Rachlin Martin PLLC
P.O. Box 190
Burlington, VT 05402-0190

Mr. Randolph Giglione
Business Rep./Recording Secretary
International Union Elevator Constructors Local 8
690 Potrero Avenue
San Francisco, CA 94110-2117

Mr. Rob McNeill
Otis Elevator Company
444 Spear Street
San Francisco, CA 94105

Re:    Otis Elevator Company
       Case    20-CA-33552

Gentlepersons:

The Region has carefully considered the charge filed against Otis Elevator Company alleging it violated the National Labor Relations Act. As explained below, I have decided that further proceedings on that charge should be handled in accordance with the Board's deferral policy.

*Deferral Policy:* Under the Board's deferral policy as set forth in *Collyer Insulated Wire*, 192 NLRB 837 (1971) and *United Technologies Corp.*, 268 NLRB 557 (1984), this Agency will withhold making a final determination on certain arguably meritorious unfair labor practice charges when a grievance involving the same issue can be processed under the grievance/arbitration provisions of the applicable contract. This policy is based, in part, on the preference that the parties should resolve certain issues through their contractual grievance procedure in order to achieve a prompt, fair and effective settlement of their dispute. Therefore, if an employer agrees to waive contractual time limits and process the related grievance through arbitration if necessary, the Regional office will defer the charge.

*Decision to Defer:* Based on our investigation, I am deferring further proceedings on the charge to the grievance/arbitration process for the following reasons:

1. The charge raises the following issue: Whether the Employer unilaterally changed the employees' terms and conditions of employment by using vacation pay provided for under Article XII of the collective-bargaining agreement to offset the cost of any sick leave hours paid pursuant to the San Francisco Paid Sick Leave Ordinance.

2. The Employer and the Union have a collective-bargaining agreement currently in effect that provides for final and binding arbitration.

3. The Charging Party has filed a grievance over the matter underlying this charge. The Employer is willing to process the grievance and will arbitrate the grievance if necessary. The Employer also has agreed to waive any contractual time limitations on the processing

- 2 -

20- CA-33552

> of the grievance to arbitration in order to ensure that the arbitrator addresses the merits of the dispute.
>
> 4. As the above allegation in the charge appears to be covered by certain provisions of the collective-bargaining agreement, there is a substantial likelihood that the allegation may be resolved through the grievance/arbitration procedure

*Further Processing of the Charge:* As explained below, while this portion of the charge is deferred, the Region will monitor the processing of the grievance and under certain circumstances will resume processing the charge.

*Charging Party's Obligation:* Under the Board's Collyer deferral policy, the Charging Party has an affirmative obligation to file a grievance, if a grievance has not already been filed. If the Charging Party fails either to promptly file or submit the grievance to the grievance/arbitration process, or declines to have the grievance arbitrated if it is not resolved, I will dismiss the charge.

*Union/Employer Conduct:* If the Charging Party is an individual and the Union or Employer fails to promptly process the grievance under the grievance/arbitration process; declines to arbitrate the grievance if it is not resolved; or if a conflict develops between the interests of the Union and Charging Party, I may revoke deferral and resume processing of the charge.

*Charged Party's Conduct:* If the Charged Party prevents or impedes resolution of the grievance, raises a defense that the grievance is untimely filed or refuses to arbitrate the grievance, I will revoke deferral and resume processing of the charge.

*Inquiries and Requests for Further Processing:* Approximately every 90 days, the Regional Office will ask the parties about the status of this dispute to determine if the dispute has been resolved and whether continued deferral is appropriate. However, I will accept and consider, at any time, requests and supporting evidence submitted by any party to this matter for dismissal of the charge, for continued deferral of the charge, or for resumed processing of the charge.

*Notice to Arbitrator Form:* If the grievance is submitted to an arbitrator, please sign and submit to the arbitrator the enclosed "Notice to Arbitrator" form to ensure that the Region receives a copy of an arbitration award when the award is sent to the parties.

*Review of Arbitrator's Award*: If the grievance is arbitrated, the Charging Party may request this office to review the arbitrator's award. The request must be in writing and addressed to me. The request should analyze whether the arbitration process was fair and regular, whether the unfair labor practice allegations in the charge were considered by the arbitrator, and whether the award is consistent with the Act. Further guidance on the nature of this review is provided in *Spielberg Manufacturing Company*, 112 NLRB 1080 (1955), and *Olin Corp.*, 268 NLRB 573 (1984).

*Charging Party's Right to Appeal*: The National Labor Relations Board Rules and Regulations permit Charging Party to obtain a review of this action by filing an appeal with the General Counsel of the National Labor Relations Board. If the Charging Party wishes to file an appeal, please note the following:

*Your Right to Appeal*: The National Labor Relations Board Rules and Regulations permit you to obtain a review of this action by filing an appeal with the GENERAL COUNSEL of the National Labor Relations Board. Use of the Appeal Form (Form NLRB-4767) will satisfy this requirement. However, you are encouraged to submit a complete statement setting forth the facts and reasons why you believe that the deferral of your charge was incorrect.

