1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   JAMES S. BROWN (Bar No. 135810)
2  MARC A. KOONIN (Bar No. 166210)
   One Market Plaza
3  Steuart Tower, 8th Floor
   San Francisco, California 94105
4  Telephone: (415) 781-7900
   Facsimile: (415) 781-2635
5  james.brown@sdma.com
   marc.koonin@sdma.com
6
   DOWNS RACHLIN MARTIN PLLC
7  JOHAN W. E. MAITLAND (*Pro Hac Vice* Application pending)
   JONATHAN ROSE (*Pro Hac Vice* Application pending)
8  199 Main Street, P.O. Box 190
   Burlington, Vermont 05402
9  Telephone: (802)863-2375
   Facsimile: (802)658-0905
10 jmaitland@drm.com
   jrose@drm.com
11
   Attorneys for Defendants
12 PACIFIC COAST ELEVATOR CORPORATION,
   erroneously sued as AMTECH/SAN FRANCISCO
13 ELEVATOR CO., KONE, INC., MITSUBISHI ELECTRIC
   & ELECTRONICS USA, INC., erroneously sued as
14 MITSUBISHI ELEVATOR COMPANY,
   OTIS ELEVATOR COMPANY, and
15 SCHINDLER ELEVATOR CORPORATION

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18

19 JEFF BERNARDI, THOMAS BICKHAM,           CASE NO. C08-01922 WHA
   RANDY DAVENPORT, BRUCE
20 DOUGLAS, MICHAEL BOUZIDIN, DAN          **NOTICE OF MOTION AND MOTION TO**
   KAESLER, RICHARD KIM, DAVID             **DISMISS PLAINTIFFS' COMPLAINT**
21 NAVA, MANUEL BUSTOS, on behalf of       **WITH PREJUDICE, OR, IN THE**
   themselves and all persons similarly situated,  **ALTERNATIVE, TO STAY**
22                                          **PROCEEDINGS PENDING**
          Plaintiffs,                       **ARBITRATION; MEMORANDUM OF**
23                                          **POINTS AND AUTHORITIES**
          v.
24                                          JUDGE:   The Honorable William H. Alsup
   AMTECH/SAN FRANCISCO ELEVATOR           DATE:    June 5, 2008
25 CO.; KONE, INC.; MITSUBISHI             TIME:    8:00 a.m.
   ELEVATOR COMPANY; OTIS                  DEPT:    Courtroom 9, 19th Floor
26 ELEVATOR COMPANY; SCHINDLER
   ELEVATOR CORPORATION; and DOES 1
27 through 10 inclusive,

28          Defendants.

                                                      CASE NO. C08-01922 WHA

1

**TABLE OF CONTENTS**

2

**PAGE**

3    NOTICE OF MOTION ................................................................................................................... 1

4    STATEMENT OF RELIEF SOUGHT ........................................................................................... 2

5    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION.................. 2

6    I.    INTRODUCTION................................................................................................................. 2

7    II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT...................................... 3

8    III.  FACTUAL BACKGROUND ............................................................................................... 3

9          A.    Summary of the Action ............................................................................................. 4

10         B.    Relevant Terms of the Collective-Bargaining Agreement........................................ 4

11         C.    Defendants' Efforts to Comply with the San Francisco Sick Leave
                 Ordinance.................................................................................................................. 5

12

13         D.    Previous and Ongoing Parallel Litigation Regarding the Identical
                 Subject of the Complaint .......................................................................................... 7

14   IV.   THIS COURT SHOULD DISMISS THE COMPLAINT, INCLUDING EACH
           CLAIM THEREIN, WITH PREJUDICE ............................................................................. 8

15
           A.    This Court Should Dismiss Plaintiffs' First And Third Causes of
16               Action As Preempted By Section 301 of The LMRA................................................ 9

17               1.    This Court Should Dismiss Plaintiffs' First Cause of Action
                       Because the State Law Wage Claim Exists Solely As a Result
18                     of and is Substantially Dependent on the Interpretation of A
                       Collective-Bargaining Agreement ................................................................. 9

19
                       a.    Plaintiffs' Wage Claim Exists Solely Because The
20                           Collective- Bargaining Agreement Contains A Vacation
                             Pay Provision ..................................................................................... 10

21
                       b.    Plaintiffs' Wage Claim Is Substantially Dependent
22                           Upon Whether the Language of Article XII of the
                             NEBA Agreement Permits Payment of Vacation Pay
23                           Prior to the Contractually-Established Deadline............................ 11

24               2.    Plaintiffs' Third Cause of Action Should Be Dismissed For The
                       Same Reasons as The First Cause of Action................................................ 13

25
                 3.    Plaintiffs Should Not Be Permitted to Amend the Complaint to
26                     Include a LMRA Claim Because Amendment Would Be Futile.............. 14

27         B.    Even if Plaintiffs' Labor Code Claims Were Not Preempted by Federal
                 Labor Law, Which They Are, Plaintiffs Fail to State a Claim Under the
28               California Labor Code ............................................................................................ 15

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

**Table of Contents**
(Continued)

PAGE

1. Defendants are Not Required to Pay Plaintiffs Twice for the Same Work, and Are Therefore Entitled to Pay the Difference Between Vacation Pay Previously Advanced and Vacation Pay Previously Earned. ................................................................. 15

2. Because there is No Claim for Violation of Section 222, There is Also No Claim Pursuant to PAGA or Labor Code section 225.5.......................................................................................... 18

C. This Court Should Dismiss Plaintiffs' Second Claim Because It Fails to State A Valid Claim Under The Fair Labor Standards Act .............................. 18

1. The Fair Labor Standards Act Allows Recovery For Failure To Pay The Minimum Wage or Overtime Pay Only ...................................... 18

2. Plaintiffs Do Not State A Claim for Overtime Pay Because Vacation Pay Is Not Included in the Regular Rate..................................... 19

3. The Fair Labor Standards Act Allows Pre-Deadline Payment of Vacation Pay ...................................................................................... 19

V. SHOULD THIS COURT DECLINE TO DISMISS THE COMPLAINT IN ITS ENTIRETY, THEN IT SHOULD STAY THE PROCEEDINGS PENDING THE OUTCOME OF THE RELATED UNION GRIEVANCES.................. 20

VI. CONCLUSION............................................................................................................. 21

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Abrego Abrego v. The Dow Chem. Co.*,
    443 F.3d 676 (9th Cir. 2006) ................................................................................................9

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985)......................................................................................................10, 11

*Audette v. Int'l Longshoremen's & Warehousemen's Union*,
    195 F.3d 1107 (9th Cir. 1999) ...........................................................................................14

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir.1990) ................................................................................................8

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)........................................................................................................9

*Brennan v. Veterans Cleaning Service, Inc.*
    (5th Cir. 1973) 482 F.2d 1362 ...........................................................................................19

*Burnside v. Kiewit*,
    491 F.3d 1053 (9th Cir. 2007) ...............................................................................10, 11, 12

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) .................................................................................................8

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987)......................................................................................................10, 11

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) .................................................................................................9

*Cornn v. United Parcel Serv., Inc.*,
    No. C03-2001 THE, 2004 WL 2271585 (N.D. Cal. Oct. 5, 2004) .....................................9, 11

*Cramer v. Consolidated Freightways, Inc.*,
    255 F.3d 683 (9th Cir. 2001) (en banc)..............................................................................11, 12

*Disabled Rights Action v. Las Vegas Events*,
    375 F.3d 861 (9th Cir. 2004) ...............................................................................................9

SEDGWICK
DETERT, MORAN & ARNOLD LLP

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

**Table of Authorities**
**(Continued)**

**PAGE**

*Fernandez v. Centerplate/NBSE, Inc.*,
  No. Civ. 04-0809, 2005 WL 3273370 (D.D.C. Aug. 1, 2005), *aff'd in relevant part*,
  441 F.3d 1006 (D.C. Cir. 2006) ................................................................................18

