**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF BERNARDI, THOMAS BICKHAM, RANDY DAVENPORT, BRUCE DOUGLAS, MICHAEL BOUZIDIN, DAN KAESLER, RICHARD KIM, DAVID NAVA, and MANUEL BUSTOS, on behalf of themselves and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMTECH/SAN FRANCISCO ELEVATOR CO., KONE, INC., MITSUBISHI ELEVATOR COMPANY, OTIS ELEVATOR COMPANY, SCHINDLER ELEVATOR CORPORATION, and DOES 1–10, inclusive,<br><br>Defendants.<br>_____/ | No. C 08-01922 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION** |

**INTRODUCTION**

In this collective-bargaining action, plaintiffs Jeff Bernardi, Thomas Bickham, Randy Davenport, Bruce Douglas, Michael Bouzidin, Dan Kaesler, Richard Kim, David Nava, and Manuel Bustos, on behalf of a putative class, filed suit in San Francisco Superior Court against defendants Pacific Coast Elevator Corporation (erroneously sued as Amtech/San Francisco Elevator Co.), KONE, Inc., Mitsubishi Electric & Electronics USA, Inc. (erroneously sued as Mitsubishi Elevator Company), Otis Elevator Company, and Schindler Elevator Corporation, for allegedly failing to abide by the minimal labor standards provided by the California Labor Code and the Fair Labor Standards Act. Defendants removed the action to

district court because the complaint alleged violation of federal law (the Fair Labor Standards Act) and violations of state law preempted by Section 301 of the Labor Management Relations Act. Defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted. In the event that the complaint is not dismissed in its entirety, defendants further move for an order staying further proceedings in this action pending the outcome of arbitration proceedings. For the reasons stated below, defendants' motion to stay proceedings pending arbitration is **GRANTED**.

## STATEMENT

All of the well-pled allegations in the complaint are accepted as true. Plaintiffs were employed as elevator constructors by defendants. Specifically, Jeff Bernardi worked for Pacific Coast Elevator Corporation; Thomas Bickham, Randy Davenport, Dan Kaesler, Richard Kim and David Nava worked for Otis Elevator Company; Manuel Bustos worked for Schindler Elevator Corporation; Bruce Douglas worked for Mitsubishi Electric & Electronics USA, Inc.; and Michale Bouzidin worked for KONE, Inc. Defendants, whose principal places of business were all in California, provided elevator installation, construction, and maintenance services. They were responsible for the payment of wages and deductions from those wages under Section 222 of the California Labor Code.

Plaintiffs were members of the International Union of Elevator Constructors ("IUEC") and the National Elevator Bargaining Association ("NEBA"). On behalf of plaintiffs, NEBA and IUEC negotiated a collective bargaining agreement, which was effective from July 9, 2007, to July 8, 2012. Article XII of the CBA, which was entitled "Vacations," required the following (Def. Exh. A):

> The following plan is established for Vacation Pay: (a) A man who has worked less than five (5) years in the business shall receive Vacation Pay credit on the basis of 6% of his regular hourly rate for all hours actually worked. A man who has worked more than five (5) years in the business shall receive Vacation Pay credit on the basis of 8% of his regular hourly rate for all hours actually worked. No Vacation Pay shall accrue for the first six (6) months worked in the business.
>
> (b) The vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year. The vacation pay accrued from July 1 of one

>    year through December 31 of the same year shall be paid in full to
>    the employee by January 15 of the succeeding year.

Vacation pay was part of the overall compensation package to employees and was therefore part of plaintiffs' wages, as defined by Section 200 of the California Labor Code. The amount of wages was arrived at through collective bargaining (pursuant to Section 222).[1]

Plaintiffs allege that, on January 15, 2008, their defendant employers wrongfully deducted amounts from plaintiffs' accrued vacation pay, which should have been paid in full on that date. The amounts withheld were neither authorized by statute nor by plaintiffs. On behalf of the named plaintiffs and the putative class, the IUEC repeatedly asked defendants to timely compensate plaintiffs for all accrued vacation pay without deductions of any kind. Defendants have not done so.