- 3 -

20- CA-33552

The appeal may be filed by regular mail addressed to the General Counsel, Attention: Office of Appeals, National Labor Relations Board, Room 8820 1099 14ᵗʰ Street, NW, Washington, DC 20570-0001. A copy of the appeal should also be mailed to the Regional Director.

An appeal also may be filed electronically by using the e-filing system on the Agency's Website. In order to file an appeal electronically, please go to the Agency's Website at www.nlrb.gov, under "E-GOV." Select "E-filing" and then click on "File an Appeal or Other Document" under the heading "General Counsel's Office of Appeals." The Website will contain detailed instructions on how to file an appeal electronically.

The appeal MAY NOT be filed by facsimile transmission.

*Appeal Due Date:* The appeal must be received by the General Counsel in Washington D. C. by the close of business at 5:00 p.m. (ET) on                NOV 7 - 2007             . If you mail the appeal, it will be considered timely filed if it is postmarked no later than one day before the due date set forth above. If you file the appeal electronically, it also must be received by the General Counsel by the close of business at 5:00 p.m. (ET) on              NOV 7 - 2007          . A failure to timely file an appeal electronically will not be excused on the basis of a claim that transmission could not be accomplished because the receiving machine was off-line or unavailable, the sending machine malfunctioned, or for any other electronic-related reason.

*Extension of Time to File Appeal:* Upon good cause shown, the General Counsel, may grant you an extension of time to file the appeal. You may file a request for an extension of time to file by mail, facsimile transmission, or through the Internet. The fax number is (202) 273-4283. Special instructions for requesting an extension of time over the Internet are set forth in the attached Access Code Certificate. While an appeal will be accepted as timely filed if it is postmarked no later than one day prior to the appeal due date, this rule does not apply to requests for extension of time. A request for an extension of time to file an appeal **must be received** on or before the original appeal due date. A request that is postmarked prior to the appeal due date but received after the appeal due date will be rejected as untimely. Unless filed through the Internet, a copy of any request for extension of time should be sent to me.

*Confidentiality/Privilege:* Please be advised that we cannot accept any limitations on the use of any appeal statement or evidence in support thereof provided to the Agency. Thus, any claim of confidentiality or privilege cannot be honored, except as provided by the FOIA, 5 U.S.C. 552, and any appeal statement may be subject to discretionary disclosure to a party upon request during the processing of the appeal. In the event the appeal is sustained, any statement or material submitted may be subject to introduction as evidence at any hearing that may be held before an administrative law judge. Further, we are required by the Federal Records Act to keep copies of documents used in our case handling for some period of years after a case closes. Accordingly, we may be required by the FOIA to disclose such records upon request, absent some applicable exemption such as those that protect confidential source, commercial/financial information or personal privacy interests [e.g., FOIA Exemptions 4, 6, 7(C) and 7(D), 5 U.S.C. § 552(b)(4), (6), (7)(C), and 7(D)]. Accordingly, we will not honor any requests to place limitations on our use of appeal statements or supporting evidence beyond those prescribed by the foregoing laws, regulations, and policies.

- 4 -

20- CA-33552

 *Notice to Other Parties of Appeal:* You should notify the other party(ies) to the case that an appeal has been filed. Therefore, at the time the appeal is mailed to the General Counsel, please complete the enclosed Appeal Form (NLRB-4767) and send one copy of the form to all parties whose names and addresses are set forth in this letter.

Very truly yours

Joseph P. Norelli
Regional Director

Enclosures

cc: Office of Appeals

RECEIVED

FEB 1 9 2008

DOWNS RACHLIN MARTIN
BURLINGTON



# NATIONAL LABOR RELATIONS BOARD
## Region 20

901 Market Street, Suite 400
San Francisco, California 94103-1735

Telephone: 415/356-5130
FAX: 415/356-5156
Website: www.nlrb.gov
Board Agent's E-Mail: Paula.Katz@nlrb.gov

FEB 1 3 2008

Mr. Rob McNeill
Otis Elevator Company
444 Spear Street
San Francisco, CA 94105

**Re:**  Otis Elevator Company
    **Case**  20-CA-33552

Dear Mr. McNeill:

This is to advise you that the charge in the above matter has been withdrawn with my

approval.

Very truly yours,

Joseph P. Norelli
Regional Director

JPN:PRK:sl

cc:  Randolph Giglione
    Business Rep./Recording Secretary
    International Union of Elevator Constructors
    Local 8
    690 Potrero Avenue
    San Francisco, CA 94110-2117

Johan W.E. Maitland, Esq.
Downs Rachlin Martin PLLC
P.O. Box 190
Burlington, VT 05402-0190