*Firestone v. Southern Calif. Gas Co.*,
  219 F.3d 1063 (9th Cir. 2000) ................................................................................11

*Fuentes v. Ralph's Grocery Co.*,
  No. CV 93-1702, 1993 WL 761992 (C.D. Cal. July 28, 1993) ................................14

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996)................................................................................................13

*Herman v. United Broth. of Carpenters & Joiners*,
  60 F.3d 1375 (9th Cir. 1995) ................................................................................14

*In re Stac Electronics Securities Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ................................................................................9

*John Wiley & Sons v. Livingston*,
  376 U.S. 543 (1964)................................................................................................19

*Levya v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979), *cert. denied*, 444 U.S. 827 (1979)....................19, 20

*Lingle v. Norge Div. of Magic Chef, Inc.*,
  486 U.S. 399 (1988)................................................................................................12

*Livadas v. Bradshaw*,
  512 U.S. 107 (1994)........................................................................................10, 12

*Mendes v. W.M. Lyles Co.*,
  No. CIV F 07-1265, 2008 WL 171003 (E.D. Cal. Jan. 18, 2008) ....................10, 13

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ................................................................................9

*Mitchell v. Mirant California, LLC*,
  No. C 07-05847, 2008 WL 501392 (N.D. Cal. Feb. 21, 2008)................................14

*Nguyen v. Univ. of Calif.*,
  No. CIV S-06-1579, 2007 WL 2993276 (E.D. Cal. Oct. 11, 2007)............................9

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) ................................................................................9

**Table of Authorities**
(Continued)

**PAGE**

*Sidhu v. Flecto, Inc.*,
  279 F.3d 896 (9th Cir. 2002) ................................................................................................14

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..................................................................................................9

*United States v. Eagleboy*,
  200 F.3d 1137 (8th Cir. 1999) ................................................................................................9


**STATE CASES**

*California Ass'n of PSES v. California Dept. of Ed.*,
  141 Cal.App.4th 360 (2006) .................................................................................................13

*City of Cotati v. Cashman*,
  29 Cal.4th 69 (2002) .............................................................................................................13

*Koehl v. Verio, Inc.*,
  142 Cal.App.4th 1313 (2006) ..........................................................................................15, 16

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*,
  42 Cal.4th 217 (2007) ...........................................................................................................16

*Prudential Ins. Co. v. Fromberg*,
  240 Cal.App.2d 185 (1966) ...................................................................................................15

*Schachter v. Citigroup, Inc.*,
  159 Cal.App.4th 10 (2008) ...............................................................................................16, 17

*Steinhebel v. Los Angeles Times Communications*,
  126 Cal.App.4th 696 (2005) .............................................................................................15, 16


**FEDERAL STATUTES**

9 U.S.C. § 3 ....................................................................................................................1, 2, 19

29 U.S.C. § 185(a) ("Section 301") ..........................................................................................9, 10

29 U.S.C. § 206(a)(1) ..................................................................................................................18

29 U.S.C. § 207(e)(2) ..................................................................................................................19

29 U.S.C. § 216(b) ..................................................................................................................17, 18

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-v-                                CASE NO. C08-01922 WHA

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

**Table of Authorities**
**(Continued)**

**PAGE**

**STATE STATUTES**

California Labor Code § 201 ...................................................................................................17

California Labor Code § 221 ............................................................................................15, 16

California Labor Code § 222 ........................................................................................... passim

California Labor Code § 225.5 ........................................................................................ passim

California Labor Code § 225.5(b)............................................................................................17

California Labor Code § 227.3 ................................................................................................10

California Labor Code § 1182.12 ............................................................................................18

California Labor Code § 2698 ..........................................................................................2, 17

California Labor Code § 2699 ................................................................................................17

California Labor Code § 2699.3 ..............................................................................................17

California Labor Code § 2699.3(c)..........................................................................................17

California Labor Code § 2699.5 ..............................................................................................17

California Code of Civil Procedure § 1060 ...................................................................5, 13, 14

California Private Attorney General Act of 2004 ("PAGA") ................................................ passim

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 2, 8, 9

**REGULATIONS**

29 C.F.R. §§ 778.218 (2007) .................................................................................................19

29 C.F.R. §§ 778.219 (2007) .................................................................................................19

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

**Table of Authorities**
**(Continued)**

**PAGE**

**SAN FRANCISCO, CALIFORNIA AUTHORITIES**

San Francisco, Cal. Admin. Code, Chapter 12W ........................................................................1, 6

San Francisco, Cal. Admin. Code § 12W.3(c)....................................................................................6

San Francisco, Cal. Admin. Code § 12W.12 .....................................................................................6

San Francisco, Cal. OLSE Frequently Asked Questions ................................................................7, 8

**OTHER AUTHORITIES**

DOL Wage & Hour Opinion Letter, FLSA2004-17NA, 2004, 2004 WL 3177901 .......................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on Thursday, June 5, 2008, at 8:00 a.m., in Courtroom 9,

4  on the 19th Floor of the United States District Court, Northern District of California, located at

5  450 Golden Gate Avenue, San Francisco, California 94102, before United States District Judge

6  William H. Alsup, Defendants Pacific Coast Elevator Corporation, erroneously sued herein as

7  Amtech/San Francisco Elevator Co., KONE, Inc., Mitsubishi Electric & Electronics USA, Inc.,

8  erroneously sued herein as Mitsubishi Elevator Company, Otis Elevator Company, and Schindler

9  Elevator Corporation ("Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), will

10  and hereby do move for an order dismissing with prejudice the Complaint of Plaintiffs Jeff

11  Bernardi, Thomas Bickham, Randy Davenport, Bruce Douglas, Michael Bouzidin, Dan Kaesler,

12  Richard Kim, David Nava, Manuel Bustos, on behalf of themselves and all persons similarly

13  situated ("Plaintiffs"), including each and every claim stated therein. Please take further notice

14  that, in the alternative, should this Court not dismiss the Complaint in its entirety, Defendants

15  further move this Court to stay further proceedings in this case pending arbitration pursuant to 9

16  United States Code section 3 on the ground that the parties agreed in writing (through a

17  collective-bargaining agreement) that the issues raised in this action would be arbitrated and no

18  other, nonarbitrable claims are raised in this action, and that the exact same claims raised in the

19  Complaint are currently pending arbitration through the grievance machinery of the relevant

20  collective-bargaining agreement.

21      This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9 United

22  States Code section 3, and is based on this Notice, the Memorandum of Points and Authorities,

23  the Request for Judicial Notice submitted and filed herewith, the Declaration of E. James Walker

24  submitted and filed herewith, the Declaration of Johan W. E. Maitland submitted and filed

25  herewith, the Appendix of Unpublished Decisions, Opinion Letter, and San Francisco Legal

26  Authorities submitted and filed herewith, and such other papers and pleadings as may be

27  presented for consideration before or at the hearing on this motion.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28

-1-                    CASE NO. C08-01922 WHA

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1    **STATEMENT OF RELIEF SOUGHT**

2    Defendants seek a Dismissal with prejudice of Plaintiffs' Complaint, and each claim

3    stated therein, because the Complaint fails to state cognizable claims as a matter of law.

4    Alternatively, because Plaintiffs' Union has filed grievances seeking the exact same relief sought

5    in the Complaint, Defendants seek a stay of the action pending outcome of those grievances

6    should this Court not dismiss the Complaint in its entirety.