On March 7, 2008, plaintiffs filed suit in San Francisco Superior Court, alleging the following claims against defendants: (i) defendants unlawfully and/or willfully withheld part of plaintiffs' vacation wages set by the CBA, in violation of Section 222 of the California Labor Code Section; and (ii) defendants failed to compensate employees plaintiffs their full regular rate of pay in violation of the FLSA, 29 U.S.C. 216(b) and related regulations. As a third "claim," plaintiffs seek declaratory relief, pursuant to Section 1060 of the California Code of Civil Procedure. Plaintiffs request that they be awarded compensatory damages, liquidated damages, civil penalties, prejudgment interest, reasonable attorney's fees and costs, declaratory relief, and a preliminary and permanent injunction. Defendants removed the action to federal district court on April 11, 2008.

---

[1] Defendants argue in their moving papers that they complied with the San Francisco Sick Leave Ordinance, which became effective on February 5, 2007. According to defendants, they informed employees working in San Francisco that defendants would begin paying vacation pay in accordance with the San Francisco Sick Leave Ordinance. This meant that employees would be paid immediately after he or she took sick leave, rather than at the end of a six-month accrual period. Plaintiffs say that this order cannot consider this argument as it constitutes an affirmative defense that was improperly put forth in the motion to dismiss and not in the pleadings. According to the Ninth Circuit, if the defense were apparent on the face of the complaint, an affirmative defense may be raised by a motion to dismiss. If the defense did not appear on the face of the complaint and the trial court were willing to accept matters outside of the pleadings, the defense could be raised by a motion to dismiss accompanied by affidavits. This would transform the motion to one for summary judgment. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Here, the defense regarding the San Francisco Sick Leave Ordinance does not appear on the face of the complaint. Because plaintiffs should be given the opportunity to present evidence pertinent to a motion for summary judgment, the defense will not be considered at this point in the proceedings.

3

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1255, 1264–65 (2007).[2]

In arguing its motion to dismiss, defendants ask the Court to take judicial notice of various documents. "Under the incorporation by reference doctrine, we also consider documents submitted by Defendants that were referenced in the complaint and whose authenticity has not been questioned." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). *See also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.3d 1542, 1555 n.19 (9th Cir. 1990). For other publicly filed documents, "[a] court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim upon which relief can be granted." *In re Calpine Sec. Litig.*, 288 F.Supp.2d 1054, 1076 (N.D.Cal.2003) (Armstrong, J.).

Defendants have submitted numerous exhibits. Plaintiffs concede that the CBA was a proper subject for judicial notice because it was specifically referenced in the pleadings. Defendants also seek judicial notice of eight grievance forms filed by the IUEC on behalf of some of the named plaintiffs, administrative records of the National Labor Relations Board relating to Unfair Labor Practice Charges filed by the IUEC on behalf of plaintiffs, and a letter from the regional director for the National Labor Relations Board regarding the disposition of the unfair labor practice charges (Req. Jud. Not. Exhs. B, C, and D). Plaintiffs argue that these

---

[2] Internal citations are omitted from all cites unless indicated otherwise.

4

other exhibits are not proper subjects of judicial notice. This order agrees. The complaint states that the IUEC "repeatedly demanded that Defendants compensate Plaintiffs for all accrued vacation pay without deductions of any kind and timely pay all such accrued vacation pay, Defendants have repeatedly failed and refused to correct these violations and compensate employees for the vacation pay in full" (Compl. ¶ 22). This does *not* specifically reference the grievance forms or administrative records. For all we know, plaintiffs were referring to verbal requests for compensation. Accordingly, this order will not take judicial notice of the grievance forms, administrative records and letter. These exhibits constitute evidence that should be considered at the summary-judgment stage.

### A. PLAINTIFFS' FIRST AND THIRD CLAIMS: ALLEGED VIOLATION OF SECTION 222 OF THE CALIFORNIA LABOR CODE, AND REQUEST FOR DECLARATORY RELIEF.