7    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

8    **I.    INTRODUCTION**

9    This action involves a labor dispute over the timing of paying vacation pay under the

10    terms of a multiemployer collective-bargaining agreement, and arises from the Defendants'

11    compliance with the requirements of the San Francisco Sick Leave Ordinance.  Contrary to the

12    implications (but not statements) in the Complaint, this is not a case where the Defendants have

13    failed to pay Plaintiffs.  A careful examination of the Complaint, along with documents of which

14    this Court can and should take judicial notice, reveals that Plaintiffs dispute only the propriety of

15    the Defendants' decision to pre-pay a portion of their vacation pay before the final payment

16    deadline, paying the difference upon the deadline.  Resolving that question, in turn, requires an

17    interpretation of the collective-bargaining agreement.

18    Because resolution of the Complaint plainly requires interpretation of a collective-

19    bargaining agreement, and because the alleged reconciliation of pre-deadline vacation pay with

20    ultimate vacation payments is not unlawful under either federal or California law, this action

21    belongs in the parties' grievance dispute resolution program — where parallel Grievances are in

22    fact now being heard — and not before this Court.  This result is supported by the law as well as

23    the litigation history of this dispute.  Prior to this lawsuit, the named Plaintiffs' union: (1) filed a

24    total of eight grievances asserting contract violations arising from the exact same vacation pay

25    issues (including five grievances specifically on behalf of the named Plaintiffs in this lawsuit);

26    (2) discussed with Defendants' collective-bargaining representative a potential contractual

27    settlement to this vacation pay dispute; and (3) filed an Unfair Labor Practice charge with the

28    National Labor Relations Board ("Board") on the same vacation pay issue, which the Board

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1  deferred to arbitration since its resolution will require interpretation of the collective-bargaining
2  agreement.

## II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

The main issue to be decided by this Court is whether to dismiss the Complaint, or
portions of the Complaint, for failure to state a claim or, alternatively, stay this litigation pending
the resolution of parallel arbitration provided for by a collective-bargaining agreement. Specific
issues relating to the motion to dismiss are:

1.    Should the court dismiss the Plaintiffs' First Cause of Action, alleging violations
of California Labor Code section 222 (and derivative requests for penalties under the California
Private Attorney General Act of 2004 ("PAGA") (Cal. Lab. Code §§ 2698 through 2699.5) and
California Labor Code section 225.5) — which prohibits employers from withholding wages
agreed upon through collective bargaining — and Third Cause of Action, seeking declaratory
relief as to the proper interpretation of a collective-bargaining agreement, as preempted by
Section 301 of the Labor Management Relations Act ("LMRA")?

2.    In the alternative, should the Court dismiss Plaintiffs' First and Third Causes of
Action because they fail to state a claim under California law?; and

3.    Should this Court dismiss the Second cause of action under the federal Fair Labor
Standards Act because it fails to state a claim as a matter of law?

## III.   FACTUAL BACKGROUND[1]

This is a labor dispute masquerading as a garden variety employment action. In fact, the
Complaint frankly admits that Plaintiffs' Union has already demanded the same result sought by
Plaintiffs in this Action. Complaint at ¶ 22(7:9-14).[2] The Defendants in this action are Pacific
Coast Elevator Corporation, erroneously sued herein as Amtech/San Francisco Elevator Co.

---

[1] The Facts alleged are those appearing in the Complaint or in documents of which the
Defendants ask this Court to take judicial notice. Defendants assume the facts alleged in the
Complaint to be true — except to the extent that they are contradicted by documents incorporated
by reference into the Complaint or documents of which this Court may properly take judicial
notice — for purposes of this Motion to Dismiss only.

[2] A copy of the Complaint is attached as Request for Judicial in Support of Defendants'
Motion to Dismiss Plaintiffs' Complaint with Prejudice, or, in the Alternative, Stay Proceedings
Pending Arbitration, dated April 16, 2008("RJN"), Exh. E.



1  ("Pacific"),[3] KONE, Inc. ("KONE"), Mitsubishi Electric & Electronics USA, Inc., erroneously
2  sued herein as Mitsubishi Elevator Company, Otis Elevator Company ("Otis"), and Schindler
3  Elevator Corporation ("Schindler") (collectively, "Defendants").  Defendants are all companies
4  engaged in the business of constructing, modernizing, repairing and servicing elevators and
5  escalators throughout the United States, including San Francisco.  The named Plaintiffs and the
6  proposed class are all employees of Defendants and members of bargaining units represented by
7  the International Union of Elevator Constructors ("IUEC") and IUEC Local 8 ("Local 8").
8  Complaint, ¶¶ 5 (2:7-19), 12 (4:11-21), 18 (6:4-9).

9  **A.  Summary of the Action**

10  Plaintiffs seek relief using four theories (under three enumerated causes of action): (1)
11  Violation of California Labor Code section 222 ("Section 222"); (2) (as part of their First Cause
12  of Action) plaintiffs also seek derivative penalties under PAGA and California Labor Code
13  section 225.5; (3) a Second Cause of Action alleging late payments of overtime wages in
14  violation of the FLSA; and (4) a Third Cause of Action for declaratory relief pursuant to
15  California Code of Civil Procedure section 1060.

16  Through "artful" pleading, Plaintiffs present only a partial description in the Complaint of
17  the events giving rise to the present lawsuit, omitting undisputed and extremely important facts.
18  Specifically, the Complaint generally alleges that the Defendants failed to pay Plaintiffs in
19  accordance with the Vacation Pay provisions of the collective-bargaining agreement.  Even a
20  cursory review of the history of this dispute (of which this Court can and should take Judicial
21  Notice) reveals, however, that Plaintiffs were, in fact, paid vacation as calculated under the
22  collective-bargaining agreement and that the only issue in dispute is whether the collective-
23  bargaining agreement prohibits Defendants from paying portions of vacation pay prior to a
24  contractually-established deadline.

25  **B.  Relevant Terms of the Collective-Bargaining Agreement**

26  The Defendants are members for collective bargaining purposes of the National Elevator

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

27
28  [3] Pacific, which does business as Amtech/San Francisco Elevator Co., is a wholly owned subsidiary of North American Elevator Services, Inc. ("NAES").

1   Bargaining Association ("NEBA"), a multi-employer bargaining association.  Complaint, ¶¶ 2

2   (1:14-23), 18 (6:3-9).  In early 2007, NEBA (on behalf of the Defendants and others) and the

3   IUEC (for and on behalf of its local unions, including Local 8) negotiated a collective-bargaining

4   agreement (the "NEBA Agreement), which became effective July 9, 2007, and will remain in

5   effect until July 8, 2012.  For many decades, the IUEC and the Defendants, either as individuals

6   or in a multi-employer group similar to NEBA known as the National Elevator Industry, Inc.,

7   negotiated a series of successive collective-bargaining agreements.

8       Under the terms of the NEBA Agreement, employees receive vacation pay twice per

9   calendar year.  See Complaint, ¶ 19 (6:9-24).  Specifically, Article XII of the NEBA Agreement

10  provides that:

11          **Par. 1.**  The following plan is established for Vacation Pay: (a) A
            man who has worked less than five (5) years in the business shall
12          receive Vacation Pay credit on the basis of 6% of his regular hourly
            rate for all hours actually worked.  A man who has worked more
13          than five (5) years in the business shall receive Vacation Pay credit
            on the basis of 8% of his regular hourly rate for all hours actually
14          worked.

15          No Vacation Pay shall accrue for the first six (6) months worked
            in the business.
16
            (b)  The vacation pay accrued from January 1 of one year through
17          June 30 of the same year shall be paid in full to the employee by
            July 15 of that year.  The vacation pay accrued from July 1 of one
18          year through December 31 of the same year shall be paid in full to
            the employee by January 15 of the succeeding year.
19

20  NEBA Agreement, Art. XII, par. 1.[4]  Moreover, the NEBA Agreement also includes a provision

21  for binding arbitration regarding "[a]ny difference or dispute regarding the application and

22  construction of this Agreement...."  NEBA Agreement, Art. XV, par. 1.