For their first claim, plaintiffs allege that defendants violated Section 222 of the California Labor Code by unlawfully and/or willfully withholding their vacation wages on January 15, 2008, as set forth by the CBA. For their third claim, plaintiffs seek declaratory relief. Defendants contend that plaintiffs' first and third claims should be dismissed because they are preempted by Section 301 of the LMRA.

Section 222 of the California Labor Code provides: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." Section 301 of the LMRA, however, has a preemptive effect on state-law claims. Section 301 requires "first, an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there. If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007).

5

1 Furthermore, whether or not the right is dependent on the CBA is interpreted narrowly. "In order to help preserve state authority in areas involving minimum labor standards, the Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to 'look at' the agreement. We have stressed that, in the context of § 301 complete preemption, the term 'interpret' is defined narrowly — it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

This order finds that Section 301 preempts plaintiffs' Section 222 claim. Whether or not the right exists solely as a result of the CBA does not matter here; the right at issue is "substantially dependent on analysis of a collective-bargaining agreement," which is enough to establish preemption. The complaint alleges that plaintiffs were not paid the full amount of vacation pay to which they were entitled under Article XII of the CBA and Section 222 of the California Labor Code. This requires interpretation of the CBA.

Plaintiffs argue that their claim only requires the district court to *look at* the agreement rather than to *interpret* it. They say that an employee's wages are guaranteed under Section 222 and were merely referred to in the CBA. Plaintiffs' argument is unpersuasive. The parties dispute the meaning of the CBA — particularly the part stating that "vacation pay accrued from January 1 of one year through June 30 of the same year shall be paid in full to the employee by July 15 of that year. The vacation pay accrued from July 1 of one year through December 31 of the same year shall be paid in full to the employee by January 15 of the succeeding year" (Def. Exh. E). Plaintiffs argue that defendants failed to pay the full amount of their vacation pay *on* January 15 or July 15. Defendants, on the other hand, counter that they did pay the amounts *by* the aforementioned dates. Contrary to plaintiffs, defendants are not merely relying on factual assertions lying beyond the four corners of the complaint. In essence, both parties dispute the amount due and owing under the CBA, which requires more than a mere look at the CBA. *See e.g.*, *Corn v. United Parcel Service, Inc.*, 2004 WL 2271585, *1 (N.D. Cal. 2004) (Henderson, J.) ("The level of interpretation required to resolve Plaintiffs' first claim goes beyond the need to refer to the CBA to determine the appropriate wage rate or damages.

1  In addition to determining the wage rate, the Court would have to interpret the CBA —
2  including the 'fair day's work for a fair day's pay' provision-to determine the scope of work
3  and other terms and conditions of employment agreed upon by Plaintiffs and [defendant]. As a
4  result, Plaintiffs' first claim is preempted by the LMRA).[3]

5  Plaintiffs argue that, even if interpretation of the CBA were necessary to determine
6  liability (which it is here), dismissal of the Section 222 would be improper. Instead, a state law
7  claim that is preempted by Section 301 ought to be converted into a federal Section 301 claim
8  *ab initio*. "Once preempted, 'any claim purportedly based on [a] . . . state law is considered,
9  from its inception, a federal claim, and therefore arises under federal law." *Burnside*, 491 F.3d
10 at 1059. Once a state law claim has been converted, it can only be dismissed if it were
11 time-barred. *See Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998)
12 ("A Section 301 claim is governed by a six-month statute of limitations"). Because plaintiffs
13 claims occurred on January 15, 2008, and they filed their complaint on March 7, 2008,
14 plaintiffs' claims are not time-barred, they say.

15 This order disagrees. None of the decisions cited by plaintiffs hold that a preempted
16 claim *must* be converted to a Section 301 claim rather than be dismissed. Furthermore,
17 even though Section 301 allows an employee to sue his employer in federal district court to
18 enforce the terms of a CBA, the "employee must first exhaust the grievance procedures
19 established by the CBA." *Sidhu v. Flecto Co., Inc.*, 279 F.3d 896, 898 (9th Cir. 2002).
20 Defendants say that plaintiffs have not exhausted the grievance procedures, which plaintiffs do
21 not dispute. Accordingly, plaintiffs' Section 222 are preempted. Because plaintiffs have yet to
22 properly exhaust their claims, this order will stay this matter and defer it to arbitration.