23      **C.    Defendants' Efforts to Comply with the San Francisco Sick Leave Ordinance**

24      On November 6, 2006, voters in the City of San Francisco approved Ballot Measure F,

25

26  ────────────

    [4] A copy of the Agreement is attached as RJN, Exh. A. and authenticated by the Declaration
    of E. James Walker in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint with
27  Prejudice or, in the Alternative, to Stay the Proceedings Pending Arbitration ("Walker Decl.), ¶¶
    2-4.  Defendants ask this Court to take judicial notice of the Agreement, which is referenced in
28  the Complaint.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    adopting the San Francisco Sick Leave Ordinance ("Ordinance").[5]  The Ordinance became

2    effective on February 5, 2007. San Francisco, Cal., Admin. Code § 12W.12. It is subject to

3    appropriate guidelines, rules, implementation, and enforcement by the San Francisco Office of

4    Labor Standards Enforcement ("OLSE")[6] and requires employers (other than "small employers")

5    to make paid time off (whether designated as "sick leave" or otherwise) available to employees

6    as it accrues, subject to a 72 hour cap. San Francisco, Cal., Admin. Code § 12W.3(c).

7    Significantly, however, the Ordinance does **not** require employers who already provide sufficient

8    levels of some form of paid leave to provide additional paid leave. Rather, OLSE provides that

9    an employer can meet its requirements under the Ordinance through the provision of "a paid

10   leave policy" using vacation or Paid Time Off.[7]  Similarly, OLSE also holds that an employer

11   may advance Paid Sick Leave which does not accrue again until the advance has been earned.

12   FAQ No. 29.

13        Consistent with the Ordinance and the OLSE guidance, and as reflected in the Local 8

14   grievances and the administrative records of the Board,[8] of which Defendants request this Court

15   take judicial notice, the Defendants informed employees working in San Francisco, including

16   Plaintiffs, that they would begin paying vacation pay in accordance with the Ordinance —

17   immediately after an employee took sick leave, rather than at the end of the six-month accrual

18   period.

19        Notably, in this action, Plaintiffs cannot claim a violation of the Ordinance because they

20   actually were paid according to its terms. The sole issue is whether the NEBA Agreement

21   _____

     [5] San Francisco, Cal. Admin. Code, Chapter 12W. A copy of the Ordinance is attached as
22   Appendix of Unpublished Decisions, Opinion Letter, and San Francisco Legal Authorities Cited
     in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, or, in the Alternative, to Stay
23   Proceedings Pending Arbitration ("Appendix"), Tab 8.

     [6] San Francisco, Cal., Admin. Code §§ 12W.2(a), 12W.8(a).
24
     [7] See OLSE Frequently Asked Questions ("FAQ") No. 28, which provides that an employer
     can meet its requirements under the Ordinance through the provision of "a paid leave policy"
25   using vacation or Paid Time Off. A copy of the FAQs is attached at Appendix, Tab 9.

     [8] Eight separate grievance forms filed by IUEC Local 8 (Grievance No. 8-1, dated July 13,
26   2007, Grievance No. 8-2, dated July 23, 2007, Grievance No. 8-5, dated September 18, 2007,
     Grievance No. 8-13, dated January 29, 2008, Grievance No. 8-14, dated January 29, 2008,
27   Grievance No. 8-15, dated January 29, 2008, Grievance No. 8-16, dated February 1, 2008, and
     Grievance No. 8-17, dated February 1, 2008) are attached as RJN, Exh. B and authenticated by
28   the Walker Decl., ¶¶ 6-9.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1  permits payment of vacation pay prior to the contractually-established deadline to cover the
2  Defendants' obligations.

### D. Previous and Ongoing Parallel Litigation Regarding the Identical Subject of the Complaint

5  In late summer 2007, Local 8 filed three Grievances, against NAES, Otis and Mitsubishi,
6  pursuant to the NEBA Agreement's grievance mechanism that establishes a binding, impartial
7  arbitration procedure for the resolution of "[a]ny difference or dispute regarding the application
8  and construction of this Agreement...." NEBA Agreement, Art. XV, par. 1. These Grievances
9  clearly frame the nature of the dispute for which plaintiffs now seek relief in this Action. For
10  example, Grievance No. 8-5, against Mitsubishi, states that Mitsubishi "sent all field employees
11  working in the City and County of San Francisco, CA a letter informing the employees that if
12  they take sick leave under the San Francisco Sick Pay Ordinance the pay will be deducted from
13  their vacation accrual." See RJN, Exh. B; Walker Decl., ¶ 6. Similarly, Grievance 8-1, on behalf
14  of named Plaintiff Jeff Bernardi, alleges that another company "violated Article XII of the CBA
15  by taking away eight (8) hours of Jeff Bernardi's accrued vacation pay to pay sick leave."[9] *Ibid.*

16  On August 8, 2007, IUEC Local 8 also filed an Unfair Labor Practice Charge (the
17  "Charge") against Defendants Otis and Pacific with the Board, alleging that each of the
18  Defendants violated the NEBA Agreement by using vacation pay to compensate employees for
19  Paid Sick Leave under the Ordinance:

> Specifically, the company violated the act when it unilaterally
> began using vacation pay, provided for under Article XII of the
> collective bargaining agreement, to offset the cost of any sick leave
> hours paid pursuant to the San Francisco Paid Sick Leave
> Ordinance.

23  Charge Against Employer (Otis), No. 20-CA-33552 (Region 20, Aug. 20, 2007); First Amended
24  Charge Against Employer (NAES), No. 20-CA-3355 (Region 20, Sept. 26, 2007).[10] Because the

---

26  [9] These grievances were held in abeyance in the fall of 2007, while the parties attempted to resolve the issue for all of the Defendants. See Walker Decl., ¶¶ 6-9.

27  [10] The Charge is attached as RJN, Exh. C, and authenticated by the Declaration of Johan W. E. Maitland in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint with Prejudice
28  or, in the Alternative, to Stay the Proceedings Pending Arbitration ("Maitland Decl.), ¶ 3.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  Charge required resolving an issue that was also subject to a grievance under (and requires

2  interpretation of) the NEBA Agreement, the Board deferred making a decision pending outcome

3  of the Grievances. See Letter from Joseph P. Norelli, Regional Director, Region 20, National

4  Labor Relations Board, to Johan W.E. Maitland, Esq., et al. 1-2 (Oct. 24, 2007) (RJN Exh. D;

5  Maitland Decl., ¶ 4).

6         After deferral of the Charge by the Board, IUEC Local 8 filed five more Grievances

7  against each of the named Defendants, alleging that each violated the NEBA Agreement by

8  "withholding" vacation pay. See Walker Decl., ¶ 6; RJN, Exh. B. Four of these Grievances were

9  filed on behalf of named Plaintiffs in the action, while the fifth mentions one named employee

10 and references "20 to 30 other members." RJN, Exh. B. On March 13, 2008, NEBA Executive

11 Director E. James Walker met with Local 8 officials, pursuant to step one of the NEBA

12 Agreement's grievance procedure, to discuss the eight outstanding Grievances. See Walker

13 Decl., ¶ 7. The parties met again on April 8, 2008, pursuant to step two of the grievance

14 procedure. Because the Grievances were not resolved during either of these meetings, the

15 resolution process outlined in the NEBA Agreement continues, the final step being impartial,

16 binding arbitration. Walker Decl., ¶¶ 8-9.

17        On March 14, 2008, one day after the step one meeting, the first Defendants (Otis and

18 Pacific) were served with copies of the present lawsuit.

19 **IV.    THIS COURT SHOULD DISMISS THE COMPLAINT, INCLUDING EACH
       CLAIM THEREIN, WITH PREJUDICE**

20

21        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) can be based on the

22 lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

23 legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Allegations

24 of material fact are taken as true and construed in the light most favorable to the nonmoving

25 party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court

26 need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions

27 of fact, or unreasonable inferences. See *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

28 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  Supreme Court recently held that the "plaintiff's obligation to provide the grounds of his

2  entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

3  elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

4  (2007). Instead, the allegations "must be enough to raise a right to relief above the speculative

5  level . . . ." *Id*. at 1965.

6  Additionally, in deciding a motion to dismiss, a court may consider matters which are

7  subject to judicial notice along with the complaint. *MGIC Indem. Corp. v. Weisman*, 803 F.2d

8  500, 504 (9th Cir. 1986). This includes documents referenced in but not attached to the

9  Complaint,[11] the administrative records of governmental agencies,[12] along with "any document

10  'the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

11  relies,' regardless of whether the document is referred to in the complaint." *Parrino v. FHP,*

12  *Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in*

13  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). The purpose of

14  allowing such consideration of uncontested documents is to prevent "plaintiffs from surviving a

15  Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims

16  are based."). *Ibid*.

17  **A.    This Court Should Dismiss Plaintiffs' First And Third Causes of Action As Preempted By Section 301 of The LMRA**

18

19  Plaintiffs' First and Third Causes of action, alleging a violation of Section 222, derivative

20  claims for penalties under PAGA and California Labor Code section 225.5, and a request for

21  declaratory relief, are preempted by Section 301 of the LMRA.

22              1.    This Court Should Dismiss Plaintiffs' First Cause of Action Because the State Law Wage Claim Exists Solely As a Result of and is Substantially

23                   Dependent on the Interpretation of A Collective-Bargaining Agreement

24  This Court should dismiss the First Cause of Action, alleging nonpayment of wages

25  _____

[11] *In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1405, fn. 4 (9th Cir. 1996).

26  [12] *Disabled Rights Action v. Las Vegas Events*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (court may take judicial notice of agency documents); *United States v. Eagleboy*, 200 F.3d 1137, 1140

27  (8th Cir. 1999) (same); *Nguyen v. Univ. of Calif.*, No. CIV S-06-1579, 2007 WL 2993276, at *1 (E.D. Cal. Oct. 11, 2007) (taking judicial notice of documents "that are part of the administrative

28  proceedings of the grievance plaintiff filed with the University regarding his termination.")



MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1    agreed upon in a collective-bargaining agreement, in violation of Section 222, as preempted by

2    Section 301 of the LMRA (29 U.S.C. § 185 ("Section 301")). *See Cornn v. United Parcel Serv.,*

3    *Inc.*, No. C03-2001 TEH, 2004 WL 2271585 (N.D. Cal. Oct. 5, 2004) (dismissing Labor Code

4    section 222 claim on the grounds that resolution would require interpretation of a collective-

5    bargaining agreement); *Mendes v. W.M. Lyles Co.*, No. CIV F 07-1265, 2008 WL 171003, at \*7-

6    9 (E.D. Cal. Jan. 18, 2008) (same).

7          The Supreme Court has held that Section 301 implies a "mandate . . . to fashion a body of

8    federal common law to be used to address disputes arising out of labor contracts." *Allis-*

9    *Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *Livadas v. Bradshaw*, 512 U.S. 107, 121-22

10   (1994). Thus, in *Lueck*, the Court held that if a right asserted in a state law claim exists solely as

11   a result of a collective-bargaining agreement or if the claim is "substantially dependent upon

12   analysis of the terms of" a collective-bargaining agreement, that state law claim is preempted by

13   Section 301. *Lueck*, 471 U.S. at 212, 220; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386,

14   394 (1987) ("Section 301 governs claims founded directly on rights created by collective-

15   bargaining agreements, and also claims 'substantially dependent on analysis of a collective-

16   bargaining agreement.'") (citation omitted); *Burnside v. Kiewit*, 491 F.3d 1053, 1059 (9th Cir.

17   2007).

18             a.     Plaintiffs' Wage Claim Exists Solely Because The Collective-
                         Bargaining Agreement Contains A Vacation Pay Provision

19

20          Plaintiffs' claim alleging a violation of Section 222 should be dismissed because the right

21   to Vacation Pay exists solely as a result of Article XII of the NEBA Agreement. *Caterpillar*, 482

22   U.S. at 394; see also Cal. Lab. Code § 227.3 (allowing different rules for payment of vacation at

23   termination under the terms of a collective-bargaining agreement). There is no independent right

24   to Vacation Pay under California law. Indeed, Section 222, the statute upon which Plaintiffs'

25   California wage claim relies, explicitly recognizes its own dependence on the existence of a right

26   created in a collective-bargaining agreement:

27               It shall be unlawful, in case of any wage agreement arrived at
                 through **collective bargaining** . . . to withhold from said employee
28             any part of the wage **agreed upon**.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-10-                         CASE NO. C08-01922 WHA

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1    Cal. Lab. Code § 222 (emphasis added). This language cannot reasonably be interpreted to

2    create any sort of right or claim independent of the collective-bargaining agreement. On its face,

3    the emphasized language indicates that any right to relief granted under the statute depends

4    entirely upon terms agreed to by the parties. *See Mendes*, 2008 WL 171003, at \*8 (holding that a

5    wage claim under Section 222 was "about a violation of a collective bargaining agreement," and

6    therefore preempted); *Cornn*, 2004 WL 2271585, at \*1 (plaintiffs claims preempted where "the

7    code sections they rely on to establish [the right to recovery] only require an employer to pay an

8    employee all wages as agreed upon." (citing Section 222)); *see also Burnside*, 491 F.3d at 1059

9    ("If the right exists solely as a result of the [collective-bargaining agreement], then the claim is

10    preempted, and our analysis ends there." (citing *Lueck*, 471 U.S. at 212)); *Caterpillar, Inc. v.*

11    *Williams*, 482 U.S. 386 (1987) ("Section 301 governs claims founded directly on rights created

12    by collective-bargaining agreements . . . .").

13
14
            b.    Plaintiffs' Wage Claim Is Substantially Dependent Upon Whether the Language of Article XII of the NEBA Agreement Permits Payment of Vacation Pay Prior to the Contractually-Established Deadline

15
16    Analysis of Plaintiffs' Section 222 claim is also "substantially dependent upon analysis of

the terms of the" NEBA Agreement. *Caterpillar*, 482 U.S. at 394; *Cramer*, 255 F.3d at 689.

17
18 Plaintiffs essentially argue that the Defendants somehow are prohibited from paying portions of

accrued Vacation Pay prior to the final deadline in Article XII of the NEBA Agreement.

19
20 Plaintiffs argue that such real-time payment constitutes a "withholding" or a "willful and/or

unlawful" deduction of those wages under Section 222.[13] *See* Complaint ¶¶ 21, 22. Evaluation

21
22 of this claim requires an interpretation of Article XII to determine whether the specific language

of the NEBA Agreement prohibits payment of the accrued Vacation Pay prior to the deadline.

23
24    Article XII of the NEBA Agreement states that Vacation Pay "shall be paid **in full** to the

employee **by** either July 15 or January 15." (emphasis added.) The parties dispute whether this

25
26 language prohibits payment of vacation pay during the six-month accrual period rather than at the

27

**SEDGWICK**
DETERT, MORAN & ARNOLD<sub>LLP</sub>

28    [13] In other words, Plaintiffs argue that they should be paid twice for the vacation paid during their sick leave.

1  end. Because the plain language of the NEBA Agreement only requires payment "in full … by"

2  July 15 or January 15, it is difficult to imagine how Plaintiffs expect to prevail on this claim, but

3  nonetheless, resolution of Plaintiffs' claims certainly will require an interpretation of the

4  contractual language. As in *Corrn*, *supra*, the "level of interpretation required to resolve

5  Plaintiff's first claim goes beyond the need to refer to the [collective-bargaining agreement] to

6  determine the appropriate wage rate or damages." *Corrn*, 2004 WL 2271585, at *1; *see also id.*

7  ("In addition to determining the wage rate, the Court would have to interpret the CBA –

8  including the 'fair day's work for a fair day's pay' provision – to determine the scope of work

9  and other terms and conditions of employment agreed upon by Plaintiffs and UPS.").

10 Accordingly, Plaintiffs' claims are preempted by Section 301 because "any attempt to assess

11 liability here inevitably will involve contract interpretation…." *Lueck*, 471 U.S. at 218. *See*

12 *Firestone v. Southern Calif. Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), *reh'g and  reh'g en banc*

13 *denied*, 281 F.3d 801 (2002), *cert. denied*, 536 U.S. 958 (2002) (claim preempted where state law

14 right depended on interpretation of wage provision in collective-bargaining agreement).

15        This is not the type of case where the state law at issue provides a right to relief parallel

16 to, but independent of the collective-bargaining agreement. *See Lingle v. Norge Div. of Magic*

17 *Chef, Inc.*, 486 U.S. 399 (1988) (claim not preempted solely because state law and the collective-

18 bargaining agreement implicated "the same analysis of the facts."); *see also Burnside v. Kiewit*,

19 491 F.3d 1053 (9th Cir. 2007); *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir.

20 2001) (en banc), *cert. denied*, 534 U.S. 1078 (2002). For example, in *Burnside*, the court found

21 that the plaintiff's state law wage claim for failure to pay a certain amount of travel time due

22 under the collective-bargaining agreement was not preempted because the state law itself

23 required such payment, independent of the agreement. *Burnside*, 491 F.3d at 1061. Likewise, in

24 *Cramer*, the court refused to find preemption where the plaintiff's claims for invasion of privacy

25 were based on a state statute forbidding the use of two-way mirrors in restrooms, rather than

26 provisions of the collective-bargaining agreement dealing with the use of camera surveillance

27 and alcohol and drug use. *Cramer*, 255 F.3d at 694. Neither of these cases required examination

28 of a collective-bargaining agreement.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    Here, on the other hand, Plaintiffs' claims rely entirely on the right to Vacation Pay
2    created by the NEBA Agreement. Section 222 creates nothing more than a cause of action to
3    enforce the payment of wages "agreed upon." Cal. Lab. Code § 222. There is no dispute over
4    this right to be paid the wages agreed upon. Rather, the central dispute in this case is the timing
5    of those payments and whether the NEBA Agreement prohibits payment of those wages prior to
6    the contractually established deadline. Therefore, unlike the state laws at issue in *Burnside* and
7    *Cramer*, the state law upon which Plaintiffs base their claims cannot be analyzed separately and
8    independently from the collective-bargaining agreement.

9    Nor is this the type of case that requires merely "reference to" or "looking to" the
10   collective-bargaining agreement. *See, e.g.*, *Lividas v. Bradshaw*, 512 U.S. 107, 125 (1994)
11   ("[W]hen liability is governed by independent state law, the mere need to 'look to' the collective
12   bargaining agreement for damages computation is not reason to hold the state law claim defeated
13   by § 301." (citation omitted)). Again, the central dispute in this case is whether the Defendants
14   were prohibited by **the collective-bargaining agreement** from paying a portion of employees'
15   vacation pay prior to the deadline. Plaintiffs' Section 222 claim depends entirely upon this
16   analysis. (Indeed, as set forth above, both Local 8, which has filed 8 Grievances, and the Board,
17   which deferred the Charge to the grievance arbitration process, recognize the substantial
18   dependence of the outcome of this issue upon the interpretation of the collective-bargaining
19   agreement.) As the *Mendes* court noted in holding that a similar Section 222 wage claim was
20   preempted, "[g]iven the allegations and damages claimed, this cause of action arises from a
21   violation of, and depends on, a collective bargaining agreement and requires that a collective
22   bargaining agreement be construed." *Mendes*, 2008 WL 171003, at *8. Accordingly, this Court
23   should dismiss the Plaintiffs' First Cause of Action as preempted by Section 301.

24               2.    Plaintiffs' Third Cause of Action Should Be Dismissed For The Same
                      Reasons as The First Cause of Action
25

26   Plaintiffs' Third Cause of Action seeks a declaratory judgment, pursuant to California
27   Code of Civil Procedure section 1060 ("Section 1060"), that the Defendants violated Section 222
28   by "withholding Vacation Pay from individual plaintiffs and members of the proposed class

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

MOTION TO DISMISS OR, ALTERNATIVELY, STAY LITIGATION

1  . . . ." Complaint ¶ 35. Assuming, for the sake of argument (without admitting), that Section
2  1060 is a substantive rather than a procedural right under California law — and therefore entitled
3  to enforcement,[14] Section 1060 allows any person claiming rights under a contract or under a
4  written instrument other than a will or trust to bring an action for a declaration of his rights or
5  duties with respect to another. Cal. Civ. Pro. Code § 1060; see *California Ass'n of PSES v.*
6  *California Dept. of Ed.*, 141 Cal.App.4th 360, 377 (2006). This would, of course, necessitate
7  interpreting the meaning of the disputed terms of the NEBA Agreement, which is preempted by
8  Section 301. Moreover, to plead a cause of action for declaratory relief "an actual, present
9  controversy must be pleaded **specifically** and the **facts of the respective claims** concerning the
10  underlying subject must be given." *City of Cotati v. Cashman*, 29 Cal.4th 69, 80 (2002)
11  (emphasis added). Plaintiffs most assuredly have not met that requirement here, and Defendants
12  are entitled to a dismissal on that grounds alone.

13  Of course, to the extent that Section 1060 is deemed procedural, then federal law
14  controls. Under federal law, a request for a declaratory judgment does not, by itself, state a claim
15  but rather is a form of relief. *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195
16  F.3d 1107, 1111 n.2 (9th Cir. 1999). Accordingly, as set forth above, Plaintiffs' Third Cause of
17  Action should be dismissed for the same reasons as their First Cause of Action. *See also*
18  *Mitchell v. Mirant California, LLC*, No. C 07-05847, 2008 WL 501392 (N.D. Cal. Feb. 21,
19  2008) (no separate analysis in dismissing claim for declaratory relief); *Fuentes v. Ralph's*
20  *Grocery Co.*, No. CV 93-1702, 1993 WL 761992 (C.D. Cal. July 28, 1993) (same).

21         3.    Plaintiffs Should Not Be Permitted to Amend the Complaint to Include a
               LMRA Claim Because Amendment Would Be Futile
22

23  Because Plaintiffs have failed to exhaust the grievance procedures in the NEBA
24  Agreement, they are foreclosed from amending their Complaint to include a Section 301 claim.
25  Before bringing suit under Section 301 to enforce the terms of a collective-bargaining agreement,
26  "an employee must first exhaust the grievance procedures established by the collective
27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28  [14] See *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996) (describing test).

1    bargaining agreement." *Sidhu v. Flecto, Inc.*, 279 F.3d 896, 898 (9th Cir. 2002). Here, the

2    Defendants and Local 8 are presently engaged in resolution of Plaintiffs' claims through the

3    NEBA Agreement's grievance resolution process. The grievances have been heard at Step One

4    and Step Two, and the process will continue until arbitration, unless resolved prior to arbitration.

5    Walker Decl., ¶¶ 8-9. Further, none of the exceptions to exhaustion requirement are applicable

6    here. The Defendants have not repudiated the grievance process, nor have the Plaintiffs alleged

7    any breach of Local 8's duty of fair representation. *Herman v. United Broth. of Carpenters &*

8    *Joiners*, 60 F.3d 1375, 1380 (9th Cir. 1995). Accordingly, amendment would be futile and this

9    Court should dismiss these claims without leave to amend.

10    **B.    Even if Plaintiffs' Labor Code Claims Were Not Preempted by Federal**
      **Labor Law, Which They Are, Plaintiffs Fail to State a Claim Under the**
11    **California Labor Code**

12    As previous noted, using vacation pay to provide sick leave is perfectly legal under the

13    Ordinance. Regardless, the Plaintiffs and Local 8 appear to claim that payment of vacation pay

14    prior to the contractually-established deadline in effect constitutes an impermissible withholding

15    under the California Labor Code. Payment prior to the final deadline is not a "withholding" and

16    such payment would not violate the Labor Code.

17    Even assuming for the sake of argument that Plaintiffs' California Labor Code claim is

18    not preempted by federal labor law — which it is — payment of accrued vacation pay to cover

19    the Defendants' obligations under the Ordinance and then paying Plaintiffs the difference at the

20    end of the accrual period does not violate Section 222. Moreover, since there is no violation of

21    Section 222, there is also no violation of the PAGA or Labor Code section 225.5, and,

22    accordingly, no basis to award penalties under those statutes.

23                1.    Defendants are Not Required to Pay Plaintiffs Twice for the Same Work,
                       and Are Therefore Entitled to Pay the Difference Between Vacation Pay
24                     Previously Advanced and Vacation Pay Previously Earned.

25    California Labor Code sections 221 ("Section 221") through 224 generally prohibit an

26    employer from making improper deductions from earned wages. California courts treat them as

27    "companion statutes" and generally construe them similarly and within the context of each other

28    rather than in isolation. *Steinhebel v. Los Angeles Times Communications*, 126 Cal.App.4th 696,

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  707 (2005); *Prudential Ins. Co. v. Fromberg*, 240 Cal.App.2d 185, 192 (1966). The California
2  legislature enacted these statutes "to proscribe secret deductions or 'kickbacks' that made it
3  appear as if an employer was paying wages in accordance with an applicable contract or statute
4  but [was] in fact paying less." *Steinhebel v. Los Angeles Times Communications*, 126
5  Cal.App.4th 696, 707 (2005). Specifically, Section 222 prohibits employers from withholding
6  any part of a wage agreed on through collective bargaining "wilfully or unlawfully or with intent
7  to defraud...."

8      Plaintiffs do not allege — nor could they do so in good faith — that this case involves
9  "kickbacks." Rather, Plaintiffs were each paid all the vacation pay to which each was entitled —
10  the only question, assuming no preemption, is whether payment of vacation prior to the deadline
11  established by the NEBA Agreement is the equivalent of an illegal kickback. Although there are
12  no cases exactly on point, analogous cases construing Section 221 (prohibiting employers from
13  collecting wages previously paid to their employees) make it abundantly clear that Plaintiffs are
14  not entitled to be paid twice for the same work by calling the reconciliation of a payment a
15  "deduction" or a "withholding."

16      For example, California courts have long held that, where a commission sales agreement
17  provides for the reconciliation of advances or draws against commissions, such a reconciliation is
18  lawful and does not constitute an impermissible deduction under Section 221. *Koehl v. Verio,*
19  *Inc.*, 142 Cal.App.4th 1313, 1332-1334 (2006) (holding reconciliation of advances against
20  commissions to be lawful since an advance is not a wage and since employees agreed to terms of
21  payment); *Steinhebel v. Los Angeles Times Communications*, 126 Cal.App.4th 696, 707-710
22  (2005) ("A charge-back on future commission advances does not take back wages 'theretofore
23  paid' or encompass an improper or unfair deduction to an employee's wages."). As with
24  *Steinhebel* and *Koehl*, the employees here receive an advance on vacation which is reconciled
25  upon a future calculation of actual vacation earned. Moreover, similar to the commissions in
26  *Steinhebel* and *Koehl*, the actual amount of earned vacation under the NEBA Agreement for each
27  earnings period **cannot** be calculated until the end of each earning period, when the total number
28  of hours actually worked during that period is known.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1499893v1

-16-                                CASE NO. C08-01922 WHA

1    Similarly, the California Supreme Court has held that paying employees a profit-based

2  bonus in which the employer subtracted certain overhead costs such as workers' compensation

3  payments and store losses from earnings to determine profitability did not violate Section 221

4  because the employees did not earn less than the wages promised to them. *Prachasaisoradej v.*

5  *Ralphs Grocery Co., Inc.*, 42 Cal.4th 217, 222-224 (2007). The California Supreme Court

6  determined that there is **only** an improper withholding or deduction where an employee receives

7  **less than the employer paid, offered, or promised**:

8           The employer takes a "deduction" or "contribution" from an
           employee's "wages" or "earnings" when it subtracts, withholds,
9           sets off, or requires the employee to return, a portion of the
           *compensation* offered, promised, or paid as offered or promised, so
10          that the employee, having performed the labor, actually receives or
           retains less than the *paid, offered, or promised compensation*, and
11          effectively makes a forced "contribution" of the difference.

12  *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal.4th 217, 228 (2007) (emphasis in the

13  original). Here, however, the entire dispute revolves around the timing of the payments (i.e.,

14  whether the Defendants can properly pay before the deadline under the terms of the NEBA

15  Agreement) — **not** whether the combined payments are in fact equal to the total amount

16  promised in the NEBA Agreement. Accordingly, this Court should not treat the payments at

17  issue here as a "withholding" of wages under California law.

18          The California Court of Appeal recently reached a  similar result on slightly different

19  facts in *Schachter v. Citigroup, Inc.*, 159 Cal.App.4th 10 (2008). There, an employee had

20  purchased stock options through a voluntary employee incentive plan which provided that the

21  shares would be forfeited (without being repurchased) if the employee was terminated for cause

22  within two years of the purchase. The employee was terminated for cause, and claimed that the

23  forfeiture of the shares violated California Labor Code section 201, which requires prompt

24  payment of earned wages upon termination. The Superior Court granted summary judgment to

25  the employer, and the employee appealed. The Court of Appeal sustained the grant of summary

26  judgment, holding that the wages had been paid when the employee purchased the stock options,

27  and that the stock options themselves were not wages. (*Id.* at 22-23.) For similar reasons, there

28  is no "withholding" here, because, as with the purchase of stock options, Plaintiffs actually

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1   received vacation pay during their sick leave, and are not entitled to receive the same pay twice.

2           2.   Because there is No Claim for Violation of Section 222, There is Also No Claim Pursuant to PAGA or Labor Code section 225.5.

3

4        Plaintiffs seek penalties pursuant to Labor Code section 225.5 and PAGA (Cal. Lab.

5   Code §§ 2698 through 2699.5) based on the alleged violations of Section 222. PAGA authorizes

6   a private plaintiff to seek the recovery of civil penalties for violations of Section 222 so long as

7   the plaintiff meets certain other criteria. Cal. Lab. Code §§ 2699, 2699.3, and 2699.5. Similarly,

8   Labor Code section 225.5 provides for penalties for a violation of Section 222.[15] Regardless,

9   there can be no derivative penalty under either PAGA or Labor Code section 225.5 based on a

10  violation of Section 222 in the absence of an **actual violation** of Section 222. Because

11  Plaintiffs' claims for violation of Labor Code section 222 are preempted, and since there was no

12  violation of Section 222 as a matter of law, this Court should also dismiss Plaintiffs' claims for

13  penalties under Labor Code section 225.5 and PAGA.

14      **C.**    **This Court Should Dismiss Plaintiffs' Second Claim Because It Fails to State A Valid Claim Under The Fair Labor Standards Act**

15

16       Plaintiffs' Second Cause of Action alleges "Late Payment of Wages in Violation of the

17  Fair Labor Standards Act, 29 U.S.C. § 216(b) and the regulations thereunder." It is difficult to

18  discern precisely what action on the part of the Defendants Plaintiffs allege as a violation of the

19  FLSA. However, it is clear that regardless of how the Second Cause of Action is construed, the

20  claim should be dismissed, because Plaintiffs cannot maintain **any** FLSA claim.

21          1.   The Fair Labor Standards Act Allows Recovery For Failure To Pay The Minimum Wage or Overtime Pay Only

22

23       The FLSA provides for the recovery of unpaid minimum wages, overtime, and, liquidated

24  damages relating to the failure to pay either. 29 U.S.C. § 216(b). The FLSA does not provide a

25  _____

26     [15] Defendants note that there is no private right of action under Labor Code section 225.5, since penalties under that statute can only be recovered by the Labor Commissioner in an action

27  brought in the name of the people of the State of California. Cal. Lab. Code § 225.5(b). Nevertheless, and without conceding the validity of the argument, Defendants realize that plaintiffs routinely argue that they can collect penalties for violation of Labor Code section 225.5

28  indirectly under PAGA in keeping with the provisions of Labor Code section 2699.3(c).

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  cause of action for the right of an employee to be paid in accordance with a collective-bargaining

2  agreement. *Fernandez v. Centerplate/NBSE, Inc.*, No. Civ. 04-0809, 2005 WL 3273370, at *4-6

3  (D.D.C. Aug. 1, 2005) (collecting cases), *aff'd in relevant part*, 441 F.3d 1006 (D.C. Cir. 2006).

4  Accordingly, Plaintiffs cannot state a claim under the FLSA merely by alleging that they were not

5  paid Article XII Vacation Pay.

6             2.       Plaintiffs Do Not State A Claim for Overtime Pay Because Vacation Pay
                       Is Not Included in the Regular Rate
7

8         Not surprisingly, Plaintiffs make no allegation even hinting at any failure to pay them the

9  minimum wage, which at the federal level is currently $5.85 per hour and $8.00 per hour in

10  California.[16]  29 U.S.C. § 206(a)(1); Cal. Lab. Code § 1182.12.  Rather, Plaintiffs appear to rely

11  on the somewhat cryptic allegation that:

12             By failing and refusing to pay Plaintiffs their full regular rate of
               pay, including all vacation pay due and owing, Defendants violated
13             the FLSA and regulations promulgated under it requiring the full
               payment for all regular hours of work to satisfy the requirement of
14             proper and full payment of overtime premiums required under the
               FLSA.
15

16  Complaint, ¶ 32.

17         Plaintiffs appear to argue that Defendants failed to include the Article XII Vacation Pay

18  in the "regular rate" used to determine the amount of the overtime premium in violation of "the

19  FLSA and regulations promulgated under it."  Such an argument is without merit, however,

20  because both the FLSA and its implementing regulation **exclude** vacation pay from the regular

21  rate.  29 U.S.C. § 207(e)(2); 29 C.F.R. §§ 778.218 – 778.219 (2007).  Accordingly, this Court

22  should dismiss Plaintiffs' claim.

23             3.       The Fair Labor Standards Act Allows Pre-Deadline Payment of Vacation
                       Pay
24

25         Plaintiffs' allegation appears to be that paying vacation pay for any reason, including sick

26  leave, prior to the deadline, followed by paying a lump sum for the difference of vacation earned

27  ───────────────────────
[16]    Indeed, Plaintiffs are paid more than $50 per hour for their services and many elevator
28  constructors make over $100,000 per year.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1   under Article XII somehow violates the bargaining unit members' rights under the FLSA. This is

2   untrue. The FLSA generally allows employers to recoup overpayments or advances of any kind

3   without violating the FLSA so long as the reductions do not cause the hourly wage to drop below

4   the minimum wage. *Brennan v. Veterans Cleaning Service, Inc.* (5th Cir. 1973) 482 F.2d 1362,

5   1368-1369, 1370. Moreover, the Department of Labor determined that employers can recoup

6   advanced vacation from an employee's final paycheck **even if doing so results in payments**

7   **lower than the minimum wage.** DOL Wage & Hour Opinion Letter, FLSA2004-17NA, 2004

8   WL 3177901 (Oct. 6, 2004) (Appendix, Tab 7.) This Court should therefore dismiss the Second

9   Cause of Action because the Plaintiffs have not — and cannot — state a claim under the FLSA.

10  **V.     SHOULD THIS COURT DECLINE TO DISMISS THE COMPLAINT IN ITS
             ENTIRETY, THEN IT SHOULD STAY THE PROCEEDINGS PENDING THE**

11           **OUTCOME OF THE RELATED UNION GRIEVANCES**

12          If the Court decides not to dismiss this action, the case should be stayed pursuant to

13  Section 3 of Federal Arbitration Act ("FAA") and federal labor policy pending resolution of the

14  grievance process invoked by Plaintiffs' union on their behalf. 9 U.S.C. § 3 (directing courts,

15  upon a finding of arbitrability, to "stay the trial of the action until such arbitration has been had in

16  accordance with the terms of the agreement . . . ."); *John Wiley & Sons v. Livingston*, 376 U.S.

17  543, 549 (1964) (noting "the central role of arbitration in effectuating national labor policy.");

18  *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 861 (9th Cir. 1979) (describing "a strong

19  policy favoring arbitration of labor disputes."), *cert. denied*, 444 U.S. 827 (1979).

20          Local 8 has filed Grievances against the Defendants on behalf of the Plaintiffs (and other

21  employees) pursuant to the NEBA Agreement over the vacation pay issue. RJN, Exh. B; Walker

22  Decl., ¶¶ 6-9. Resolution of these Grievances will be determinative of the primary issue in this

23  lawsuit: whether the Defendants were prohibited by Article XII of the NEBA Agreement from

24  paying a portion of the Plaintiffs' Vacation Pay prior to the contractually established deadline.

25  Accordingly, in the event that this Court determines that outright dismissal is not proper, the

26  Court should enter a stay of this case pending resolution of the ongoing contractual arbitration

27  procedure to avoid wasting the Court's own resources as well as that of the parties. *See Levya*,

28  593 F.3d at 863 ("A stay may be the most efficient and fairest course when there are



1    'independent proceedings which bear upon the case.'").

2    **VI.    CONCLUSION**

3        Plaintiffs are not entitled to be paid twice for the same work and are not entitled to three

4    bites at the apple.  Accordingly, this Court should dismiss their Complaint with prejudice or, in

5    the alternative, stay litigation pending the outcome of ongoing arbitration under the NEBA

6    Agreement.

7    DATED: April 18, 2008                    SEDGWICK, DETERT, MORAN & ARNOLD LLP

8

9                                             By:_____
                                                  James S. Brown
10                                                Marc A. Koonin

11                                           DOWNS RACHLIN MARTIN PLLC
                                             JOHAN W. E. MAITLAND
12                                           JONATHAN ROSE
                                             (*Pro Hac Vice*, Applications Pending)
13
                                             Attorneys for Defendants
14                                           PACIFIC COAST ELEVATOR CORPORATION,
                                             erroneously sued as AMTECH/SAN FRANCISCO
15                                           ELEVATOR CO., KONE, INC., MITSUBISHI
                                             ELECTRIC & ELECTRONICS USA, INC.,
16                                           erroneously sued as MITSUBISHI ELEVATOR
                                             COMPANY, OTIS ELEVATOR COMPANY, and
17                                           SCHINDLER ELEVATOR CORPORATION

18

19

20

21

22

23

24

25

26

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1499893v1