---

[3] Plaintiffs rely on the following two decisions to argue "that states are entitled to enact such minimum labor standards without running afoul of federal preemption (Opp. 9–10). In *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 756 (1985), the Supreme Court stated, "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety . . . are only a few examples." In *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987), the Supreme Court further stated that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." Neither of these cases apply here because each one involved a challenge to a state statutes establishing minimum labor standards. As stated, defendants here are not challenging Section 222 of the California Labor Code; they are challenging plaintiffs' claims on the ground that interpretation of the CBA is required.

7

1 *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 n.2 (9th Cir. 2001) ("where the claim cannot be resolved without interpreting the CBA, '[h]olding the plaintiff's cause of action substantively extinguished may not . . . always be the only means of vindicating the arbitrator's primary as the bargained-for contract interpreter'").

Plaintiffs' third claim seeks a declaratory judgment pursuant to California Code of Civil Procedure Section 1060, stating that defendants violated Section 222. This order finds that Section 1060 is procedural, so federal law controls. A claim for declaratory judgment is a form of relief; it does not by itself state a claim. *Audette v. International Longshoremen's & Warehousement's Union*, 195 F.3d 1107, 1111 n.2 (9th Cir. 1999). The same analysis should therefore apply to plaintiffs' first claim and third claim. *See Mitchell v. Mirant California, LLC*, 2008 WL 501392 (N.D. Cal. 2008) (Hamilton, J.). Plaintiffs concede that "a separate analysis in respect of a claim for declaratory relief is not required" (Opp. 13). Because plaintiffs' first claim has been preempted (and consequently deferred) by Section 301, plaintiffs' third claim must also be deferred.

### B. PLAINTIFFS' SECOND CLAIM: ALLEGED VIOLATION OF THE FSLA.

Plaintiffs further claim that defendants violated the FSLA, 29 U.S.C. 216(b), and related regulations. The FSLA provides damages for employees who have not been paid minimum wages, overtime compensation, and liquidated damages relating to the failure to pay minimum or overtime wages. 29 U.S.C. 216(b). Specifically, plaintiffs say that "[b]y failing and refusing to pay Plaintiffs their full regular rate of pay, including all vacation pay due and owing, Defendants violated the FLSA and regulations promulgated under it requiring the full payment for all regular hours of work to satisfy the requirement of proper and full payment of overtime premiums required under the FLSA" (Comp. ¶ 32).

This order agrees with defendants that the second claim must also be dismissed for failure to state a claim under the FLSA. Plaintiffs have not alleged that defendants failed to pay minimum or overtime pay. Rather, they say that defendants did not provide full vacation pay. As stated, the FLSA does not provide for damages resulting from the alleged failure to provide

vacation pay. Plaintiffs only cite to decisions that discuss pre-overtime and overtime compensation — not vacation pay.

Plaintiffs then cite to the Department of Labor regulation that implement the FLSA, 29 C.F.R. 778.315, which provides:

> In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.

Plaintiffs' still does not fall within the purview of the cited provision of the FSLA. An employer cannot credit fringe benefits (such as vacation pay) toward overtime compensation under the FSLA. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913 (9th Cir. 2004) (*citing Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 794–95 (10th Cir. 1976) (holding that fringe benefits in the form of paid vacations, holiday pay, biannual bonuses, and pay for health, life, and accident insurance cannot be credited toward overtime compensation due under the Act)). Because vacation pay is not counted as part of straight-time or overtime compensation, plaintiffs do not have a claim under the FSLA. This second claim must be dismissed.

## CONCLUSION

For the foregoing reasons, ruling on plaintiffs' first and third claims is **DEFERRED** pending arbitration. Plaintiffs' second claim is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: June 5, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE